# COUGHLIN DUFFY LLP

ATTORNEYS AT LAW

Wall Street Plaza
88 Pine Street, 5th Floor
New York, New York 10005
phone: 212-483-0105
fax: 212-480-3899
www.coughlinduffy.com

350 Mount Kemble Avenue, P.O. Box 1917
Morristown, New Jersey 07962
phone: 973-267-0058
fax: 973-267-6442

JUSTIN N. KINNEY
Direct Dial: (212) 612-4983
jkinney@coughlinduffy.com

January 11, 2010

**VIA ELECTRONIC FILING & FACSIMILE**

The Honorable Madeline Cox Arleo, U.S.M.J.
United States District Court for the District of New Jersey
M.L. King, Jr., Federal Building & Courthouse
50 Walnut Street
Newark, New Jersey 07102
Fax: (973) 297-4906

> Re: Illinois National Insurance v. Wyndham Worldwide Operations, et al.
> Docket No.: 09 Civ. 1724 (JAG) (MCA)
> Our File No.: B2486-00001

Dear Magistrate Judge Arleo:

This firm represents defendants Wyndham Worldwide Operations, Inc., Wyndham Worldwide Corp., Wyndham Vacation Ownership, Inc. and Wyndham Resort Development Corporation ("the Wyndham Defendants") in this matter. By letter dated December 8, 2009, Plaintiff Illinois National Insurance Company ("Illinois National") wrote to the Court seeking assistance in resolving certain discovery issues. The Wyndham Defendants hereby provide their response to the issues raised in Plaintiff's December 8, 2009 correspondence.

On Friday, January 8, 2010, at 5:02 p.m., Illinois National filed another letter brief raising additional discovery issues separate and apart from those raised in the December 8, 2009 correspondence and requesting that the Court address these issues at the January 27, 2010 conference. Because this submission was served after 5:00 p.m. on the last business day before the Wyndham Defendants' response to Illinois National's December 8th letter was due, the Wyndham Defendants respectfully request that the Court decline Illinois National's request and set a separate briefing schedule for the new issues raised. In the

COUGHLIN DUFFY LLP

Hon. Madeline Cox Arleo, U.S.M.J.
January 11, 2010
Page 2

alternative, the Wyndham Defendants request permission to respond to Illinois National's January 8, 2010 letter by written submission on or before January 21, 2010.

I. Materials Dating Back to 2001

The first issue raised in Plaintiff's December 8th submission is its purported entitlement to documents dating back to 2001, more specifically, documents relating to insurance provided by Illinois National's insured, Jet Aviation Business Jets, Inc. ("Jet Aviation"), for the benefit of the Wyndham Defendants or their predecessors. In connection with this issue it is important to remember that this dispute concerns whether the Wyndham Defendants are entitled to coverage under the Gold Medallion Comprehensive Business Aircraft Policy No. GM 1852800-05, issued by Illinois National to Jet Aviation for the period April 1, 2008 to April 1, 2009 ("the 2008 Illinois National Policy") for actions against the Wyndham Defendants arising out of an August 4, 2008 aircraft accident (the "Underlying Actions"). It is undisputed that the 2008 Illinois National Policy contains language that is different from the policy issued to Jet Aviation in 2007 or years prior. Moreover, it is undisputed that Illinois National did not insure Jet Aviation prior to 2004. Thus, Illinois National's discovery requests seek documents concerning insurance with different policy language, and policies issued by completely different insurers. The Wyndham Defendants' position is that documents relating to insurance policies issued to Jet Aviation dating back to 2001 have no bearing on whether the language of the 2008 Illinois National Policy requires Illinois National to provide coverage to Wyndham Defendants for the Underlying Actions. Nevertheless, the Wyndham Defendants have produced discovery relating to the Illinois National policy issued to Jet Aviation in 2007, but has declined to produce documents relating to insurance issued to Jet Aviation prior to that year.

The scope of discovery under [Fed. R. Civ. P. 26] is not unlimited. *Wong v. Thomas*, 2008 U.S. Dist. LEXIS 71246 (D.N.J. Sept. 9, 2008). Furthermore, the requesting party bears the burden of demonstrating that the requested discovery is relevant. *Kopacz v. Delaware River and Bay Authority*, 225 F.R.D. 494, 2004 U.S. Dist. LEXIS 20880, at *7 (D.N.J. July 23, 2004). Plaintiffs have not demonstrated that any documents relating to insurance pre-dating the 2007 Illinois National Policy are relevant to the matters in dispute in this action.

A. Documents Dating Back to 2001 are Not Relevant

Plaintiff argues that the Wyndham Defendants have placed these materials in issue because the Wyndham Defendants have relied on the 2008 Illinois National Policy and the Aircraft Management Services Agreement ("AMSA"). The AMSA is the contract pursuant to which Jet Aviation procured insurance coverage for Wyndham's benefit. It so happens that the AMSA was entered into in 2001 by a predecessor of the Wyndham

*291556-1*

COUGHLIN DUFFY LLP

Hon. Madeline Cox Arleo, U.S.M.J.
January 11, 2010
Page 3

Defendants, but that does not automatically make all documents dating to that agreement relevant to this matter. Notably, the Wyndham Defendants have produced the documents in their possession relating to the AMSA, amendments to the ASMA, communications with Jet Aviation relating to the AMSA, as well as documents demonstrating the Wyndham Defendants' succession to the ASMA, all without temporal limitation. *See* the Wyndham Defendants' Responses to Plaintiff's Document Requests, attached as **Exhibit A**. In short, all documents relating to the procurement and negotiation of the AMSA have been produced. The AMSA itself sets forth the parties' intent as to the coverage to be provided by Jet Aviation and the Wyndham Defendants maintain that documents relating to the insurance Jet Aviation purchased for the Wyndham Defendants and their predecessor dating to 2001 simply are not relevant to the issues in this matter and requiring production would be unduly burdensome to the Wyndham Defendants. In that regard we note that, as we have explained to plaintiff's counsel, the Wyndham Defendants did not exist as such prior to July 2006. With the exception of the documents they maintained relating to the AMSA, which have been produced, the Wyndham Defendants are not in possession of documents that pre-date that time.

Plaintiff has argued that documents dating to 2001 are relevant to the Wyndham Defendants' assertion that the Illinois National Policy provides primary and non-contributory coverage. That simply is inaccurate. This claim by the Wyndham Defendants is based on the express terms of the AMSA and the 2008 Illinois National Policy. What may be contained in policies issued in prior years (some of which Illinois National issued and so already has), or in documents concerning such policies, has no bearing on or relevance to this issue.

Furthermore, with regard to requests for non-owned aircraft insurance information, the Wyndham Defendants have conceded that they procured non-owned aircraft coverage in 2007 and 2008 from StarNet Insurance Company ("StarNet") and have produced copies of the StarNet policies issued for those years despite the Wyndham Defendants' view that insurance issued by another insurer has no relevance to whether Illinois National must provide coverage under the policy it issued.

Plaintiff also argues that documents from 2001 are relevant to the extent that this Court concludes that the language of the 2008 Illinois National Policy is ambiguous. This again is inaccurate. First, the Wyndham Defendants maintain that the language of the 2008 Illinois National policy is not ambiguous and on its face provides coverage to the Wyndham Defendants for the Underlying Actions. Furthermore, if the language is deemed to be ambiguous, the language should be construed against Illinois National. Even assuming that Illinois National is correct that a finding of ambiguity as to the 2008 Illinois National Policy means that "the relevant inquiry would focus on whether Defendants reasonably expected" coverage under the 2008 Illinois National Policy that

*291556-1*

COUGHLIN DUFFY LLP

Hon. Madeline Cox Arleo, U.S.M.J.
January 11, 2010
Page 4

does not in any way explain how documents relating to other insurance policies are relevant to the Wyndham Defendants' expectations as to the 2008 Illinois National Policy.

Finally, Plaintiff has stated broadly that "evidence concerning the contracting parties' understanding of the terms of an insurance policy are relevant to Illinois National's claim for reformation of the Managed Aircraft Endorsement." As the Wyndham Defendants understand plaintiff's reformation claim, it is premised on a supposed mutual mistake in the 2008 Illinois National Policy. Thus, in order to succeed on its reformation claim plaintiff will have to prove that through this mutual mistake the 2008 Illinois National Policy did not reflect the contracting parties' antecedent agreement. Yet plaintiff fails in its submission to identify what the antecedent agreement is, what the mistake is or how documents dating to 2001 and relating to insurance policies issued in prior years and by non-party insurers could be relevant to proving such agreement or mistake. Indeed, plaintiff's own argument proves the Wyndham Defendants' point. As noted above, the 2008 Illinois National Policy undisputedly has language that is different than the language of the policy issued in 2007 by Illinois National. Thus, documents prior to 2008, which only could concern policies that have language different than the policies at issue, and policies issued by insurers that are not parties to this action, cannot be or lead to "evidence concerning the contracting parties' understanding of the terms of" the 2008 Illinois National Policy.

In short, plaintiff has failed to show how documents dating to 2001, other than those the Wyndham Defendants already have produced, have any relevance to the claims at issue in this action.

        B.    Plaintiff's Requests for Documents from 2001 to Present are Unduly Burdensome

Plaintiff's requests for documents dating back to 2001 pose an undue burden on the Wyndham Defendants. When a document request is shown to be overly burdensome, the party seeking discovery has the burden of demonstrating the relevancy of the request. *Engers v. AT&T & AT&T Mgmt. Pension Plan*, 2004 U.S. Dist. LEXIS 29538 (D.N.J. Mar. 3, 2004). Furthermore, as noted above, the Wyndham Defendants came into existence in July 2006 and have only limited documents from prior to that time, most of which already have been produced (*i.e.*, the ASMA and related documents). To require the Wyndham Defendants to locate documents that potentially exist prior to the Wyndham Defendants' formation would place an undue burden on the Wyndham Defendants given the fact that such documents do not have any relevance to the issues in dispute in this matter.

*291556-1*

COUGHLIN DUFFY LLP

Hon. Madeline Cox Arleo, U.S.M.J.
January 11, 2010
Page 5

II. The Kern Documents

Plaintiff has asserted that communications between Kern & Wooley, counsel for StarNet, and the Wyndham Defendants are not protected by the attorney-client, work product and common interest privileges the Wyndham Defendants have asserted as respects such communications. As noted above, StarNet issued non-owned aircraft liability insurance to the Wyndham Defendants which was in effect at the time of the accident that is the subject of the Underlying Actions. Pursuant to that insurance, StarNet is defending the Wyndham Defendants in the Underlying Actions. StarNet also is providing the Wyndham Defendants with a defense to this lawsuit by Illinois National. As such, the Wyndham Defendants' communications with StarNet, and StarNet's attorney, concerning that litigation, insurance coverage for it and this litigation, absolutely are privileged and protected from disclosure.

Communications among the insured, its insurer and counsel are protected by the attorney client privilege. *Longo v. American Policyholders' Ins. Co.*, 181 N.J. Super. 87, 91 (Law. Div. 1991)(an attorney retained by an insurer has a confidential relationship with the insured and the insurer, and the communications made to the insured and the insurer are privileged); *Pfender v. Torres*, 336 N.J. Super. 379, 392 (App. Div.), *certif. den'd*, 167 N.J. 637, 387-88 (2001) (the privilege applies to communications between an insured and the insurer). The privilege extends to communications made between an insurer and the insured, the attorney and the insured, and the attorney and the insurer, which are all part of the tripartite relationship. *See N.J.S.A.* 2A:84a-20(2); *Lieberman v. Employers Insurance of Wausau*, 84 N.J. 325, 338 (1980) ("[i]nsurance defense counsel routinely and necessarily represent two clients: the insurer and the insured"). This privilege extends to StarNet's counsel, Kern & Wooley.

In addition, plaintiff concedes that Rule 26 protects documents prepared in anticipation of litigation by a party or its representative, including its insurer or agent. The suggestion by plaintiff that this protection would not extend to the attorney of the Wyndham Defendants' insurer is completely unsupported and misplaced. Likewise, plaintiff's complaint that the Wyndham Defendants have failed to include "any responsive documents on a privilege log" is of no moment. This is not a situation where a proper discovery request encompasses documents protected from disclosure as work product, which then must be logged on a privilege log. Here, the request on its face is patently improper as it seeks *only* documents and/or communications between the Wyndham Defendants and StarNet's lawyer concerning the accident at issue in the Underlying Actions, the Underlying Actions themselves, the 2008 Illinois National Policy or the Managed Aircraft Endorsement contained in that policy (*e.g.*, part of the subject matter of this action). The Wyndham Defendants simply have no obligation to respond to such a patently improper request, or log documents in response to it.

*291556-1*

COUGHLIN DUFFY LLP

Hon. Madeline Cox Arleo, U.S.M.J.
January 11, 2010
Page 6

We further note that Illinois National has denied coverage to the Wyndham Defendants under the 2008 Illinois National Policy for the Underlying Actions. Because Illinois National denied coverage, the Wyndham Defendants have no obligation to provide privileged information to Illinois National. Illinois National should not be entitled to obtain that information to which it is not entitled simply because it now has sued the Wyndham Defendants to try to vindicate its coverage position.

At a minimum, documents and communications between the Wyndham Defendants and the Kern and Wooley firm are protected by the common interest privilege. StarNet has provided a defense to the Wyndham Defendants in the Underlying Actions and in doing so StarNet has retained counsel to defend the Wyndham Defendants in the Underlying Actions. Likewise, StarNet retained counsel to defend the Wyndham Defendants in this action. "A community of interest exists where different persons or entities "have an identical legal interest with respect to the subject matter of a communication between an attorney and a client concerning legal advice...". *NL Indus. v. Commercial Union Ins. Co.*, 144 F.R.D. 225, 230-231 (D.N.J. 1992). The common interest doctrine is applicable when an insurer defends an action brought against the insured. *NL Indus.,* 144 F.R.D. at 231. Relevant to the inquiry is whether the parties have employed a lawyer to act for them in common. *HM Holdings v. Lumbermens Mut. Cas. Co.*, No. A-2186-9173 (N.J. App. Div. September 18, 1992), quoting N.J.Evid.R. 26(2)(c); see *Truck Ins. Exchange v. St. Paul Fire & Marine Ins. Co.*, 66 F.R.D. 129 (1975*); Longo v. American Policyholders' Ins. Co.*, 181 N.J. Super. 87, 436 A.2d 577 (Law Div. 1981). By virtue of the retention of lawyers by StarNet to represent the Wyndham Defendants in the Underlying Actions and this action, there is a community of interest between StarNet and the Wyndham Defendants such that communications between the Wyndham Defendants and StarNet, including StarNet's own attorney retained with respect to these matters, are protected from disclosure. Moreover, to require the Wyndham Defendants to produce these materials would have a chilling effect on the open communication that is necessary between a party and its insurer where the insurer has undertaken to defend the party.

III.   The CNA Report

With regard to the CNA report, Plaintiff seeks production of this document and argues that it may relate to the Wyndham Defendants' counterclaim seeking a declaration that the 2008 Illinois National Policy provides primary and non-contributory coverage to the Wyndham Defendants for the Underlying Actions. For two reasons this document is not discoverable.

First, the document has no relevance to the Wyndham Defendants' counterclaim or any other claim at issue in this action. As noted above, the Wyndham Defendants' counterclaim is based on the terms of the 2008 Illinois National Policy and the AMSA.

*291556-1*

COUGHLIN DUFFY LLP

Hon. Madeline Cox Arleo, U.S.M.J.
January 11, 2010
Page 7

The analysis of another insurer not a party to this action as to coverage, the details of the accident at issue in the Underlying Actions or claims that could flow from it has no bearing on whether Illinois National must provide primary and non-contributory coverage to the Wyndham Defendants for the Underlying Actions. Notably, Illinois National could have sued other insurers if it believed they might owe coverage to the Wyndham Defendants or have some obligation to share with Illinois National its coverage obligations, but chose not to. There simply is no issue in this case about the Wyndham Defendants' entitlement to coverage from any insurer other than Illinois National. Thus, the CNA Report has no relevance to this matter.

Second, plaintiff's desire to review a report and coverage analysis of another insurer is not enough to overcome the work product doctrine. The work-product doctrine is "distinct from and broader than the attorney-client privilege." *In re Cendant Corp., Securities Litigation*, 343 F.3d 658, 666 (3d Cir. 2003) (internal citation omitted). Courts have recognized that the doctrine applies to documents prepared by non-attorneys as well. *Id.* at 665 (citing *In re Ford Motor Co.*, 110 F.3d 954, 967 (3d Cir. 1997) (the work product doctrine protected materials prepared by an in-house technical assistant for meetings to be attended by an outside technical consulting firm and lawyers regarding an issue in a product liability suit); *Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252 (3d Cir. 1993) (a technical report prepared by a consulting firm was protected from discovery because the document was prepared in anticipation of litigation by a party's representative (a consultant) for that party's representative (the company's in-house lawyer)); *United Coal Cos. v. Powell Constr. Co.*, 839 F.2d 958, 966 (3d Cir. 1988) (the work product doctrine extended beyond materials reflecting an attorney's mental impressions to encompass materials prepared in anticipation of litigation by a party's insurer); *Sprague v. Director, Office of Workers' Compensation Programs*, 688 F.2d 862, 869-870 (1st Cir. 1982) (opinion letter setting forth expert's medical opinion was protected because it was prepared to advise counsel)"); *See Pfender, supra*, 336 *N.J. Super.* at 392.

The Underlying Actions in this matter arise out of an airplane crash that resulted in the death of five individuals and severe injuries to family members and a multitude of property damage. Litigation was anticipated the moment the Wyndham Defendants and their agents and insurers became aware of the incident. The CNA report contains summaries and analyses of the potential claims and exposure due to the crash. Furthermore, panel counsel had already been retained by CNA to investigate the incident and protect the insured's interests in anticipation of litigation. The fact that the report was prepared only two days after the accident does not undermine the Wyndham Defendants' claim that it was prepared by one of their insurers with the assistance of counsel in anticipation of eventual litigation. Because the CNA report is protected by the work product doctrine, plaintiff cannot obtain it unless a substantial need is demonstrated. Plaintiff has failed to demonstrate that it has any need for this document, much less a

*291556-1*

COUGHLIN DUFFY LLP

Hon. Madeline Cox Arleo, U.S.M.J.
January 11, 2010
Page 8

substantial need for it. *In re Envtl. Ins. Actions*, 259 N.J. Super. 308, 318-19 (App. Div. 1992) (holding that plaintiff in a declaratory judgment action against insurers must disclose work product related to underlying litigation only where defendants showed substantial need and undue hardship).

The Wyndham Defendants further reiterate that Illinois National has denied coverage to the Wyndham Defendants for the Underlying Actions. The CNA Report relates predominantly to the claims that ultimately were asserted in the Underlying Actions and coverage for them. Because Illinois National denied coverage for the Underlying Actions the Wyndham Defendants have no obligation to provide protected information to Illinois National. Illinois National should not be entitled to circumvent this fact by seeking such information in discovery in this case.

IV.     Conclusion

For the foregoing reasons, the Wyndham Defendants respectfully request that this Court rule that plaintiff is not entitled to documents dating to 2001 beyond those already produced by the Wyndham Defendants, is not entitled to documents and/or communications between the Wyndham Defendants and the Kern and Wooley firm and is not entitled to a copy of the CNA Report. If Your Honor would like to see a copy of the CNA Report for an *in camera* review, we will provide a copy to the Court.

Thank you for your consideration of these matters.

Respectfully submitted,

COUGHLIN DUFFY LLP

/s/ Justin N. Kinney
Justin N. Kinney

cc:     (via electronic mail)

Andrew T. Houghton, Esq. (andrew.houghton@sdma.com)
Aaron F. Mandel, Esq. (aaron.mandel@sdma.com)
Sedgwick, Detert, Moran & Arnold LLP
125 Broad Street, 39th Floor
New York, New York 10004
Telephone (212) 422-0202
Facsimile (212) 422-0925

*291556-1*