

**Lowenstein Sandler**
ATTORNEYS AT LAW

**Christopher S. Porrino**
Member of the Firm
Tel  973 597 6314
Fax 973 597 6315
cporrino@lowenstein.com

March 2, 2010

**VIA ECF AND FEDEX**

Hon. Madeline Cox Arleo, U.S.M.J.
United States District Court
District of New Jersey
U.S. Post Office & Courthouse Building
50 Walnut Street, Room 2060
Newark, New Jersey 07102

Re:   Illinois National Insurance Co. v. Wyndham Worldwide Operations, Inc., et al.
      Docket No. 09-1724(JAG)(MCA)

Dear Judge Arleo:

This firm represents Defendants Wyndham Worldwide Operations, Inc., Wyndham Worldwide Corporation, Wyndham Vacation Ownership, Inc., and Wyndham Resort Development Corporation ("WRDC") (collectively, Defendants are referenced herein as "Wyndham") in the above-referenced matter. In accordance with Your Honor's July 28, 2009 Pretrial Scheduling Order, Wyndham respectfully requests leave to file a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure (the "Rules"), and to dismiss the Complaint pursuant to Rules 9(b) and 12(b)(6).

This case arises out of an insurance policy (Gold Medallion Comprehensive Business Aircraft Policy No. 1852800-05) (the "Policy") issued by Plaintiff Illinois National Insurance Company ("Illinois National") to Jet Aviation International, Inc., an aircraft management company hired by Wyndham. The unambiguous policy language provides coverage for alleged accidents relating to aircraft "operated by or at the direction of" Wyndham. Despite this clear term, Illinois National denied coverage for claims arising out of a tragic 2008 airplane accident in Gearhart, Oregon, and instead initiated this action seeking a declaratory judgment and reformation of the Policy on the alleged basis that the policy language represents a "mistake." As discussed below, Illinois National's attempt to avoid its coverage obligations is without legal support, and its claims should be rejected as a matter of law. In addition, Illinois National has failed to plead "mistake" with the requisite particularity, and dismissal is warranted on this basis as well.

As Your Honor is aware, this firm was recently substituted as Wyndham's counsel. During the last month, we have been familiarizing ourselves with the legal and factual issues presented herein, as well as the initial discovery exchanged by the parties. In addition to certain discovery

Hon. Madeline Cox Arleo, U.S.M.J.                                                       March 2, 2010
Page 2

disputes that have arisen, it appears that the current procedural posture of the case calls for an extensive discovery campaign that will prove extraordinarily burdensome to the litigants and non-parties alike. For example, on January 8, 2010, Illinois National issued 122 separate and distinct requests for admission ("RFAs"), accompanied by a four-part interrogatory for each and every RFA, for a total of 610 additional discovery requests.[1] Furthermore, numerous deposition notices and third-party subpoenas are currently pending, with more to be issued in the near future, along with additional interrogatories and documents demands.

The Court's decision regarding the legal issues summarized herein (and to be addressed more fully in Wyndham's proposed dispositive motion) may avoid the need to engage in further discovery or, at a minimum, has the potential to significantly limit the relevant factual issues. Accordingly, Wyndham respectfully requests that a briefing schedule be set and that further discovery be stayed during the pendency of the motion.

**I.      Factual Background**

     A.      The Underlying Actions

Wyndham seeks coverage under the Policy for potential liability arising from an airplane accident in Gearhart, Oregon on August 4, 2008. Jason Ketcheson, an employee of WRDC, rented a Cessna 172 aircraft to travel to a work meeting in Oregon with a colleague, Frank Toohey. Shortly after the plane took off, it crashed into a house resulting in the deaths of the pilot, his passenger, and three children in the house, as well as extensive property damage. Three additional victims (one adult and two children) survived the crash but sustained injuries.

The families and estates of the victims have initiated litigation in Oregon and Florida against Wyndham and other defendants (the "Underlying Actions"). Wyndham has sought insurance coverage from Illinois National under the Policy for defense costs and any damages for which Wyndham may be liable. Illinois National denied coverage and now seeks reformation of the Policy claiming that through some ill-defined "mutual mistake," the Policy does not provide any coverage for the Underlying Actions.

---

[1] Indeed, in light of Illinois National's exceptionally broad requests, it appears that a protective order may be necessary.

**Lowenstein Sandler**
ATTORNEYS AT LAW

Hon. Madeline Cox Arleo, U.S.M.J.                                                                March 2, 2010
Page 3

B.   The Insurance Policy

In 2001, Wyndham and Jet Aviation Business Jets, Inc., a subsidiary of Jet Aviation (collectively, "Jet Aviation"), entered into an Aircraft Management Services Agreement (the "Agreement"). Under the Agreement, Wyndham can elect to purchase insurance coverage through Jet Aviation's insurance provider, i.e., Illinois National. Wyndham elected to purchase insurance coverage under Jet Aviation's policy, is a Named Insured in that policy, and has since paid substantial premiums to Illinois National.

Illinois National issued the Policy to Jet Aviation for the period of April 1, 2008 to April 1, 2009. The Policy contained a Managed Aircraft Endorsement (the "2008 Endorsement") stating that "[t]he insurance afforded by this policy for the interest of the 'Insured Owner' described in Item 1 of this endorsement or the Named Insured (as fully described in Item 1 of the Declarations Page) is extended to other Aircraft insured under this policy but excluding any Non-Owned Aircraft unless such *Non-Owned Aircraft is operated by or used at the direction of the Named Insured*." (Emphasis added.) The 2008 Endorsement further defined "Named Insured" to include Wyndham, thus providing coverage for "aircraft . . . operated by or used at the direction of" Wyndham.

## II.   Legal Argument

Now, after the occurrence of a tragic accident giving rise to millions of dollars in liability, Illinois National seeks to rewrite the Policy and exclude coverage for non-owned aircraft – like the rented Cessna 172 – operated by a WRDC employee. Illinois National argues that because policies in prior years did not extend coverage to Wyndham as a "Named Insured," the Policy should be rewritten to set aside the 2008 Endorsement's language. However, Illinois National's position is contrary to basic principles of insurance law, public policy, and commonsense.

A.   The Policy's Plain Language Provides For Coverage.

As a threshold matter, it cannot be disputed that the Policy's plain language provides coverage for the rented Cessna aircraft that crashed on August 4. As noted above, the Policy included Wyndham in the definition of Named Insured and -- on the very same page -- clarified that coverage extended to aircraft alleged to have to have been operated by or at the direction of Wyndham. There is no dispute that the plaintiffs in the Underlying Actions have alleged that the Cessna was being operated by a Wyndham employee in the ordinary course of his employment at the time of the accident. As such, any and all alleged liability arising from the Cessna's operation, including any and all liability arising from the Underlying Actions, is covered by the Policy.



Hon. Madeline Cox Arleo, U.S.M.J.                                          March 2, 2010
Page 4

### B. There Was No "Mutual Mistake" Between Illinois National And Wyndham.

In its Complaint, Illinois National seeks reformation of the Policy on the basis that the clear language extending non-owned aircraft insurance coverage to Wyndham was the product of a "mistake." (Pl.'s Compl. ¶ 45.) Reformation is an extraordinary remedy that is denied in all but the most extreme circumstances. *Mission Ins. Co. v. Guar. Ins. Co.*, 683 P.2d 215, 218 (Wash. Ct. App. 1984). The party seeking reformation must prove -- ***by clear and convincing evidence*** -- that the alleged drafting error resulted from a "***mutual*** mistake" between the parties. *St. Pius X House of Retreats v. Diocese of Camden*, 88 N.J. 571, 601 (1982).

Here, even without further discovery, Illinois National cannot show by clear and convincing evidence that there was a "mutual mistake" with Wyndham. Wyndham is a "Named Insured" that paid substantial premiums, and who has clear and established rights under the Policy.[2] As such, there can be no "mutual mistake" in the drafting of the Policy without the knowledge or involvement of Wyndham. However, even Illinois National, in its Complaint, has categorically denied that Wyndham had any such knowledge or involvement: "At no time did the Wyndham Defendants request an expansion of coverage under the 2008 Illinois National Policy for non-owned aircraft . . . ." (Pl.'s Compl. ¶ 27.) Accordingly, under these circumstances, any alleged "mistake" is unilateral as a matter of law, and cannot serve as the basis for Illinois National to now set aside its contractual coverage obligations.[3]

---

[2] This is distinguished from an "Additional Insured," whose rights are wholly derivative of those of another party under the policy.

[3] To the extent that Illinois National argues that Wyndham was a third-party beneficiary, rather than a direct party to the Policy, reformation is still not warranted here. Courts have recognized that reformation is particularly inappropriate when the benefits of coverage would be denied to a third-party. *See Duncan v. U.S.A.A. Ins. Co.*, 950 So. 2d 544, 554 (La. 2007). Reformation will not be permitted to prejudice a third-party "entitled to rely on the integrity of the instrument," *Lewis v. Saucer*, 653 So. 2d 1254, 1259 (La. Ct. App. 1995), or deprive a third-party of an "intervening right," *Heim v. Lee*, 654 N.W.2d 161, 165 (Minn. Ct. App. 2002). Moreover, the existence of a mutual mistake by the contracting parties -- or even an agreement by them to reform -- will not change the third-party's rights. *Id.* Indeed, "innocent third parties should not be burdened by the effects of reformation of contracts entered into by others." *Liberty Mut. Ins. Co. v. Mich. Catastrophic Claims Ass'n*, 638 N.W.2d 155, 162 (Mich. Ct. App. 2002).

**Lowenstein Sandler**
ATTORNEYS AT LAW

Hon. Madeline Cox Arleo, U.S.M.J.                                                                    March 2, 2010
Page 5

### C. Illinois National Cannot Obtain Reformation Following An Occurrence.

Furthermore, an insurer may not reform the policy post-occurrence when it would result in the denial of a clear and unambiguous right to coverage. *See* 6B Appleman, *Insurance* § 4258 (Rev. ed. 2009) ("[C]ourts will deny reformation to the insurer after a claim has been filed, if reformation would result in a denial of coverage."); *see also, e.g., Mission Ins.*, 683 P.2d at 218.

It is the insurer's responsibility to define the scope of coverage and to properly review the language in a given policy. *See Public Employees Mut. Ins. Co. v. Mucklestone*, 758 P.2d 987, 988 (Wash. 1988). Following an occurrence, the insurer may not relieve itself of its coverage obligations under the policy on the purported basis that the insurer "meant" something else. *Id.*; *see also Monroe Guar. Ins. Co. v. Langreck*, 816 N.E.2d 485, 490 (Ind. Ct. App. 2004) ("Equity should not intervene and courts should not grant reformation if the party seeking reformation failed to read the instrument, or if it was read, failed to give heed to its plain terms.") This is especially true where, as here, the policy terms are clear and unambiguous, *Peterson v. Schimek*, 729 So. 2d 1024, 1031 (La. 1999), and even when the insurer asserts the existence of a mutual mistake, *e.g., Mission Ins.*, 683 P.2d at 218.

In this matter, Illinois National, as drafter of the Policy, had the opportunity and responsibility to properly set forth the scope of coverage. With coverage clearly implicated for the Underlying Litigation, Illinois National cannot now -- after the occurrence -- absolve itself of its responsibilities under its own Policy.

### D. Illinois National's Own Carelessness Bars Reformation.

In addition, even assuming (without admitting) that the Policy language was the result of a "mistake" on the part of Illinois National, reformation is nonetheless inappropriate because any such mistake is the result of Illinois National's unexplained carelessness. It is Illinois National's responsibility to exercise care in the drafting of its own policies. Reformation will not be granted when the drafter's lack of diligence leads to an error in the policy. *Milhurst Milling & Drying Co. v. Auto. Ins. Co.*, 31 N.J. Super. 424, 434-35 (App. Div. 1954) (refusing to find mistake when the drafter acts with "the want of that care and diligence in the transaction which should be used by every person of reasonable prudence, and the absence of which would be a violation of a legal duty").

Here, the drafter of the Policy, Illinois National, is a large, sophisticated insurance company and a subsidiary of AIG, one of the largest insurance companies in the world. There can be no dispute that Illinois National was obligated to take appropriate measures to review the Policy and its terms before issuing the Policy to its insureds. No additional discovery is needed to demonstrate that even the most cursory review of the 2008 Endorsement would have revealed that the language clearly and unambiguously extended coverage to Wyndham. Accordingly, summary judgment is warranted on this basis alone.

**Lowenstein Sandler**
ATTORNEYS AT LAW

Hon. Madeline Cox Arleo, U.S.M.J.                                      March 2, 2010
Page 6

      E.      <u>Illinois National's Complaint Fails To State A Claim For Mistake.</u>

Both causes of action in Illinois National's Complaint -- for declaratory judgment claim and reformation -- can be dismissed on the ground that they fail to state a claim and are not pled with the particularity required by Rule 9(b). Under Rule 9(b), "the circumstances constituting fraud or *mistake* shall be stated with particularity." (Emphasis added.) The plaintiff is required to support its allegations "with all the essential factual background that would accompany 'the first paragraph of any newspaper story' – that is, the 'who, what, when, where and how' of the events at issue." *In re Rockefeller Ctr. Props. Inc. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002).

Illinois National has not met the stringent Rule 9(b) pleading standard. The Complaint contains no specific allegations explaining when and how the alleged "mistake" occurred, indentifying the individual or individuals who made the mistake, setting forth specific statements and other salient details, or even specifying which companies were involved. *See Hartford Cas. Ins. Co. v. Am. Dairy & Food Consulting Labs.*, Docket No. 09-0914, 2009 WL 4269603 at *15 (E.D. Cal. Nov. 25, 2009) (applying Rule 9(b) to an alleged unilateral mistake). The Supreme Court's recent pronouncements on pleading standards in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 444 (2007) and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) further illustrate why these counts fail to state a claim upon which relief can be granted. The appropriate sanction for Illinois National's imprecise pleading is dismissal.

**III.**    **<u>Conclusion</u>**

Based on the foregoing, reformation of the Policy is not available to Illinois National. Therefore, Wyndham respectfully requests leave to file a motion for summary judgment and motion to dismiss because this case can be decided as a matter of law without the need of further factual discovery. We are available at the Court's convenience, either in person or telephonically, to discuss our request.



Hon. Madeline Cox Arleo, U.S.M.J.                                                          March 2, 2010
Page 7

Thank you for you time and consideration of this matter.

Respectfully submitted,


 /s/      Christopher S. Porrino
            Christopher S. Porrino


03/02/10 13808910.7

cc:      Andrew T. Houghton, Esq. (via ECF and email)
          Aaron F. Mandel, Esq. (via ECF and email)
          Michael David Lichtenstein, Esq.

