125 BROAD STREET, 39TH FLOOR   NEW YORK, NEW YORK 10004-2400
www.sdma.com   212.422.0202 *phone*   212.422.0925 *fax*


Sedgwick
DETERT, MORAN & ARNOLD LLP

*Andrew T. Houghton*
*212-898-4036*
*andrew.houghton@sdma.com*

April 5, 2010

*Via Electronic Filing
and Courtesy Copy Via Federal Express*

Hon. Madeline Cox Arleo
United States District Court for the District of New Jersey
Martin Luther King, Jr. Federal Building & U.S. Courthouse
50 Walnut Street
Newark, New Jersey  07101

Re: *Illinois National Insurance Company v. Wyndham Worldwide Operations, Inc., et al.*, Case No. 2:09-cv-01724
    Our File No.: 02331-085411

Dear Magistrate Judge Arleo:

On behalf of plaintiff Illinois National Insurance Company ("Illinois National"), and pursuant to the Court's Amended Pretrial Order dated February 8, 2010, we write in response to the March 12, 2010 letter from the Wyndham Defendants (collectively, "Wyndham") seeking: (i) a stay of discovery; (ii) an order allowing Wyndham to avoid responding to Illinois National's First Set of Requests for Admissions; (iii) to withhold post-accident documents and communications based upon purported privilege, including those exchanged with StarNet/Berkley Aviation, Kern & Wooley and Aon (the "Post-Accident Documents"); (iv) leave to propound additional discovery; and (v) an order permitting it to assert claims against Jet Aviation Business Jets, Inc. (collectively, with Jet Aviation Holdings, Inc., "Jet Aviation").

## ARGUMENT

### A. Wyndham Has Made No Showing Justifying a Stay of Discovery – Nor Can It

This case was filed a year ago. The parties negotiated a discovery schedule in connection with the original scheduling conference, and then re-negotiated it after Wyndham substituted counsel. In the course of the last year, Wyndham obtained substantial discovery from Illinois National, consisting of approximately 18 boxes of documents. But the discovery has been unilateral. That is, Wyndham has avoided any meaningful response to Illinois National's document requests other than a single file of documents, and has not produced any witnesses for deposition. Wyndham now seeks to end discovery altogether. Based solely on its assertion that it intends to file a dispositive motion, Wyndham requests that all discovery be stayed for 45 days or that only document discovery be permitted, with no depositions allowed. As discussed below, Wyndham has not even attempted to (and, indeed, cannot) meet its burden to justify the extraordinary request to deny Illinois National discovery that is long overdue. Because the prospect of a dispositive motion alone is not sufficient to obtain a stay of discovery, Wyndham's request should be denied.

Discovery stays are "extraordinary" remedies. Gerald Chamales Corp. v. Oki Data Americas, Inc., 247 F.R.D. 453, 456 (D.N.J. 2007). In determining whether to grant discovery stays, courts consider "whether the stay would prejudice the non-moving party and if it would further the interest of judicial economy."

Hon. Madeline Cox Arleo
Re: *Illinois National Insurance Company v. Wyndham Worldwide Operations, Inc., et al.*, Case No. 2:09-cv-01724
April 5, 2010
Page 2

Haas v. Burlington County, No. 08-1102, 2009 WL 4250037 at *2 (D.N.J. Nov. 24, 2009). The party requesting the stay "must state a countervailing interest to abridge a party's right to litigate."[1] This Court has noted the following regarding the propriety of a stay of discovery:

> Pursuant to Rule 26(c), the party seeking stay of discovery must establish "good cause" for such a stay. They are not preferred. "Motions to stay discovery are not favored because when discovery is delayed or prolonged it can create case management problems which impede the court's responsibility to expedite discovery and cause unnecessary litigation expenses and problems." ***"[I]t is well settled that the mere filing of a dispositive motion does not constitute 'good cause' for the issuance of a discovery stay."*** The party seeking a stay "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay ... will work damage to someone else." Coyle v. Hornell Brewing Co., No. 08-2797, 2009 WL 1652399, *3 (D.N.J. June 9, 2009) (citations omitted and emphasis added).

Wyndham is unable to demonstrate that it will suffer any hardship or inequity in being required to go forward with discovery. Indeed, the majority, if not all, of the documents and witnesses sought from Wyndham are located in New Jersey, at Wyndham's offices or right next door in the offices of Avis Budget Group, another spinoff of their common predecessor, Cendant Corporation (Wyndham is located 1 Sylvan Way in Parsippany; Avis is next door at 6 Sylvan Way, in the same business park). Wyndham will incur little or no costs, as its non-owned aircraft insurer, StarNet/Berkley, is funding this litigation. Wyndham does not even suggest that participating in discovery would require it to undertake extraordinary and/or unduly burdensome time and expense. Because "discovery may not be avoided merely because it may involve inconvenience and expense," and because Wyndham's intent to file a dispositive alone is insufficient to justify staying discovery, this Court should deny Wyndham's requested stay for this reason alone.

Moreover, Illinois National has already been unduly prejudiced by Wyndham's systematic obstruction of all efforts to obtain discovery. As discussed in Illinois National's March 12, 2010 letter, its claim for reformation of the subject Policy is fact-intensive. To resolve the claim, the Court will consider a wide variety of evidence of the parties' intentions regarding the coverage at issue, which evidence includes the parties' past course of conduct, other insurance obtained, and testimony. Wyndham seeks to preclude access to any of this relevant evidence. Contrary to what Wyndham would have the Court believe, its alleged motion will not remove the need for this discovery nor will it result in any efficiencies. It will only cause further delays, which is not in the interests of the Court or either party.

Wyndham's request for a stay of all discovery is particularly weak considering that Illinois National expended substantial time and resources to produce the documents requested by Wyndham, only to be met with prolonged stonewalling. In response to Illinois National's motion to compel, Wyndham suggested to the Court in January that additional documents would be produced, but 68 days later not a single piece of paper has been provided. Now, after almost a year of disregarding its discovery obligations and depriving Illinois National of evidence necessary to litigate its reformation and declaratory judgment claims, Wyndham

---

[1] Oki Data, 247 F.R.D. at 456 (quoting CTF Hotel Holdings, Inc. v. Marriot Int'l, Inc., 381 F.3d 131, 139 (3d Cir. 2004)).

Case 2:09-cv-01724-GEB -MCA   Document 56   Filed 04/05/10   Page 3 of 8

Hon. Madeline Cox Arleo
Re: *Illinois National Insurance Company v. Wyndham Worldwide Operations, Inc., et al.*, Case No. 2:09-cv-01724
April 5, 2010
Page 3

is seeking to grind this case to a halt. As a matter of fairness, this Court should deny Wyndham's request and order it to finally respond to Illinois National's longstanding discovery.

**B.     Wyndham Has Not Demonstrated That It Is Entitled to a Protective Order With Respect to Illinois National's Requests for Admissions**

Wyndham argues it need not respond to Illinois National's Requests for Admissions because the number of requests -- 122 -- is "unduly burdensome." Wyndham does not argue, much less demonstrate, that any particular request is burdensome. Wyndham has not even provided the Court with a copy of the Requests. As discussed below, Wyndham's request for a protective order -- based only on the number of the requests and nothing more -- should be denied.

    **1.     The Number of Requests Alone Is Not a Sufficient Basis for a Protective Order**

Wyndham argues that courts routinely grant protective orders based on allegedly "voluminous" discovery requests. The argument is an oversimplification of the issue and not supported by the case law. Courts instead analyze the appropriateness of the number of requests based on "such matters as its nature and complexity, the importance of the issues at stake in a case seeking damages, the limitations on a financially weak litigant to withstand extensive opposition to a discovery program or to respond to discovery requests, and the significance of the substantive issues, as measured in philosophic, social, or institutional terms." Duncan v. Santaniello, No. 94-30224-MAP, 1996 WL 121730 at *2 (D. Mass. Mar. 8, 1996). Courts have permitted parties to serve approximately the same amount of requests for admission as served by Illinois National here. See, e.g., Sommerfield v. City of Chicago, 251 F.R.D. 353 (N.D. Ill. 2008) (refusing to grant a protective order in the face of 177 requests for admission); Duncan, 1996 WL 121730 at *1-2 (rejecting a request for a protective order sought by three defendants served with 292 requests for admission); Shawmut v. Am. Viscose Corp., 12 F.R.D. 488, 489-90 (D. Mass. 1952) (concluding that 106 requests for admission were not unreasonable in light of the complexity of the case).

As the Court noted at the January 27, 2010 status conference, this case is not a run-of-the-mill slip and fall. Rather, it is a dispute as to the availability of insurance coverage to a multi-national corporation under another party's aviation liability policy. In other words, as the Court described, this is a "fairly complex commercial matter." In light of the issues involved in this case, responding to 122 concise and straightforward requests for admission is hardly "unduly burdensome."

    **2.     Defendants Have Not Met Their Burden to Justify a Protective Order**

Requests for admission are considered "valuable litigation tool[s] in that they allow the parties to enumerate stipulations that might otherwise wait until the Pretrial Conference and/or Pretrial Order." Utley v. Wray, No. 05-1356-MLB, 2007 WL 2703094 at *2 n.1 (D. Kan. Sept. 14, 2007). Protective orders based on generalized and unsupported objections are denied. See Duncan, 1996 WL 121730 at *1-2. Thus, a party opposing discovery cannot make "conclusory allegations" that a request is unduly burdensome, but rather must show "specifically" how each discovery request is unduly burdensome. Utley, 2007 WL 2703094 at *3.

A copy of Illinois National's First Set of Requests for Admissions is attached hereto as Exhibit "B". An examination of the individual Requests themselves confirms that they are proper. Wyndham's motion offers no substantive comment on the requests – which Wyndham did not attach to its motion. That is because a review shows the requests are straightforward and reasonable. Indeed, the majority of the

Case 2:09-cv-01724-GEB -MCA   Document 56   Filed 04/05/10   Page 4 of 8

Hon. Madeline Cox Arleo
Re: *Illinois National Insurance Company v. Wyndham Worldwide Operations, Inc., et al., Case No. 2:09-cv-01724*
April 5, 2010
Page 4

requests, numbers 10-93, are part of a recurring series for certain policy years (beginning 2004-2005) preceding the 2008 policy at issue. Again, while Wyndham does not object to the substance of the requests, a review shows they seek admissions establishing the continuity of the coverage, leading up to the 2008 policy in dispute. There are approximately 15 requests for each policy year. These are not 83 disparate requests seeking wide-ranging information, but rather 15 discrete requests addressed to the critical issue of undisputed non-owned coverage that was in place during the preceding policy years. Thus, Wyndham's claim of "undue burden" lacks any substance and should be rejected. Other requests are also plain and straightforward, resulting in no "undue burden" on Wyndham. By way of example, Wyndham is asked to respond to requests for admission such as: (i) "Cendant Operations Inc. and Jet Aviation Business Jets, Inc. entered into an Aircraft Management Services Agreement dated December 19, 2001"; (ii) "[t]he Wyndham Defendants are defendants in one or more lawsuits arising from the Accident"; and (iii) a number of requests simply asking that Wyndham admit that copies of documents attached as exhibits to the Requests are, in fact, true and correct copies of what they purport to be. Additional requests regarding certain policy provisions and obligations thereunder are also proper. See, e.g., Phillips v. United Parcel Service, Inc., No. 08-CV-13978, 2010 WL 746246 at *2 (E.D. Mich. March 2, 2010).

Simply put, Wyndham's vague objection to the Requests is insufficient to justify either granting a protective order or otherwise releasing a party from having to respond to discovery. Wyndham's request should be denied and responses served without further delay.

C.   **Illinois National's Motion to Compel Should be Granted in its Entirety**

   1.   **Wyndham's "Post-Accident Documents" and the CNA Report are not Privileged**

Wyndham argues it may withhold a broad category of "Post-Accident Documents" on attorney-client privilege, work product and common interest privilege grounds, and the CNA Report on work product grounds. Wyndham does not argue the documents are irrelevant. As discussed in Illinois National's March 12, 2010 letter brief, Wyndham's attempt to stretch the privilege to parties that are not in an attorney-client relationship is not well founded.

Because privileges can be employed to obstruct the search for truth, courts apply privileges narrowly. See, e.g., Orion Corp. v. Sun Pharmaceutical Indust., Ltd., No. CIV.A 07-5436, 2010 WL 686545 at *8 (D.N.J. Feb 22, 2010); S.E.C. v. Teo, No. 04-1815, 2009 WL 1684467 at *6 (D.N.J. June 12, 2009). The party resisting disclosure bears the burden of showing the privilege applies. Orion, 2010 WL 686545 at *9; Teo, 2009 WL 1684467 at *6. Wyndham has the burden of establishing the existence of a privilege with evidence, not simply counsel's argument. Peterson v. Bernardi, 262 F.R.D. 424, 428 (D.N.J. 2009) ("burden of proof is not satisfied by [] broad unsupported allegations"). As respects the Post-Accident Documents, Wyndham does not address the substance of any responsive document and how any privilege might apply. Rather, based only on the unsubstantiated assertions of counsel, Wyndham attempts to avoid the burden of proving an applicable privilege by instead distorting the concept of a "tripartite relationship" to shield from discovery *all* materials generated after the accident, as well as to exaggerate the scope – and burdensomeness – of what Illinois National has requested. Wyndham's novel concept of such a blanket privilege does not stand up to scrutiny.

There is no dispute that, pursuant to its policy obligations, StarNet/Berkley is providing a defense to Wyndham in the underlying wrongful death actions resulting from the accident and retained the firm of Dombroff Gilmore Jaques & French to defend Wyndham. Illinois National, however, does not seek

Case 2:09-cv-01724-GEB -MCA   Document 56   Filed 04/05/10   Page 5 of 8

Hon. Madeline Cox Arleo
Re: *Illinois National Insurance Company v. Wyndham Worldwide Operations, Inc., et al.,* Case No. *2:09-cv-01724*
April 5, 2010
Page 5

communications between Mr. Dombroff, Wyndham and StarNet/Berkley regarding the defense of the underlying cases. Principles underlying the "tripartite relationship" govern those communications.

But Wyndham (or rather, Berkley, who is controlling the defense of this coverage litigation), seeks to go further and super-impose the privilege recognized in the "tripartite relationship" to other parties based on an artifice. StarNet/Berkley evidently is also providing a defense to Wyndham in this coverage litigation and retained the firms of Coughlin Duffy and now Lowenstein Sandler to defend Wyndham. Wyndham states that Berkley has acknowledged its "duty to defend" Wyndham in this coverage action pursuant to the StarNet/Berkley Policy. The notion that StartNet/Berkley has a defense obligation to Wyndham in this insurance dispute is bizarre, and no evidence or legal argument is offered by Wyndham that such an obligation exists in reality. In fact, StarNet/Berkley's defense of this coverage litigation is purely gratuitous, and not pursuant to any obligation under the StarNet/Berkley Policy. The real reason StarNet/Berkley has intermeddled in this dispute is to allow it to control the case, including keeping a tight lid on evidence to be provided by Wyndham. This control serves StarNet/Berkley's self-interests and its attempt to shift coverage for the underlying actions to Illinois National's Policy. In any case, Illinois National's requests do not seek communications between Coughlin Duffy or Lowenstein Sandler, Wyndham and StarNet/Berkley. Thus, Wyndham's warning of a "chilling effect" on communications and an "enormous" universe of responsive documents are simply exaggerated and misleading.

The crux of Wyndham's radical privilege theory is the nebulous and unsupported claim that StarNet/Berkley "retained Kern & Wooley to coordinate defense efforts on Wyndham's behalf" evidently in both the underlying wrongful death actions and this coverage litigation. Thus, Wyndham blurs and distorts the concept of the "tripartite relationship" to include communications between Mr. Kern and Wyndham regarding insurance coverage, and specifically, regarding coverage under the 2008 Illinois National Policy, as well as all "Post-Accident Documents" among Wyndham, Kern, StarNet/Berkley and Aon. Wyndham thus would have this Court simply extend a broad umbrella of privilege over StarNet/Berkley's purported "coordinating" counsel, effectively bypassing any proof normally required to show a privilege exists.

However, the cases relied upon by Wyndham regarding the "tripartite relationship", Longo and Liberman, are inapplicable as they only address the privilege surrounding the attorney retained to defend the insured in the underlying wrongful death actions (which in this case is the Dombroff firm). It is undisputed that Mr. Kern is *not* defending Wyndham in either the underlying wrongful death actions or in this coverage litigation. Mr. Kern admittedly is only coverage counsel for his client, StarNet/Berkley, and his position is necessarily adverse to Wyndham, precluding the possibility of an attorney-client relationship. Belatedly and conveniently anointing Mr. Kern with the title of "coordinating counsel" proves nothing regarding the applicability of any privilege. Wyndham offers no authority extending the tripartite relationship or privilege to the insurer's "coordinating counsel" or coverage counsel. Whether privilege can attach between StarNet/Berkley's coverage counsel and Wyndham first depends whether there is an attorney-client relationship between Mr. Kern and Wyndham, followed by the requisite elements of the privilege. Cf. Nationwide Mutual Ins. Co. v. Dimenchi, No. Civ. A. 03-2580, 2004 WL 2897942 at *3 (E.D.Pa. Dec. 9, 2004) (insured sought documents of insurers' coverage counsel who she believed were her "legal team"). Here, no such relationship has been demonstrated. In fact, Mr. Kern's own words, and subsequent confirmation by Wyndham's counsel, Coughlin Duffy, confirms no such relationship exists: "We represent Berkley Aviation, LLC, an insurer of Wyndham Worldwide …. Our representation is limited to coverage issues." See Exhibits F - H to Illinois National's March 12 letter.

Hon. Madeline Cox Arleo
Re: *Illinois National Insurance Company v. Wyndham Worldwide Operations, Inc., et al.*, Case No. 2:09-cv-01724
April 5, 2010
Page 6

Thus, under the false premise that some sort of *super* tripartite relationship exists, Wyndham goes on to recite the general law concerning privilege to justify its request for a blanket prohibition of discovery. But this Court should note the limited scope of Illinois National's requests for documents and/or communications relating to the availability of coverage for the underlying actions under either the Jet Aviation Policy or the StarNet/Berkley Policy. Wyndham has not established that any responsive documents fall within the confines of the attorney-client privilege (as construed in the context of the tripartite relationship[2]) or the work product doctrine because it has not demonstrated that they were prepared and/or exchanged for the dominant/primary purpose of defending Wyndham in the underlying wrongful death actions. Further, Wyndham's common interest privilege claims are misplaced because: (i) Wyndham has not demonstrated that any Post-Accident Documents are protected by any underlying privilege; and (ii) as respects the issue of insurance coverage, the interests of at least StarNet/Berkley and its coverage counsel, Kern & Wooley, are adverse to Wyndham's.

Turning to the CNA Report, Wyndham simply has not met its burden to demonstrate that the CNA Report was prepared or obtained because of the prospect of litigation and was, in fact, prepared primarily for the purpose of litigation. Alternatively, given that Wyndham has admitted that the CNA Report contains an analysis of the availability of coverage for Wyndham under an as-of-yet undisclosed and unidentified insurance policy issued to it by CNA (even though Illinois National specifically requested that Wyndham identify all insurance policies which might potentially provide coverage to Wyndham for the accident and/or underlying actions), the portions of the CNA Report relating to the underlying facts, relevant provisions of the apparent CNA policy and analysis of coverage for Wyndham under the CNA policy would not be protected under the work product doctrine even if this Court somehow concludes that Wyndham has demonstrated that the CNA Report is entitled to protection on work product grounds.

2. **Wyndham's Disclosures are Long Overdue**

Despite Wyndham's assurances that certain disclosures would – someday – be forthcoming or that it would make "reasonable efforts" to produce documents, the fact remains that Wyndham has not made **any** further disclosure since documents were originally produced on August 31, 2009:

- Wyndham asserts that it will make "reasonable efforts" to produce materials dating back to 2006, while still questioning their obvious relevance and qualifying its promise by claiming, without any verifiable basis, that materials predating 2006 are held by a third party (referring to Avis, which, like

---

[2] Wyndham's attempt to include Aon within the tripartite relationship is unavailing. Neither of the cases cited by Wyndham support of its claim that insurance brokers fall within the tripartite relationship -- *i.e.*, Maertin v. Armstrong World Industries, 172 F.R.D. 143 (D.N.J. 1997) and Miller v. Haulmark Transport Systems, 104 F.R.D. 442 (E.D. Pa. 1984). The court in Maertin simply noted that work product protection could apply to documents prepared by non-attorneys so long as the party withholding the documents met its burden to demonstrate that work product doctrine otherwise attached (which Wyndham has not). The Miller court held that the presence of an insurance agent who was instrumental in obtaining the insurance at issue at a meeting organized for preparing an answer and possible defenses to the complaint did not otherwise destroy the attorney-client privilege. Here, Wyndham has not even suggested that the purpose of its post-accident communications with Aon was for the dominant purpose of facilitating Wyndham's defense in the underlying wrongful death actions and there is accordingly no reason to casually extend the tripartite relationship to cover Aon.

Hon. Madeline Cox Arleo
Re: *Illinois National Insurance Company v. Wyndham Worldwide Operations, Inc., et al., Case No. 2:09-cv-01724*
April 5, 2010
Page 7

>    Wyndham, was spun off from Cendant at the same time, and is right next door in the same business park in Parsippany). Still, 73 days since the substitution of Wyndham's counsel and 34 days since the March 2 meet and confer conference, not even contemporary documents have been produced.
>
> - Although Wyndham agreed to produce materials relating to any tender to Aviation Adventure's insurer, nothing yet has been produced.
>
> - Although Wyndham agreed to produce materials from the underlying litigation, nothing yet has been produced.
>
> - Although Wyndham now states that it will identify those individuals providing information for Wyndham's response to interrogatories,[3] no such information yet has been provided.

Despite its assurances,[4] Wyndham has failed to make *any* supplemental disclosure. It is apparent that Wyndham is hedging in the hope that the Court will shut down discovery before it has to make good on its promises in any meaningful way. The Court should not tolerate this abuse, and order the document production within 20 days.

### D.   The Court Should Deny Wyndham's Request for Leave to Propound Additional Discovery

Wyndham requests that this Court grant it leave to propound additional interrogatories.[5] To date, however, Wyndham has only served 15 of the 25 permitted interrogatories. Furthermore, Wyndham offers no explanation as to why -- in a case they contend is resolvable without the need for any discovery -- they need to propound additional interrogatories. Accordingly, Illinois National respectfully requests that this Court deny Wyndham's request for leave to serve additional interrogatories.

### E.   Wyndham's Request for an Order Preserving Its Claims Against Jet Aviation

Reprising a request it initially made on December 29, 2009 (*i.e.*, only days before the January 2, 2010 deadline for amending the pleadings), Wyndham requests that the Court issue an order either "reserving [Wyndham's] rights to assert potential claims [against Jet Aviation] or, in the alternative, extend[ing] the time to amend the pleadings to add parties beyond the January 2, 2010 deadline specified in the Pre-trial Scheduling Order." As discussed in our December 30, 2009 response to Wyndham's original request, Illinois National does not object to Wyndham's proposal to extend the deadline to amend their pleadings

---

[3] During the March 2 conference, Wyndham indicated that they "may" respond to Interrogatory No. 16 and subsequently failed to respond to Illinois National's further inquiry whether they would in fact provide the requested information. See Illinois National's March 10, 2010 letter attached as Exhibit "C" to the March 12, 2010 letter brief.
[4] Wyndham also claims that "we informed Illinois National that Berkley will produce its underwriting file for the policies at issue." No such assurance was in fact made in the March 2 conference at which time counsel only stated they would "look into" the response (see Illinois National's March 10, 2010 letter confirming the agreements and outstanding issues attached as Exhibit "C" to the March 12, 2010 letter brief) and, regardless, no such production has been forthcoming.
[5] Wyndham also seeks leave to serve additional document requests. Insofar as the Federal Rules of Civil Procedure do not limit the number of document requests which a party may serve, we do not address this aspect of Wyndham's request.

Hon. Madeline Cox Arleo
Re: *Illinois National Insurance Company v. Wyndham Worldwide Operations, Inc., et al.*, Case No. *2:09-cv-01724*
April 5, 2010
Page 8

and initiate their purported claim against Jet Aviation. However, Illinois National believes such a claim would be meritless because: (i) the scope of coverage provided to Wyndham under the insurance procured by Jet Aviation pursuant to the Aircraft Management Services Agreement (the "2001 Agreement") never changed; and (ii) Wyndham never claimed that the coverage secured by Jet for each of the policy years during the period 2001 through 2007 breached the requirements set forth in the 2001 Agreement.

## CONCLUSION

For all of the reasons explained above, Illinois National respectfully requests that this Court deny Wyndham's requests for a stay of discovery, for a protective order as to Illinois National's First Set of Requests for Admissions, for leave to propound additional discovery; and for an order permitting it to assert claims against Jet Aviation. Illinois National respectfully requests that this Court grant Illinois National's motion to compel in its entirety.

Respectfully submitted,

Andrew T. Houghton
Sedgwick, Detert, Moran & Arnold LLP