# LOWENSTEIN Sandler

ATTORNEYS AT LAW

**Michael David Lichtenstein**
Member of the Firm
Tel  973 597 2408
Fax 973 597 2409
mlichtenstein@lowenstein.com

June 10, 2010

**VIA ECF (COURTESY COPY VIA HAND DELIVERY)**

Honorable Madeline Cox Arleo, U.S.M.J.
United States District Court
District of New Jersey
M.L. King, Jr. Federal Building & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07101

Re:   **Illinois National Insurance Co. v. Wyndham Worldwide Operations, Inc. et al.,
Docket No. 09-1724**

Dear Judge Arleo:

This firm represents Defendants Wyndham Worldwide Operations, Inc.,
Wyndham Worldwide Corporation, Wyndham Vacation Ownership, Inc., and Wyndham Resort
Development Corporation (collectively "Wyndham") in the above referenced matter. Wyndham
respectfully requests that Your Honor deny Illinois National Insurance Company's ("Illinois
National") motion to compel. As discussed herein, Wyndham has made valid and justified
assertions of privilege, and has been actively involved in litigating this case and fulfilling its
discovery obligations. As directed by Your Honor, the privileged documents at issue in this
motion will be made available for *in camera* review and will be sent under separate cover.

## I.   PROCEDURAL BACKGROUND

On May 26, 2010, Illinois National filed a motion to compel production of
privileged and other documents, and an interrogatory response. Specifically, Illinois National
seeks to compel production of privileged communications between Wyndham and Wyndham's
in-house counsel and outside attorneys (identified on the May 17 and May 20 privilege logs) on

the unfounded assumption that they are business communications.  Illinois National also seeks

production of additional documents and a revised interrogatory response (which have been or

will be addressed, making these issues moot).  Your Honor set a briefing schedule and made this

motion returnable on June 24, 2010 in conjunction with the hearing for the parties' other pending

discovery applications (addressed in Wyndham's May 21, 2010 letter-brief and Illinois

National's June 4, 2010 opposition).

        Illinois National's spurious accusations notwithstanding, Wyndham's activities

since the April 14, 2010 in-person hearing before Your Honor demonstrate that it has been

actively involved in litigating this action and fulfilling its obligations in discovery.  On April 16,

2010, Realogy[1] responded to Illinois National's subpoena and produced responsive documents.

On May 6, 2010, Avis Budget Group ("ABG") also produced, in response to Illinois National's

subpoena, hundreds of pages of responsive documents.  By May 17, 2010 Wyndham produced

hundreds of pages, including Pre-Accident documents, documents produced by Wyndham in two

Underlying Actions, a Report issued by Wyndham's general liability insurer shortly after the

Accident (the "CNA Report"), and a privilege log (the "May 17 privilege log") (at issue in this

motion to compel).  On May 20, 2010, Wyndham made a supplemental production also

accompanied by a privilege log (the "May 20 privilege log") (also at issue in this motion) and

provided Illinois National with a revised response to its Interrogatory No. 16.  On May 21, 2010,

Wyndham filed its brief with Your Honor in support of its claim of privilege with Berkley, Mr.

Kern, and Aon along with a privilege log (the "May 21 privilege log").  On May 24, 2010,

Wyndham provided Your Honor with documents identified on the May 21 privilege log for *in

camera* review and responded to Illinois National's 122 Requests for Admission.  On June 4,

---

[1] Lowenstein Sandler represented Realogy and Avis Budget Group for the purpose of responding
to the subpoenas issued by Illinois National to both entities.

**Lowenstein
Sandler**
ATTORNEYS AT LAW

2010, Wyndham produced the Berkley's underwriting file (obtained from Berkley) for 2006-2009 and Wyndham also made a supplemental document production.

On May 19, 2010, counsel for both parties, as directed by Your Honor, held a "meet and confer" telephone conference. Prior to the "meet and confer," Wyndham identified to Illinois National the requests for admissions it found objectionable and the specific documents on Illinois National's privilege log where it erroneously asserted privilege.[2] During the telephone call counsel Illinois National raised, for the first time, concerns with Wyndham's May 17 privilege log. Because of the lack of notice, both parties agreed to table the issue. On May 20, 2010 Illinois National sent a letter stating certain privilege concerns and other purported discovery deficiencies. Wyndham immediately initiated efforts to respond to these claimed deficiencies. However, four business days later and prior to Wyndham's response, Illinois National filed this motion to compel.

## II.  WYNDHAM AND ABG'S ASSERTIONS OF PRIVILEGE AND WORK PRODUCT ARE VALID

As part and parcel of its overreaching litigation strategy, Illinois National once against seeks to pierce Wyndham's valid and sustainable invocations of privilege. Illinois National's only goal appears to be to invade the privileged relationship between a client (Wyndham) and an attorney (Wyndham's in-house and outside counsel) that were made in the context of providing legal services and in anticipation of litigation. This strategy was first made apparent by Illinois National's efforts to obtain post-Accident communications between Wyndham and Berkley, Mr. Kern, and Aon. Illinois National's misguided approach is further

---

[2] Illinois National had improperly withheld hundreds of pages of documents on the supposed basis of a "confidential and proprietary information" privilege. Following the meet and confer, Illinois National produced such documents.

**Lowenstein Sandler**
ATTORNEYS AT LAW

Honorable Madeline Cox Arleo, U.S.M.J.                                    June 10, 2010
Page 4

emphasized by its attempt to chill the free flow of information and strategy between Wyndham and numerous *outside attorneys* including Crowell & Moring, Day Pitney, and Dombroff Gilmore.

**A.    The Communications Identified on Wyndham's Privilege Logs Were in Furtherance of Providing and Obtaining Legal Advice.**

       1.    <u>Communications with Wyndham's In-House and Outside Counsel are Privlieged.</u>

The attorney-client privilege is in place to protect exactly the types of communications identified on Wyndham's privilege logs. These communications were not "business communications" as Illinois National asserts but instead confidential communications between attorney and client made in the context of seeking or providing legal advice. As such, they are protected from disclosure to parties outside that confidential relationship. Accordingly, this Court should deny Illinois National's motion to compel production of these privileged documents.

"The attorney-client privilege is deeply embedded in our jurisprudence and formed a part of the common law of England prior to the birth of this country." *United Jersey Bank v. Wolosoff*, 196 N.J. Super. 553, 561 (App. Div. 1984). Courts routinely recognize the importance and "sanctity" of the attorney-client privilege. *E.g., id.* "The privilege recognizes that sound legal advice or advocacy serves public ends and rests on the need to encourage full and frank communication between attorneys and their clients." *Id.* (internal quotation marks omitted). Confidentiality is key to promoting "an open atmosphere of trust." *Id.* Without confidentiality between attorney and client, and the trust it engenders, the foundation and purposes of the attorney-client privilege would be eviscerated.



The attorney-client privilege "unquestionably extends to corporations, which must act through agents, including their officers and employees." *Id.* at 562; *accord Leonen v. Johns-Manville*, 135 F.R.D. 94, 98 (D.N.J. 1990). The purposes of the attorney-client privilege equally apply to communications related to legal advice "between corporate employees and in-house counsel" who also have a "necessity for full and open disclosure." *United Jersey*, 196 N.J. Super. at 562. As a result, such "confidential communications are exempt from discovery." *Id.* For this reason, "there is a presumption that a lawyer in the legal department or working for the general counsel is most often giving legal advice." *Boca Investerings P'ship v. United States*, 31 F. Supp. 2d. 9, 12 (D.D.C. 1998).

Illinois National attempts to broadly cast any and all of Wyndham's communications involving in-house counsel as "business communications." To the contrary, as the Court will note in its *in camera* review, they are actually communications made in furtherance of the provision of legal advice. In each of the documents identified on the May 17, May 20, and ABG privilege logs[3], an attorney was either an author or a recipient. As is evident from even a cursory review of the privilege log, in-house counsel at Wyndham or its outside attorneys were not merely "cc'd", as Illinois National suggests. *Contra Spinello v. Hartford Fire Ins. Co.*, 2008 WL 2775643, at *2 (D.N.J. July 14, 2008). Moreover, each of the in-house attorneys appearing on the communications work within Wyndham's legal department, giving rise to a presumption that their communications involve legal advice. *See Boca Investerings*, 13 F. Supp. 2d at 12.

Indeed, the documents identified on the privilege log are related to the provision of such advice, including the analysis of contract provisions, an assessment of insurance

---

[3] The May 17, May 20, and ABG Privilege Logs can be found at Exhibits A, B, and C, respectively.

**Lowenstein
Sandler**
ATTORNEYS AT LAW

Honorable Madeline Cox Arleo, U.S.M.J.                                          June 10, 2010
Page 6

provisions and the legal entitlement to coverage, and information requests by attorneys or at their direction so that facts necessary to rendering legal advice can be obtained. Specifically, the communications fall within the following categories:

*Analysis of Contractual Provisions*: These communications are between corporate employees and in-house counsel and address communications and contractual provisions and obligations related to Wyndham's 2006 spinoff. (*See* May 17 Privilege Log Tabs 1, 4; ABG Privilege Log Tab 1)

*Legal Advice related to Insurance Policy Provisions and Exclusions*: These are communications between only Wyndham's in-house counsel; between outside counsel and in-house counsel; or between Wyndham's in-house counsel and corporate employees. The content of the communications are questions by counsel to assess the legal entitlement to coverage; communications regarding insurance policies and policy provisions to enable a legal assessment of entitlement to coverage; and legal analysis of availability of coverage based on policy language; and advising attorneys of insurer participation. (*See* May 17 Privilege Log Tabs 5-6, 12-22; May 20 Privilege Log Tabs 3-4)

*Disclosure of Privileged Documents to non-Wyndham Entities*: This communication between Wyndham's in-house counsel and a corporate employee is an analysis of what documents Wyndham should disclose to non-Wyndham entities pursuant to an information request without waiving privilege. (*See* May 20 Privilege Log Tab 5)

*In-house Counsel Handwritten Notes Related to Wyndham's Legal Entitlement to Coverage and Document Requests*: These notes where taken by Wyndham's in-house counsel during a conference call on Wyndham's legal entitlement to coverage. They contain the attorney's mental thoughts and impressions. They also list documents that are needed to make a legal determination as to entitlement to insurance coverage. (*See* May 20 Privilege Log Tab 2)

Illinois National's overreaching position is further demonstrated by its demand for attorney-client communications between Wyndham and its outside counsel:



Honorable Madeline Cox Arleo, U.S.M.J.                           June 10, 2010
Page 7

*Communications with Crowell & Moring*[4]:   These communications between Wyndham's in-house counsel and Wyndham's outside counsel, Crowell & Moring, relate to the retention and scope of Crowell & Moring's representation, information related to aircraft management agreement negotiations, and a chart identifying certain contract provisions.  (*See* May 17 Privilege Log Tabs 23-26; May 20 Privilege Log Tab 1[5])

*Communications with Dombroff Gilmore*:   This communication between Dombroff Gilmore (who is defending Wyndham in the Underlying Actions) and Wyndham's in-house counsel relates to putting insurance carriers on notice in the context of the Underlying Actions.  (*See* May 17 Privilege Log Tab 27)

*Communications with Day Pitney*:   This communication between Wyndham's outside counsel, Day Pitney, and Wyndham's in-house counsel contains Day Pitney's legal analysis of insurance provisions.  (*See* May 20 Privilege Log Tab 3)

As this review demonstrates, the communications on Wyndham's privilege log were made between clients or corporate employees and attorneys, in their professional capacities. The attorneys were not functioning in merely a business role.  Wyndham has properly asserted the attorney client privilege over these documents and they are protected from disclosure.

---

[4] In its moving brief, Illinois National initially claims that it is not contesting Wyndham's claim of privilege with regard to certain communications with Crowell & Moring.  (Illinois National Br. at 2 note 2.)   However, Illinois National goes on to challenge three privileged communications between Wyndham and Crowell & Moring.

[5] This chart was attached to a privileged e-mail between Crowell & Moring and Helen Allison, Esq. identified on the May 17 Privilege Log at Tab 8. Illinois National has not contested privilege over the e-mail.  The chart appears to have been created by Anne Morrison, Esq. and is also privileged.

**Lowenstein
Sandler**
ATTORNEYS AT LAW

2.    <u>Illinois National's Contention that Privilege should be Pierced Lacks
Merit</u>

Illinois National even goes so far as to assert that it is entitled to discovery of privileged documents by claiming the content of the communication is "in issue." Illinois National is overreaching and its application should be rejected.

When addressing a request to pierce a privilege, courts first address the threshold question of whether "the party claiming the privilege has implicitly waived it by putting the confidential communications 'in issue' in the litigation." *Kinsella*, 150 N.J. 276, 300 (1997); *accord United Jersey*, 196 N.J. Super. at 565. Under New Jersey law, the "in issue" doctrine is not a simple function of the types of causes of action asserted, but rather involves a careful analysis of the facts of the case and the parties' litigation positions. *Kinsella*, 150 N.J. at 301. Thus, any "'in issue' implied waiver of . . . privilege must be tested by application of *Kozlov's* three-part standard." *Id.* at 315. In *Kinsella*, the Supreme Court relied upon *United Jersey* to find that the "in issue" exception must be tempered by the *Kozlov* test. *Kinsella*, 150 N.J. at 300-01. In *United Jersey*, before the court found *Kozlov* applied it first established that the plaintiff placed its privileged communications at issue and only then concluded that the *Kozlov* three-part test was met. *United Jersey*, 196 N.J. Super. at 564-65.

Once the forgoing threshold question is answered, the party seeking to overcome privilege must meet the *Kozlov* three-part test by demonstrating (1) a legitimate need for the evidence, (2) the relevance and materiality of the evidence, and (3) its unavailability from a less intrusive source. *In re Kozlov*, 79 N.J. 232, 243-44 (1979) (client's name was privileged and it was not overcome because there was no showing that the information was not available from a less intrusive source). However, "[c]ases applying *Kozlov* have generally upheld the attorney-client privilege." *Kinsella v. Kinsella*, 150 N.J. 276, 299 (1997). The burden of establishing the

**Lowenstein
Sandler**
ATTORNEYS AT LAW

necessary elements to overcome the attorney-client privilege falls to the person seeking to invade the privilege. *See Kozlov*, 79 N.J. at 243-44; *cf. Nat'l Util. Serv., Inc. v. Sunshine Biscuits, Inc.*, 301 N.J. Super. 610, 618 (App. Div. 1997).

Illinois National cannot meet its heavy burden under *Kozlov* and *United Jersey*. First, Illinois National turns *Kozlov* case law on its head by suggesting that piercing privilege is justified when *Illinois National* (rather than Wyndham) puts the communications' content at issue. As is well recognized by all but Illinois National, this rare exception is arguably applicable only when the party asserting privilege first puts the content of that protected information "in issue." *Kinsella*, 150 N.J. at 300; *United Jersey*, 196 N.J. Super. at 565. Here, it is Illinois National -- not Wyndham -- that has put purported "inconsistencies in Wyndham's views as to coverage" at issue. In fact, Illinois National does not contend anywhere in its submission that Wyndham put such purported "inconsistencies" in issue. Moreover, the attorney-client privilege would be meaningless if a party could place a communication "in issue" simply by challenging the claim of privilege.[6] As Wyndham has not placed the content of its communications "in issue" the Court's inquiry can end here.

Second, in any event, Illinois National has not satisfied the three-part test in *Kozlov*. *Kinsella* acknowledged that courts consistently deny requests to pierce the privilege because the party asserting the privilege has not placed the communications "in issue" or the party seeking to overcome the privilege fails to make a showing that the information is not obtainable from a less intrusive source. 150 N.J. at 299-300. Not surprisingly, "[c]ases applying *Kozlov* have generally upheld the attorney-client privilege." *Kinsella*, 150 N.J. at 299. Here,

---

[6] By Illinois National's logic, Wyndham would be equally entitled to all documents on all of Illinois National's ostensibly privileged documents simply by demanding theme.

**Lowenstein
Sandler**
ATTORNEYS AT LAW

aside from the recitation of this exception, Illinois National makes no attempt to show it has a need for the privileged communications. Indeed, Illinois National forgets, in its quest to pierce privilege, that there are clearly less intrusive ways to obtain the facts relating to Wyndham' coverage position. Wyndham's coverage position was fully explored through its responses to Illinois National's 122 requests for admissions. In addition, Illinois National has noticed numerous individuals for depositions who can testify about Wyndham's coverage positions. When less intrusive sources are available to obtain the information, as here, courts consistently uphold privilege. *See Sklodowsky v. Am. Dev. Of New Jersey*, Docket No. HNT-L-459-04, 2005 WL 3488456, at *6 (N.J. Super. Ct. App. Div. Dec. 9, 2005) (privilege upheld when information available through less intrusive depositions); *Runyon v. Smith*, 322 N.J. Super. 236, 245 (App. Div. 1999) ("[T]he third and crucial prong of *Kozlov*, that the information sought cannot be secured from a less intrusive source, was not satisfied."); *Roe v. Roe*, 253 N.J. Super. 418, 433 (App. Div. 1992).

In sum, Illinois National misapplies the case law and has failed to meet its burden under *Kozlov*, and Wyndham's privilege assertions should be upheld.

**B.      Post-Accident Communications are entitled to the protections of Work Product Doctrine**

As noted in our May 21, 2010 submission to the Court, the work-product doctrine prevents discovery of "documents that are prepared in anticipation of litigation or for trial by or for another party or its representative." Fed. R. Civ. P. 26(b)(3)(A). Specifically, it protects "mental impressions, conclusions, opinion and legal theories done in preparation of litigation." *NL Indus. v. Commercial Union Ins. Co.*, 144 F.R.D. 225, 228-29 (D.N.J. 1992). The work-product doctrine can only be overcome if the party seeking discovery "has shown a substantial

**Lowenstein
Sandler**
ATTORNEYS AT LAW

Honorable Madeline Cox Arleo, U.S.M.J.                                    June 10, 2010
Page 11

need for the information, and has proven that the information is not obtainable without undue

hardship." *Id.* at 229. In fact, such opinion work-product, including an "attorney's evaluation

and strategy concerning a case is almost always absolutely privileged." *Id.* at 228-29. Even if

the *Kozlov* three-part test is met, courts still preclude disclosure, under the work product

doctrine, of an attorney's "impressions, conclusions, opinions, and theories" unless the party

protecting them places them at issue. *HM Holdings, Inc. v. Lumbermens Mut. Cas. Co.*, 259 N.J.

Super. 308, 319 (App. Div. 1992).

Illinois National takes the position that the work product doctrine only applies to

anticipation of the instant litigation. Illinois National is wrong. In a case cited in Illinois

National's brief, the protections of the work-product doctrine applicable in one litigation extend

to other related litigations. *Leonen*, 135 F.R.D. at 97 (the District of New Jersey "follows that

line of cases which requires a close connection in parties or subject matter between the two

matters.").

Documents that were prepared in anticipation of the Underlying Actions are

likewise protected in this Action by the work-product doctrine. On August 4, 2008, following a

tragic plane crash with death, injuries, and property damage, litigation was clearly anticipated.

"[T]he anticipation of the filing of a claim is undeniable once an accident has occurred and a

person injured or property damaged." *Fontaine v. Sunflower Beef Carrier, Inc.*, 87 F. R.D. 89,

92 (E.D. Mo. 1980). This declaratory action is closely related to and, in fact, is a natural

outgrowth of the Underlying Actions.[7] It arises out of the Underlying Actions, as Illinois

National is seeking to shirk its plain obligation to provide coverage for liability incurred by

---

[7] Wyndham could have joined Illinois National as a third-party defendant in the Underlying
Actions to litigate the same coverage issues. In such a situation Illinois National could hardly
argue that it's the two actions were not intertwined.

**Lowenstein
Sandler**
ATTORNEYS AT LAW

Wyndham in the Underlying Actions.  In addition, the pursuit of insurance coverage is closely tied to the Underlying Actions.  This is demonstrated by the fact that Wyndham's duty to cooperate and pursue other insurers is triggered by Berkley's defense of the Underlying Actions. Moreover, many of the communications on the privilege log address the legal entitlement to insurance coverage shortly after the Accident, which further indicates that attorneys and corporate employees believed that Wyndham had exposure to liability requiring coverage. Therefore, Wyndham is entitled to the protections of the work-product doctrine.

### III.   WYNDHAM'S SUPPLEMENTAL PRODUCTIONS HAVE MOOTED ILLINOIS NATIONAL'S REMAINING COMPLAINTS

Illinois National's remaining points are either unfounded or have been mooted. For example, the Berkley underwriting files and policies have now been produced to Illinois National for the policy periods of 2006 through 2009.  In addition, efforts are currently underway to obtain the communications to the insurers that were placed on notice, as reflected in the spreadsheet identified by Illinois National, along with the relevant policies.  All such documents within Wyndham's possession, custody, or control will be produced as soon as possible.

On May 20, 2010 Wyndham also provided Illinois National a response to its Interrogatory No. 16, which called for identification of individuals who provided information in response to Plaintiff's First Set of Interrogatories.  Wyndham again responds that Wyndham attorneys conferred with current and former Wyndham employees, including but not limited to Helen Allison, James Iervolino, Jeffery Cohen, and Lynn Feldman (all of whom were identified on Wyndham's Rule 26 disclosures and had been noticed by Illinois National for depositions).

Lastly, Illinois National asserts that Wyndham's production is incomplete because it does not include a single April 21, 2008 e-mail exchange.  After a diligent search of

**Lowenstein**
**Sandler**
ATTORNEYS AT LAW

Honorable Madeline Cox Arleo, U.S.M.J.                    June 10, 2010
Page 13

Wyndham's e-mails, this e-mail was not located.  Likewise, a diligent search of Wyndham's

database did not recover pre-Accident communications between Wyndham and Berkley that are

responsive to Illinois National's discovery request.

## IV.   SANCTIONS ARE INAPPROPRIATE BECAUSE WYNDHAM IS JUSTIFIED IN ITS PRIVILEGE ASSERTIONS

Wyndham's positions in this pending discovery dispute before Your Honor is

substantially justified, making sanctions inapplicable.  Rule 37(a)(5)(A) of the Federal Rules of

Civil Procedure provides that  "[i]f the motion is granted . . . the court must, after giving an

opportunity to be heard require" the payment of "the movant's reasonable expenses incurred in

making the motion, including attorneys fees."   However, the Rule also contains a mandatory

exception to such sanctions if the non-movant is substantially justified in their position.   The

Rule continues:

> "But the court *must not order this payment* if: (ii) the opposing
> party's nondisclosure, response, or objection was substantially
> justified; or (iii) other circumstances make an award of expenses
> unjust." Fed. R. Civ. P. 37(a)(5)(A) (emphasis added).

Moreover, if this Court does not fully grant all of Illinois National's requests or

grants any of Wyndham's, an award of expenses is discretionary.  *See* Fed. R. Civ. P.

37(a)(5)(C).

A substantial justification exists when there is a genuine dispute, grounded in law

and fact, concerning compliance.  A party is substantially justified if a "reasonable person"

believes the "parties could differ as to whether the party was required to comply with the

disclosure request. The proponent's position must have a reasonable basis in law and fact.  The



test is satisfied if there exists a genuine dispute concerning compliance." *Fitz, Inc. v. Ralph Wilson Plastics Co.*, 174 F.R.D. 587, 591 (D.N.J. 1997).  Indeed, "on many occasions . . . the dispute over discovery between the parties is genuine, though ultimately resolved one way or the other by the court.  In such cases the losing party is substantially justified in carrying the matter to court." *Ziemann v. Burlington County Bridge Comm'n*, 155 F.R.D. 497, 507 (D.N.J. 1994) (internal quotation marks omitted) (the court required disclosure of records subject to psychotherapist-patient privilege because plaintiff put her mental condition at issue, but it denied sanctions because the plaintiff's position was substantially justified).

Wyndham's positions do not warrant the imposition of sanctions.  Illinois National seeks sanctions based, in part, on Wyndham's assertions of privilege.  This dispute between the parties is "genuine" on Wyndham's part making its position substantially justified. Though the court must decide the issue one way or the other, Wyndham's reliance on case law has established a valid legal basis for asserting the attorney client and common interest privileges and work product doctrine over a number of complex and novel relationships.  Because Wyndham has a "reasonable basis in law and fact" its position is substantially justified, regardless of the outcome, precluding an award of sanctions to Illinois National.

Moreover, if this Court denies part of Illinois National's request or sustains Wyndham's objections to Illinois National's requests for admissions (discussed in the May 21 letter-brief) sanctions are discretionary. Fed. R. Civ. P. 37(a)(5)(C).  In fact, Wyndham would be eligible to receive its "reasonable expenses" incurred (by Berkley, which is providing Wyndham's defense) in having to continually respond to Illinois National's broad and blanket objections to Wyndham's justified privilege positions. *Id.*

Thank you for Your Honor's time and attention to this matter.



Honorable Madeline Cox Arleo, U.S.M.J.                          June 10, 2010
Page 15

Respectfully submitted,

*Michael David Lichtenstein /Ef*

Michael David Lichtenstein

23943/2
06/10/10 14472592.7

Enclosure(s)
cc:      Andrew T. Houghton, Esq. (via ECF and e-mail)
         Aaron F. Mandel, Esq. (via ECF and e-mail)
         Christopher S. Porrino, Esq.



# EXHIBIT A

Illinois National Insurance Co. v. Wyndham Worldwide Operations, Inc. et.al.

Civil Action No: 09-01724

Wyndham Worldwide Operations, Inc. et.al.

Privilege Log May 17, 2010

| Tab # | Date | Doc. Type | Author | Recipient/CC | Description/Substance | Privilege Asserted |
|---|---|---|---|---|---|---|
| 1 | 07/28/2006 | E-mail | John Sterner (Cendant) | Anne Morrison, Esq. (Cendant) | E-mail attaching internal memoranda analyzing terms of agreements | AC AWP |
| 2 | 03/09/2007 | E-mail | Mark Ringel, Esq.((Crowell Moring) | Anne Morrison, Esq. (Cendant); Cantesi Tiggs (Realogy) | E-mail relating to draft agreement <br><br> REDACTED | AC AWP |
| 3 | 03/09/2007 | E-mail | Mark Ringel, Esq.(Crowell Moring) | Anne Morrison, Esq. (Cendant); Cantesi Tiggs (Realogy) | E-mail relating to draft agreement wit attached draft <br><br> REDACTED | AC AWP |
| 4 | 06/20/2008 | E-mail | Anne Morrison, Esq. (Wyndham Worldwide) | John Moore (Wyndham Worldwide) | E-mail forwarding requested information <br><br> REDACTED | AC AWP |
| 5 | 08/06/2008 - 08/10/2008 | E-mail Chain | Marcus Banks, Esq. (Wyndham Worldwide); Jeffrey Cohen, Esq. (Wyndham Vacation Ownership); Scott McLester, Esq. (Wyndham Worldwide);Susan Vanderford (Wyndham Worldwide) | Scott McLester, Esq. (Wyndham Worldwide); Jeffrey Cohen, Esq. (Wyndham Vacation Ownership); Jim Iervolino (Wyndham Worldwide) | E-mails relating to information request | AC AWP |
| 6 | 08/08/2008 | E-mail | James Iervolino (Wyndham Worldwide | Jeffrey Cohen, Esq. (Wyndham Vacation Ownership); | E-mail requesting materials relating to the investigation by counsel in order to prepare Wyndham's defense in the underlying litigation <br><br> REDACTED | AC AWP |

"AC" denotes Attorney-Client Privilege
"AWP" denotes Attorney Work Product

2394/2
06/10/2010 14373889.1

| | | | | | |
|---|---|---|---|---|---|
| 7 | 08/13/2008 | E-mail Chain | Mark Ringel, Esq. (Crowell Moring); Helen Allison, Esq. (Wyndham Worldwide) | Mark Ringel, Esq. ((Crowell Moring); Helen Allison, Esq. (Wyndham Worldwide) | E-mails requesting materials relating to the investigation by counsel in order to prepare Wyndham's defense in the underlying litigation | AC AWP |
| 8 | 08/13/2008 | E-mail Chain | Mark Ringel, Esq. (Crowell Moring); Helen Allison, Esq. (Wyndham Worldwide) | Mark Ringel, Esq. ((Crowell Moring); Helen Allison, Esq. (Wyndham Worldwide) | E-mails relating to draft agreements with attachment | AC AWP |
| 9 | 08/13/2008 | E-mail Chain | Mark Ringel, Esq. (Crowell Moring); Helen Allison, Esq. (Wyndham Worldwide) | Mark Ringel, Esq. ((Crowell Moring); Helen Allison, Esq. (Wyndham Worldwide) | E-mails relating to draft agreements | AC AWP |
| 10 | 08/14/2008 | E-mail | Mark Ringel, Esq. (Crowell Moring | Helen Allison, Esq. (Wyndham Worldwide) | E-mail relating to insurance documents **REDACTED** | AC AWP |
| 11 | 08/14/2008 | E-mail | Mark Ringel, Esq. (Crowell Moring | Helen Allison, Esq. (Wyndham Worldwide) | E-mail relating to insurance documents **REDACTED** | AC AWP |
| 12 | 08/19/2008 | E-mail | Joan Mickendrow (Wyndham Worldwide) | Helen Allison, Esq. (Wyndham Worldwide) | E-mail relating to information request | AC AWP |
| 13 | 08/19/2008 | E-mail Chain | Joan Mickendrow (Wyndham Worldwide) | Helen Allison, Esq. (Wyndham Worldwide) | E-mails relating to document request | AC AWP |
| 14 | 09/22/2008 | E-mail | Stephen Barron (Wyndham Worldwide) | Helen Allison, Esq. (Wyndham Worldwide) | E-mail relating to document request | AC AWP |
| 15 | 09/22/2008 | E-mail Chain | Helen Allison, Esq. (Wyndham Worldwide); Stephen Barron (Wyndham Worldwide) | Stephen Barron (Wyndham Worldwide); Joan Mickendrow (Wyndham Worldwide); Helen Allison, Esq. (Wyndham Worldwide) | E-mails relating to document request | AC AWP |
| 16 | 09/22/2008 | E-mail Chain | Helen Allison, Esq. (Wyndham Worldwide); Stephen Barron (Wyndham Worldwide) | Stephen Barron (Wyndham Worldwide); Joan Mickendrow (Wyndham Worldwide); Helen Allison, Esq. (Wyndham Worldwide) | E-mails relating to document request | AC AWP |
| 17 | 09/23/2008 | E-mail | Helen Allison, Esq. (Wyndham Worldwide) | Stephen Barron (Wyndham Worldwide) | E-mail relating to document request | AC AWP |

"AC" denotes Attorney-Client Privilege
"AWP" denotes Attorney Work Product
"CI" denotes Common Interest

| 18 | 09/23/2008 | E-mail | Helen Allison, Esq. (Wyndham Worldwide); Stephen Barron (Wyndham Worldwide) | Stephen Barron (Wyndham Worldwide); Helen Allison, Esq. (Wyndham Worldwide) | E-mail relating to document request | AC AWP |
| 19 | 10/10/2008 | E-mail Chain | Jeffrey Cohen, Esq. (Wyndham Vacation Ownership); James Iervolino (Wyndham Worldwide) | Jeffrey Cohen, Esq. (Wyndham Vacation Ownership); James Iervolino (Wyndham Worldwide); Stephen Barron (Wyndham Worldwide);Marcus Banks, Esq. (Wyndham Worldwide); Greg Bendlin (Wyndham Worldwide) | E-mails relating to information request | AC AWP |
| 20 | 10/10/2008 – 10/13/2008 | E-mail Chain | Jeffrey Cohen, Esq. (Wyndham Vacation Ownership); James Iervolino (Wyndham Worldwide); Stephen Barron (Wyndham Worldwide) | Jeffrey Cohen, Esq. (Wyndham Vacation Ownership); James Iervolino (Wyndham Worldwide);Marcus Banks, Esq. (Wyndham Worldwide); Greg Bendlin (Wyndham Worldwide) | E-mails relating to information request | AC AWP |
| 21 | 10/10/2008 – 10/13/2008 | E-mail Chain | Jeffrey Cohen, Esq. (Wyndham Vacation Ownership); James Iervolino (Wyndham Worldwide); Stephen Barron (Wyndham Worldwide) | Jeffrey Cohen, Esq. (Wyndham Vacation Ownership); James Iervolino (Wyndham Worldwide); Stephen Barron (Wyndham Worldwide);Marcus Banks, Esq. (Wyndham Worldwide); Greg Bendlin (Wyndham Worldwide) | E-mails relating to information request | AC AWP |
| 22 | 10/14/2008 | E-mail | James Iervolino (Wyndham Worldwide) | Marcus Banks, Esq. (Wyndham Worldwide); Jeffrey Cohen, Esq. (Wyndham Vacation Ownership); James Iervolino (Wyndham Worldwide) | E-mail forwarding requested information | AC AWP |
| 23 | 09/30/2008 – 10/20/2008 | E-mail Chain | Helen Allison, Esq. (Wyndham Worldwide); Mark Ringel, Esq. (Crowell Moring); Joan Mickendrow (Wyndham Worldwide) | Mark Ringel, Esq. (Crowell Moring); Helen Allison, Esq. (Wyndham Worldwide) | E-mails relating to information request | AC AWP |
| 24 | 09/30/2008 – 10/20/2008 | E-mail Chain | Helen Allison, Esq. (Wyndham Worldwide); Mark Ringel, Esq. (Crowell Moring);Joan Mickendrow (Wyndham Worldwide) | Mark Ringel, Esq. (Crowell Moring); Helen Allison, Esq. (Wyndham Worldwide) | E-mails relating to information request | AC AWP |
| 25 | 10/20/2008 | E-mail | Helen Allison, Esq. (Wyndham) | Marcus Banks, Esq. (Wyndham Worldwide) | E-mail relating to information request | AC AWP |

-3-

"AC" denotes Attorney-Client Privilege
"AWP" denotes Attorney Work Product
"CI" denotes Common Interest

| 26 | 10/10/2008 – 10/11/2008 | E-mail | Marcus Banks, Esq. (Wyndham Worldwide); Jeffrey Cohen, Esq. (Wyndham Vacation Ownership); Scott McLester, Esq. (Wyndham Worldwide) | Scott McLester, Esq. (Wyndham Worldwide); Jeffrey Cohen, Esq. (Wyndham Vacation Ownership) | E-mail relating to information request | AC AWP |
| 27 | 11/04/2008 | E-mail | Emily Bongiovanni, Esq (Dombroff Gilmore) | Jeffrey Cohen, Esq. (Wyndham Vacation Ownership | E-mail relating to information request | AC AWP |

-4-

"AC" denotes Attorney-Client Privilege
"AWP" denotes Attorney Work Product
"CI" denotes Common Interest

# EXHIBIT B

Illinois National Insurance Co. v. Wyndham Worldwide Operations, Inc. et.al.

Civil Action No: 09-01724

Wyndham Worldwide Operations, Inc. et.al.

Privilege Log May 20, 2010

| Tab # | Date | Doc. Type | Author | Recipient/CC | Description/Substance | Privilege Asserted |
|---|---|---|---|---|---|---|
| 1 | Unknown | Chart | Anne Morrison, Esq. (Cendant) | Mark Ringel, Esq. (Crowell Moring); Helen Allison, Esq. (Wyndham Worldwide) | Chart analyzing provisions of aircraft agreements | AC AWP |
| 2 | 10/20/08 | Handwritten Notes | Marcus Banks, Esq. (Wyndham Worldwide) | n/a | Handwritten notes re: legal entitlement to insurance coverage | AC AWP |
| 3 | 11/04/2008 - 11/08/2008 | E-mail Chain | Marcus Banks, Esq. (Wyndham Worldwide); John Scordo, Esq. (Day Pitney) | Marcus Banks, Esq. (Wyndham Worldwide); Jeffrey Cohen, Esq. (Wyndham Vacation Ownership); Ayanna Cox (Wyndham Worldwide) | E-mail re: legal entitlement to insurance coverage | AC AWP |
| 4 | 10/14/2008 - 10/16/2008 | E-mail Chain | Iervolino, James (Wyndham Worldwide); Jeffrey Cohen, Esq. (Wyndham Vacation Ownership) | Jeffrey Cohen, Esq. (Wyndham Vacation Ownership); Scott McLester, Esq. (Wyndham Wyndham Worldwide); Greg Bendlin (Wyndham Vacation Ownership); Marcus Banks, Esq. (Wyndham Worldwide); James Iervolino (Wyndham Worldwide) | E-mail re: legal entitlement to insurance coverage | AC AWP |
| 5 | 10/24/2008 | E-mail Chain | Marcus Banks, Esq. (Wyndham Worldwide); Jeffrey Cohen, Esq. (Wyndham Vacation Ownership); James Iervolino (Wyndham Worldwide) | Marcus Banks, Esq. (Wyndham Worldwide); Jeffrey Cohen, Esq. (Wyndham Vacation Ownership); James Iervolino (Wyndham Worldwide) | E-mail re: document requests | AC AWP |

"AC" denotes Attorney-Client Privilege
"AWP" denotes Attorney Work Product

23943/2
06/10/2010 14413685.1

# EXHIBIT C

Illinois National Insurance Co. *v.* Wyndham Worldwide Operations, Inc. et.al.

Civil Action No: 09-01724

Avis Budget Group

Privilege Log

| Tab # | Date | Doc. Type | Author | Recipient/CC | Description/Substance | Privilege Asserted |
|---|---|---|---|---|---|---|
| 1 | 03/27/2002 | Memorandum | Anne Morrison, Esq. | Ed Bertero (Cendant) | Request for client review and comments regarding insurance amendment. | AC |

"AC" denotes Attorney-Client Privilege