125 BROAD STREET, 39TH FLOOR   NEW YORK, NEW YORK 10004-2400

*www.sdma.com*   212.422.0202 *phone*   212.422.0925 *fax*



*Andrew T. Houghton*
*212-898-4036*
*andrew.houghton@sdma.com*

June 17, 2010

**Via Electronic Filing**
 **and Courtesy Copy Via Federal Express**

Hon. Madeline Cox Arleo
United States District Court for the District of New Jersey
Martin Luther King, Jr. Federal Building & U.S. Courthouse
50 Walnut Street
Newark, New Jersey  07101

Re:  *Illinois National Insurance Company v. Wyndham Worldwide Operations, Inc., et al.*, Case No. 2:09-cv-01724
     Our File No.: 02331-085411

Dear Magistrate Judge Arleo:

On behalf of plaintiff Illinois National Insurance Company, we submit this reply in further support of Illinois National's May 26, 2010 letter-brief concerning certain documents identified in additional privilege logs[1] served by Defendants (collectively "Wyndham") and seeking the Court's assistance with regard to Wyndham's failure to provide discovery responsive to Illinois National's First Set of Requests for Production and First Set of Interrogatories.

## INTRODUCTION

Apparently unable, or unwilling, to explain their failure to timely provide discovery that Wyndham expressly represented would be produced, and that is plainly responsive to Illinois National's First Set of Requests for Production and First Set of Interrogatories, Wyndham instead attempts to minimize their repeated flaunting of their obligations.  Wyndham argues that an award of costs under Rule 37(a)(5) is unwarranted because their privilege position is "justified", but they make no mention of their unexplained failure to provide non-privileged discovery which they casually dismiss as "mooted" by their belated and still ongoing production. There is no justification offered for their repeated obstruction and it is this conduct that should not be disregarded.

Similarly, Illinois National's challenge of Wyndham's attempt to preclude discovery on grounds of privilege cannot be summarily dismissed as "overreaching" and "misguided."  Under New Jersey law, the multiple emails and communications by and between Wyndham employees, including in-house counsel, which Wyndham has withheld from production, are not presumed to be privileged simply because they have been

---

[1] The Privilege Logs addressed herein are separate from the privilege log and *in camera* submission made by the Wyndham Defendants on May 21, 2010, in accordance with the guidelines provided by the Court at the April 14 hearing.

Hon. Madeline Cox Arleo
Re: *Illinois National Insurance Company v. Wyndham Worldwide Operations, Inc., et al., Case No. 2:09-cv-01724*
June 17, 2010
Page 2

authored by or provided to personnel in Wyndham's legal department.  Nor are they privileged simply because the descriptions of the documents in Wyndham's Privilege Logs and letter brief are peppered with the word "legal" (i.e. "to assess legal entitlement to coverage", "to enable a legal assessment of entitlement to coverage," "legal analysis of availability of coverage", and "legal determination as to entitlement to insurance coverage").  Rather, recognizing that the involvement of in-house counsel can be used as an improper means of obstructing discovery, New Jersey courts are cautious in the application of privilege. The Court must determine, through an *in camera* review, whether the emails actually convey legal advice.  To the extent the communications are no more than a discussion of what insurance is available to Wyndham, which discussions, moreover, occurred in part before any contact was made to Illinois National (in late October 2008) and all before any denial of coverage (January 14, 2009), no privilege should attach.

Before addressing Wyndham's withholding of documents based upon privilege claims, we wish to first revisit Wyndham's continuing failures to comply with its discovery obligations as set forth below.

## ARGUMENT

### I.  NO "JUSTIFICATION" EXISTS FOR THE FAILURE TO PROVIDE PROMISED DISCOVERY AND AN AWARD OF COSTS UNDER RULE 37 IS WARRANTED

As discussed in Illinois National's May 26 letter brief, a party will not be required to pay the movant's expenses if the party's "nondisclosure, response, or objection was substantially justified" or "other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(a)(5)(A)(ii) and (iii).  Here, there is no justification, much less substantial justification, for Wyndham's continued failure to comply with discovery. Not only did Wyndham fail to abide by its own representations to both the Court and Illinois National that proper disclosures would be forthcoming, but Wyndham also avoided Illinois National's inquiries regarding the same until a motion was filed.  Despite their claim that "Wyndham immediately initiated efforts to respond to these claimed deficiencies," Wyndham simply ignored Illinois National's correspondence and only finally responded *after* a motion to compel was filed.  Wyndham cannot avoid the consequences of its repeated dilatory conduct by claiming the issue is now "moot" on account of its belated production.  Finally making a partial production *after* the opposing party must resort to a motion to compel does not qualify as the justification necessary to avoid an award of costs.  See Myrdal v. District of Columbia, No. 05-02351, 2007 WL 1655875 at *2 (D.D.C. June 7, 2007)("… if the documents are produced after the motion to compel has been filed, the court may award costs, including attorney's fees, to the moving party and sanction the opposing party.").[2]

---

[2] While Wyndham claims that it has now produced "hundreds of pages of responsive documents", the actual contents of the production are less praiseworthy.  Wyndham's production on May 17 includes duplicates of documents previously produced such as the contract between Jet Aviation and Cendant, multiple copies of the 2007 and 2008 Illinois National policies previously produced, and another copy of the 2008 StarNet policy (together totaling 496 pages).  Half of the total documents produced are from the underlying action, mostly comprising the employment records the two Wyndham employees involved in the accident. (535 pages).

Hon. Madeline Cox Arleo
Re:  *Illinois National Insurance Company v. Wyndham Worldwide Operations, Inc., et al., Case No. 2:09-cv-01724*
June 17, 2010
Page 3


      **A.**      **Wyndham Still Fails to Provide a Complete Response to Interrogatory No. 16 Now *After* Illinois National Has Moved to Compel for a Second Time**

Inexplicably, Wyndham refused to provide a straightforward response Illinois National's Interrogatory No. 16, which sought the identification of those individuals who provided information for Wyndham's discovery responses. It is only now, after Illinois National filed its motion, that in its responding papers Wyndham finally identifies some – but not all – of the individuals who provided information for Wyndham's responses to Interrogatories.  But to make matters worse, in an attempt to avoid the consequences of its obstruction, Wyndham suggests that it had already responded to the interrogatory:

> On May 20, 2010 Wyndham also provided Illinois National a response to its Interrogatory No. 16, which called for identification of individuals who provided information in response to Plaintiff's First Set of Interrogatories.  Wyndham again responds that Wyndham attorneys conferred with current and former Wyndham employees, including but not limited to Helen Allison, James Iervolino, Jeffrey Cohen and Lynn Feldman (all of whom were identified on Wyndham's Rule 26 disclosures and had been noticed by Illinois National for Deposition).

Wyndham June 10 letter at page 12.

Wyndham has distorted the clear record.  Interrogatory No. 16 sought identification of the persons who provided information contained in Wyndham's interrogatory responses, the basis of the person's knowledge, and documents upon which the person relied.  (Exhibit K to May 26 letter brief, Interrogatory No. 16).  Wyndham originally responded that unidentified "representatives" of Wyndham provided the facts for the responses (Exhibit K).  Despite Wyndham promising to supplement its response, no such supplemental response was included within Wyndham's May 17 production

When Illinois National inquired about this (Exhibit A to May 26 letter brief, pg. 3, item 4), Wyndham only repeated its non-responsive answer to the interrogatory referring to unidentified "Wyndham employees." (Exhibit L to May 26 letter).[3]  Prior to filing it May 26 brief, Illinois National's further attempt to obtain Wyndham's promised response went unanswered (Exhibit M to May 26 letter).

Thus, contrary to Wyndham's suggestion, it has not previously responded.  And even now, the information it finally provides in its June 10 letter brief is only partial ("Wyndham attorneys conferred with current and former Wyndham employees, **including but not limited to** ….") and still fails to completely provide the information requested.  This kind of gamesmanship should not be tolerated.

---

[3] Despite being nothing more than a repetition of its previous deficient answer, Wyndham points to this "revised response to it Interrogatory No. 16" as evidence that it has been "fulfilled its obligations in discovery."  See June 10 letter brief at page 2.

Hon. Madeline Cox Arleo
Re: *Illinois National Insurance Company v. Wyndham Worldwide Operations, Inc., et al., Case No. 2:09-cv-01724*
June 17, 2010
Page 4

> **B.** **Berkley's Promised Underwriting Files And Another Privilege Log Were Not Produced Until *After* Illinois National Moved to Compel**

Similarly, although Wyndham represented in its March 12, 2010 letter brief that the Berkley underwriting files would be produced, two months later no such documents were included in Wyndham's May 17th document production.

Illinois National raised the missing Berkley files in its letter to Wyndham of May 20, 2010 (Exhibit A to May 26 letter brief). Although Wyndham responded that same day to other points raised (reiterating in its deficient response to Interrogatory No. 16 and supplementing its privilege log) Wyndham did not respond to the inquiry regarding the Berkley files. (See Exhibit L to May 26 letter brief). Wyndham finally produced the Berkley files on June 4 – almost three months after representing it would do so and only after a motion to compel was filed and a briefing schedule set by the Court.

> **C.** **Wyndham Has Still Not Produced Documents Concerning Claims to Other Insurers**

There is little more to be said regarding the Wyndham's failure to produce documents concerning not only the claim made to Berkley, but to their umbrella carrier, a punitive damages wrap insurer and to eight separate layers of excess insurers apparently providing $400 million in additional coverage to Wyndham for the subject accident – a fact not disclosed by Wyndham at our last hearing. Wyndham provides no explanation, or justification, why these documents nor the other policies themselves – which are directly responsive to several requests (Request Nos. 2, 3, 4, 7, and 8)[4] - were not produced while Wyndham portrayed itself for the purposes of this litigation as potentially being underinsured for the losses arising from the accident.

Here again, Illinois National requested the production of these documents in its May 20 letter (Exhibit A to May 26 letter brief), but Wyndham did not respond regarding its multiple claims to its other insurers. (See Exhibit L to May 26 letter brief). Now, *after* a motion to compel is filed, in a pattern that has become all too familiar Wyndham for the first time responds that efforts are underway to obtain the communications and policies. Nevertheless, almost a month since Illinois raised the issue, still nothing has been produced.

With Wyndham having failed to abide by its own representations that disclosures would be forthcoming and only responding *after* a motion to compel is filed, and now that it is unmistakable that its claims to a multitude of other insurers were not produced although directly requested, there can be no basis to conclude that Wyndham's continued failure to comply with discovery is "substantially justified" or that "other circumstances make an award of expenses unjust." Sanctions are the only appropriate remedy to put a stop to Wyndham's strategy of delay, obfuscation and gamesmanship.

---

[4] Wyndham's response to Request No. 2, which sought any policy that Wyndham contends may provide coverage for the Underlying Actions, was to object on the grounds that the request encompasses insurance coverage for claims not at issue and stating that it was providing responsive documents "solely with respect to the third-party Underlying Actions." Nevertheless, it is now clear the numerous other policies under which Wyndham made claims were not provided. Similarly, in response to Request No. 3, seeking documents related to any notice of claim, Wyndham responded that all non-privileged responsive documents were attached. Again, this evidently was not the case.

Hon. Madeline Cox Arleo
Re: *Illinois National Insurance Company v. Wyndham Worldwide Operations, Inc., et al., Case No. 2:09-cv-01724*
June 17, 2010
Page 5

## II.   BUSINESS COMMUNICATIONS INVOLVING IN-HOUSE COUNSEL CANNOT BE SHIELDED FROM DISCLOSURE

### A.   New Jersey Courts Do Not Presume That Lawyers in a Corporation's Legal Department Are Giving Legal Advice

On the heels of deriding Illinois National for an "unfounded assumption" that Wyndham's in-house counsel were engaged in business communication, Wyndham goes on to argue that because all of the in-house attorneys appearing in its Privilege Logs were purportedly in it legal department, this Court should presume their communication involves legal advice. (Wyndham June 10 letter brief, citing Boca Inversterings Partnership v. U.S., 31 F. Supp. 2d 9, 12 (D.D.C. 1998)). Such a presumption is not universally recognized and, indeed, other courts apply a contrary presumption. See Lindley v. Life Investors Ins. Co. of America, - - F.R.D. --, No. 08-CV-379, 2010 WL 653022 at *4 (N.D. Okla. Feb. 17, 2010)("… if in-house counsel is involved, the presumption is that the attorney's input is more likely business than legal in nature.")

More importantly, rather than employing any presumption but recognizing that in-house attorneys are often not providing legal advice, New Jersey law emphasizes the necessity to determine whether actual legal advice is at issue. If the service by counsel could have been rendered by another corporate agent who was not a lawyer, the service is not an undertaking that required the legal services of a lawyer. Leonen v. Johns-Manville, 135 F.R.D. 94, 99 (D. N.J. 1990), citing Metalsalts Corp. v. Weiss, 76 N.J.Super. 291, 297 (Ch.Div 1962). Merely copying an email to an attorney does not establish the privilege. Spiniello Companies v. The Hartford Fire Insurance Co., 2008 WL 2775643 at *2 (D.N.J.).

### B.   Wyndham's Internal Discussions of Insurance Do Not Implicate Privilege, And Wyndham Does Not Demonstrate Otherwise

Here, neither the Privilege Logs themselves nor the unsupported descriptions provided in Wyndham's June 10 letter brief (at page 6) give any indication that the withheld emails concerning Wyndham's insurance rise to the level of communications involving in-house counsel in their capacity as lawyers, with the predominant purpose of seeking legal advice. In that circumstance, courts have concluded that communications regarding insurance do not implicate privileges. For example, in Retail Brand Alliance Inc. v. Factory Mutual Ins. Co., No. 05 Civ. 1031, 2008 WL 622810 (S.D.N.Y.), an insurance coverage dispute, upon *in camera* inspection the court found that an email to several recipients including the insured's in-house counsel attaching a list of discussion points concerning the insured's claim against its insurer was not protected by attorney-client privilege. The court noted there was nothing in the email suggested the document was seeking legal advice, but rather was sent to the in-house counsel "as a matter of general corporate information." Id. at *1-2.

Keeping in mind the analyses employed under New Jersey law, the Court should consider whether each communication could have been made by any other non-lawyer officer of Wyndham, such as the professionals employed in Wyndham's risk management department, Mr. Iervolino and Mr. Barron. Given the sophisticated risk management department of Wyndham, one must ask whether legal advice of Wyndham's in-house attorneys was necessary or whether they were merely kept apprised of the status of or were themselves commenting on the company's insurance issues. Indeed, the fact that Wyndham apparently consulted outside counsel on the issue of insurance (the communication with Day Pitney in the May 20 Log at tab 3) undermines Wyndham's assertion that its in-house attorneys were providing legal

NY/565759v1

Hon. Madeline Cox Arleo
Re:  *Illinois National Insurance Company v. Wyndham Worldwide Operations, Inc., et al., Case No. 2:09-cv-01724*
June 17, 2010
Page 6


advice.  See Bray & Gillespie Management LLC v. Lexington Ins. Co., No. 6:07-cv-222, 2008 WL 4362400 at *5 (M.D. Fla. Sept. 16, 2008)(finding that no showing was made that former general counsel's involvement in filing insurance claims in any way involved legal advice, and noting testimony that he hired lawyers to assist in filing the claims because he didn't know anything about insurance issues).

It is also notable that, despite all of the assertions that the communications are protected from disclosure as "legal" analyses and determinations, there are no indications of legal research, formal memoranda, or opinion letters identified in Wyndham's Privilege Logs.  The informality of the emails would appear to belie the arguments that any sort of legal analysis or advice was being provided.  Rather, the emails would amount to nothing more than informal discussion of insurance that could have been communicated by non-legal personnel just as easily.

Here, of course, only the Court's *in camera* review can answer these questions.  But if the emails are only non-legal discussions among Wyndham employees (including attorneys) exchanging their views with respect to Wyndham's coverage under the Illinois National Policy or lack thereof, privilege should not be applied to shield them from disclosure.

> **C.    Even if Privileged, the Communications Should be Discoverable As They Are The Only Contemporaneous Evidence of Wyndham's Views on Coverage Under the Illinois National Policy**

Even if some of the emails are deemed privileged, they should still be produced as there is a legitimate need for discovery of evidence of Wyndham's true views of coverage under the Illinois National Policy which cannot be secured from any less intrusive source. Wyndham has denied that it had no expectation of coverage for circumstances such as in the subject accident where Jet Aviation had no involvement with the aircraft. See Answer, ¶ 31.   Evidence of Wyndham's own intentions and expectations as to what coverage was available is significant to Illinois National's reformation claim.  (And contrary to Wyndham's assertion, no communication is "in issue" simply due to Wyndham's assertion of privilege being challenged).

Throughout its briefing on the privilege issues before this Court since March 2010, Wyndham has repeatedly cited its "duty to cooperate" with Berkley – Wyndham's non-owned aircraft coverage insurer that has injected itself into this dispute – as somehow tied to the position presented in this litigation that Wyndham is entitled to coverage under the Illinois National policy.  Evidently, Wyndham feels it is compelled to support Berkley's position for fear of jeopardizing its coverage under the Berkley/StarNet policy.

The majority of the communications identified in Wyndham's Privilege Logs were made before Wyndham first inquired regarding coverage under the Illinois National Policy (on or about in October 22, 2008) and all before any denial of coverage occurred (January 14, 2009).  As the Court is aware, this coverage litigation was not commenced until April 13, 2009 and as late as April 6, 2009, Mr. Jeffrey Cohen, Vice President in the Office of General Counsel of Wyndham Vacation Ownership, Inc., stated that "We do not, however, wish to take or assert a position as to coverage issues."   Also, importantly, these communications took place before or only shortly after Berkley's counsel, Mr. Kern, was hired on November 11, 2008 to "pursue any available additional coverage."  These communications therefore likely represent Wyndham's candid view of coverage under the Illinois National policy before its position was subsumed to its "duty to cooperate" and co-opted by Berkley.  Depositions of Wyndham's witnesses as to Wyndham's view are likely

Hon. Madeline Cox Arleo
Re: *Illinois National Insurance Company v. Wyndham Worldwide Operations, Inc., et al., Case No. 2:09-cv-01724*
June 17, 2010
Page 7

to elicit the same objections based upon purported privilege or will be influenced by the same "duty to cooperate" with Berkley so frequently cited in this litigation. This circumstance is similar to that presented in United Jersey Bank v. Wolosoff, 196 N.J.Super. 553, 483 A.2d 821, 827 (App.Div. 1984) where the bank's internal communications with counsel were discoverable to rebut the bank's claim that it relied on representations by the borrower.

### D.     Work Product Doctrine Does Not Shield the Communications from Disclosure

Finally, Wyndham effectively concedes that the prospect of this coverage litigation cannot form the basis for withholding the communication based upon purported work product doctrine. The communications were made well before Illinois National's January 14, 2009 letter denying coverage, even before an inquiry was made regarding coverage under the policy. Therefore, Wyndham cannot explain how four to five months before such letter issued, it anticipated litigation with Illinois National. And, indeed, Wyndham does not assert this coverage litigation as a basis for its assertion of work product doctrine.

Instead, Wyndham is forced to argue that the communications "were prepared in anticipation of the Underlying Actions." (June 10 letter brief at page 11.) This would amount to a blanket privilege over everything generated after the subject accident (as Wyndham originally argued before being required to submit a privilege log). The scope of work product doctrine, however, is not so broad. Notably, the document must have been prepared "primarily" for the purpose of litigation in order for the doctrine to apply. Louisiana Municipal Police Employees Retirement System v. Sealed Air Corporation, 253 F.R.D. 300, 306 (D.N.J. 2008). Documents prepared in the ordinary course of business, even if useful in subsequent litigation, are not protected by the work product doctrine. Id. at 307.

Here, despite Wyndham's efforts to group all post-accident documents as having been "prepared in anticipation of the Underlying Actions," they plainly are not all "primarily" for the purpose of or for any use in the Underlying Litigation. Wyndham's discussions relating to whether coverage might be available under the Illinois National Policy has no use in the Underlying Actions; they have no bearing on any claim asserted therein or any argument or defense. What coverage is or is not available to Wyndham is not itself an issue in the Underlying Actions. A corporate defendant's internal discussions following an accident regarding available insurance are made in the ordinary course of business, regardless whether personal injury litigation does or does not subsequently arise. Wyndham's attempted extension of work product doctrine should be rejected and the documents should be produced.

### CONCLUSION

Based on the foregoing and its May 26 letter brief, Illinois National respectfully requests that the Court enter an order as follows:

1.     Compelling Wyndham's production of the internal communications identified in the Privilege Logs;

2.     Compelling Wyndham's production of documents concerning other insurance that is available to it, including the policies themselves and related communications;

NY/565759v1

Hon. Madeline Cox Arleo
Re: *Illinois National Insurance Company v. Wyndham Worldwide Operations, Inc., et al., Case No. 2:09-cv-01724*
June 17, 2010
Page 8

      3.      Compelling Wyndham to provide a complete and straightforward response to Interrogatory No. 16; and

      4.      Awarding Illinois National its expenses, including attorney's fees, incurred in connection with moving to compel Wyndham's responses, upon proof to be submitted.

Respectfully submitted,

Andrew T. Houghton
Sedgwick, Detert, Moran & Arnold LLP