Andrew T. Houghton (*pro hac vice*)
Timothy D. Kevane (*pro hac vice*)
Aaron F. Mandel
SEDGWICK, DETERT, MORAN & ARNOLD, LLP
125 Broad St., 39th Floor
New York, New York 10004
Telephone: (212) 422-0202
Facsimile: (212) 422-0925

Attorneys for Plaintiff
ILLINOIS NATIONAL INSURANCE COMPANY

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW JERSEY

------------------------------------------------------X

| | |
|---|---|
| ILLINOIS NATIONAL INSURANCE COMPANY, | Case No.: 2:09-cv-01724-GEB-MCA |
| Plaintiff, | **PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF MATERIAL FACTS NOT IN DISPUTE AND SUPPLEMENTAL STATEMENT OF DISPUTED MATERIAL FACTS** |
| -vs- | |
| WYNDHAM WORLDWIDE OPERATIONS, INC.; WYNDHAM WORLDWIDE CORPORATION; WYNDHAM VACATION OWNERSHIP, INC.; and WYNDHAM RESORT DEVELOPMENT CORPORATION, | Return Date: July 6, 2010 |
| Defendants. | Oral Argument Requested |

------------------------------------------------------X

Plaintiff, Illinois National Insurance Company ("Illinois National"), by and through its attorneys, Sedgwick, Detert, Moran & Arnold LLP, provides the following responses to Defendants' Local Civil Rule 56.1 Statement of Material Facts which Defendants contend are not in dispute and submits its supplemental statement of disputed material facts in support of its opposition to Defendants' motion.

## RESPONSES TO DEFENDANTS' UNDISPUTED MATERIAL FACTS

### Defendants' Undisputed Material Fact No. 1

On or about August 4, 2008 a Cessna 172 aircraft piloted by Jason Ketcheson, a licensed pilot, crashed into a house in Gearhart, Oregon (the "Accident"). Frank Toohey was the only passenger in that aircraft. (Declaration of James Iervolino ("Iervolino Decl.") ¶¶ 3, 5.)

### Response To Defendants' Undisputed Material Fact No. 1

Undisputed.

### Defendants' Undisputed Material Fact No. 2

Mr. Ketcheson rented the Cessna 172 from Aviation Adventures to travel with Mr. Toohey to a work-related meeting in Oregon (Iervolino Decl. ¶ 4.)

### Response To Defendants' Undisputed Material Fact No. 2

Undisputed.

### Defendants' Undisputed Material Fact No. 3

Mr. Ketcheson and Mr. Toohey were both employed by Wyndham Resort Development Corporation. (Iervolino Decl. ¶ 3.)

### Response To Defendants' Undisputed Material Fact No. 3

Undisputed.

### Defendants' Undisputed Material Fact No. 4

The Accident, which occurred shortly after take-off, resulted in the deaths of Mr. Ketcheson, Mr. Toohey, and three children who were vacationing in the house, which the plane crashed into. Three additional victims survived the Accident but suffered injuries. The house that the plane crashed into was destroyed. A neighboring house caught fire and was damaged. (Iervolino Decl. ¶¶ 5, 6; Declaration of Michael David Lichentenstein, Esq. ("Lichtenstein Decl.") Ex. H, I.)

### Response To Defendants' Undisputed Material Fact No. 4

Undisputed, but Illinois National objects to these statements as being immaterial and irrelevant to Defendants' motion.

**Defendants' Undisputed Material Fact No. 5**

Several of the victims (including their families and estates) and property owners have brought lawsuits against various Wyndham entities in state courts in Oregon and Florida (the "Underlying Actions"). (Iervolino Decl. ¶ 4.)

**Response To Defendants' Undisputed Material Fact No. 5**

Undisputed.

**Defendants' Undisputed Material Fact No. 6**

Plaintiff Illinois National Insurance Company ("Illinois National") issued the Golden Medallion Comprehensive Business Aircraft Policy No. 1852800-05 (the "Policy") to Wyndham, as a "Named Insured" for the period of April 1, 2008 to April 1, 2009. (Iervolino Decl. ¶ 8; Declaration of Matthew Sopchyk ("Sopchyk Decl.") ¶ 4.)

**Response To Defendants' Undisputed Material Fact No. 6**

Disputed to the extent Defendants suggest that they purchased the Policy. Illinois National issued Gold Medallion Comprehensive Business Aircraft Policy No. 185200-05 to Jet Aviation International, Inc. for the policy period of April 1, 2008 to April 1, 2009 (the "2008 Policy"), and coverage was extended to clients of Jet Aviation Business Jets, Inc., including Wyndham, by virtue of various Managed Aircraft Endorsements annexed thereto. (Tomlinson Decl. ¶¶ 10, 13.)

**Defendants' Undisputed Material Fact No. 7**

Wyndham seeks insurance coverage from Illinois National under the Policy for the Underlying Actions. (Iervolino Decl. ¶ 9.)

**Response To Defendants' Undisputed Material Fact No. 7**

Disputed to the extent that Defendants suggest that they tendered claims for coverage under the 2008 Policy, but Illinois National does not dispute that Defendants and their non-owned aircraft insurer, StarNet Insurance Company/Berkley Aviation, currently seek coverage under the 2008 Policy. (Breitenbach Decl. ¶ 6, 9, Exhs. A, B.)

**Defendants' Undisputed Material Fact No. 8**

Illinois National has denied Wyndham insurance coverage under the Policy for the Underlying Actions. (Iervolino Decl. ¶ 10.)

NY/575971v1

**Response To Defendants' Undisputed Material Fact No. 8**

Undisputed.


**Defendants' Undisputed Material Fact No. 9**

In 2001 Wyndham's predecessor-in-interest, Cendant Operations, entered into an Aircraft Management Services Agreement ("Agreement") with Jet Aviation Business Jets, Inc. ("Jet Aviation"). Under the Agreement, Jet Aviation agreed to provide aircraft maintenance and procurement services for Cendant (now Wyndham). (Lichtenstein Decl., Ex. F.)

**Response To Defendants' Undisputed Material Fact No. 9**

Undisputed that Cendant Operations, Inc. entered into an Aircraft Management Services Agreement with Jet Aviation Business Jets, Inc. on or about December 19, 2001 (the "Agreement"), but Illinois National disputes and objects to Defendants' characterization of the obligations thereunder to the extent it is hearsay and not based upon personal knowledge. The obligations of the parties are set forth in the Agreement.

Illinois National also objects to Defendants' Undisputed Material Fact No. 9 on the ground that the declaration cited to by Defendants lacks foundation and should therefore be disregarded. See Local Civil Rule 7.2(a).


**Defendants' Undisputed Material Fact No. 10**

Under the Agreement, Wyndham could elect to purchase insurance on its own or through Jet Aviation's insurance provider, Illinois National. Wyndham elected to purchase insurance from Illinois National as a "Named Insured." (Lichtenstein Decl., Ex. F.)

**Response To Defendants' Undisputed Material Fact No. 10**

Disputed. The Agreement provided that Defendants could either purchase insurance for its aircraft on its own or have Jet Aviation insure its aircraft under Jet Aviation's fleet insurance policy. Defendants did not directly purchase insurance from Illinois National. (Konicki Decl. ¶¶ 8, 27, Exh. A, Section 7.1 (" . . . or at the Owner's sole discretion, allow JBJI [Jet Aviation Business Jets] to insure the Aircraft on JBJI's fleet insurance policy ...."); Tomlinson Decl. ¶¶ 9, 13)

Illinois National also objects to Defendants' Undisputed Material Fact No. 10 on the ground that that the declaration cited to by Defendants lacks foundation and should therefore be disregarded. See Local Civil Rule 7.2(a).


**Defendants' Undisputed Material Fact No. 11**

Wyndham paid premiums for the Policy provided by Illinois National. (Iervolino Decl. ¶ 11; Sopchyk Decl. ¶ 5.)

NY/575971v1

## Response To Defendants' Undisputed Material Fact No. 11

Disputed that Wyndham paid premiums "for the Policy" provided by Illinois National. Wyndham paid for the cost of insuring its aircraft under the 2008 Policy, which, consistent with section 7.4 of the Agreement, Jet Aviation invoiced to Wyndham. (Konicki Decl., Exh. A, Section 7.4; Tomlinson Decl. ¶ 19). Jet Aviation was solely responsible for the payment of premium in connection with the 2008 Jet Aviation Policy. (See Tomlinson Decl. ¶¶ 13, 19; Konicki Decl. at ¶ 27)

Illinois National also objects to Defendants' Undisputed Material Fact No. 11 on the ground that the Sopchyk Declaration cited to by Defendants lacks foundation and should therefore be disregarded. See Local Civil Rule 7.2(a).

## Defendants' Undisputed Material Fact No. 12

Wyndham Worldwide Corporation and Wyndham Worldwide Operations, Inc. are a "Named Insured" in the Policy. Jet Aviation International Inc. and a number of its subsidiaries, including Jet Aviation Business Jets, Inc., are also a "Named Insured" under the Policy. (Lichtenstein Decl., Ex. A at WYN0000023, 53, 54.)

## Response To Defendants' Undisputed Material Fact No. 12

Disputed as stated, and Illinois National objects to Defendants' characterization of terms and conditions of the 2008 Policy, the terms of which are set forth therein. Illinois National does not dispute that Jet Aviation International Inc. and a number of its subsidiaries, including Jet Aviation Business Jets, Inc., are "Named Insureds" under the 2008 Policy. Wyndham is identified in the 2008 Policy's Managed Aircraft Endorsement as an "Insured Owner". (Tomlinson Decl., ¶ 16, Exh. I at ILNAT030973). The first page of the Managed Aircraft Endorsement for Wyndham appended to the 2008 Policy provides in pertinent part:

### MANAGED AIRCRAFT ENDORSEMENT

This policy is amended as follows:

1)  Jet Aviation Business Jets, Inc. has entered into an Aircraft Management Agreement with the person(s) or organization(s) described below and referred to as "Insured Owner":

    Wyndham Worldwide Operations, Inc., Wyndham Worldwide Corporation & Bank of America, N.A., as Lessor

    7 Sylvan Way
    Parsippany, NJ 07054

And/or subsidiary (and/or subsidiary thereof).

5

2)    The definition of **Named Insured** is extended to include the person(s) or organization(s) described in Item 1 of this endorsement.

Illinois National also objects to Defendants' Undisputed Material Fact No. 12 on the ground that the declaration cited to by Defendants lacks foundation and should therefore be disregarded. See Local Civil Rule 7.2(a).

## Defendants' Undisputed Material Fact No. 13

In the "Confirmation of Aviation Insurance Coverages" for the Policy, Wyndham Worldwide Corporation and Wyndham Worldwide Operations, Inc. are each listed as "Named Insured." (Lichtenstein Decl., Ex. E.)

## Response To Defendants' Undisputed Material Fact No. 13

Undisputed that the "Confirmation of Aviation Insurance Coverages" for the 2008 Policy lists Wyndham Worldwide Corporation and Wyndham Worldwide Operations, Inc. as "Named Insured" and states "Non-Owned Liability limited to aircraft used at or by the direction of Jet Aviation Business Jets, Inc."

Illinois National also objects to Defendants' Undisputed Material Fact No. 13 on the ground that the declaration cited to by Defendants lacks foundation and should therefore be disregarded. See Local Civil Rule 7.2(a).

## Defendants' Undisputed Material Fact No. 14

The Policy defines "Non-Owned Aircraft" as "any **aircraft** except: 1. an **aircraft** owned in whole or in part by or registered to the **named insured**; 2. a scheduled aircraft; 3. an **aircraft** having a seating configuration exceeding the maximum number of seats shown in the Declarations for Coverage C (regardless of the actual number of **passengers** on the **aircraft**)." (Lichtenstein Decl. Ex. A at WYN000043.)

## Response To Defendants' Undisputed Material Fact No. 14

Undisputed that the definition of "Non-Owned Aircraft" is as stated, although Illinois National also objects to Defendants' Undisputed Material Fact No. 14 on the ground that that the declaration cited to by Defendants lacks foundation and should therefore be disregarded. See Local Civil Rule 7.2(a).

## Defendants' Undisputed Material Fact No. 15

The Cessna 172 rented from Aviation Adventures by Mr. Ketcheson and involved in the Accident is a "Non-Owned Aircraft" under the Policy. (Lichtenstein Decl. Ex. A at WYN000043; Iervolino Decl. ¶ 4.)

6

**Response To Defendants' Undisputed Material Fact No. 15**

Disputed as stated, but Illinois National does not dispute that the Cessna was a "Non-Owned Aircraft" which was not operated by or used at the direction of Jet Aviation. (Konicki Decl. ¶ 31; Houghton Decl. Exh. N at Response to Request for Admission No. ("RFA") 101.)

Illinois National also objects to Defendants' Undisputed Material Fact No. 15 on the ground that the declaration cited to by Defendants lacks foundation and should therefore be disregarded. See Local Civil Rule 7.2(a).

**Defendants' Undisputed Material Fact No. 16**

The Policy includes a "Managed Aircraft Endorsement" (the "Endorsement"). (Lichtenstein Decl. Ex. A at WYN000054-56; Ex. C.)

**Response To Defendants' Undisputed Material Fact No. 16**

Disputed as stated, but Illinois National admits that the 2008 Policy includes multiple Managed Aircraft Endorsements for each of the Jet Aviation clients who elected to have their aircraft insured under Jet Business' fleet insurance program. (Tomlinson Decl., ¶ 16, Exh. I)

Illinois National also objects to Defendants' Undisputed Material Fact No. 16 on the ground that the declaration cited to by Defendants lacks foundation and should therefore be disregarded. See Local Civil Rule 7.2(a).

**Defendants' Undisputed Material Fact No. 17**

The definition of "Named Insured" in the Endorsement includes Wyndham Worldwide Operations, Inc. and Wyndham Worldwide Corporation. (Lichtenstein Decl., Ex. C.)

**Response To Defendants' Undisputed Material Fact No. 17**

Disputed. The Managed Aircraft Endorsement for Wyndham appended to the 2008 Policy does not contain a definition of "Named Insured." Wyndham is referred to in the Managed Aircraft Endorsement as an "Insured Owner". (Tomlinson Decl., Exh. I at ILNAT030973). The first page of the Managed Aircraft Endorsement provides in pertinent part:

### MANAGED AIRCRAFT ENDORSEMENT

This policy is amended as follows:

1)    Jet Aviation Business Jets, Inc. has entered into an Aircraft Management Agreement with the person(s) or organization(s) described below and referred to as "Insured Owner":

NY/575971v1

Wyndham Worldwide Operations, Inc., Wyndham Worldwide
Corporation & Bank of America, N.A., as Lessor

7 Sylvan Way
Parsippany, NJ 07054

And/or subsidiary (and/or subsidiary thereof).

2)    The definition of **Named Insured** is extended to include the person(s) or
organization(s) described in Item 1 of this endorsement.

Illinois National also objects to Defendants' Undisputed Material Fact No. 17 on the ground
that the declaration cited to by Defendants lacks foundation and should therefore be disregarded.
See Local Civil Rule 7.2(a).

**Defendants' Undisputed Material Fact No. 18**

Paragraph 5 of the managed aircraft endorsement included in earlier policies issued by
Illinois National to Wyndham stated "The insurance afforded by this policy for the interest of the
'Insured Owner' described in Item 1 of this endorsement or the **Named Insured** (as fully described
in Item 1 of the Declarations Page) is extended to other **Aircraft** insured under this policy but
excluding any **Non-Owned Aircraft** unless such **Non-Owned Aircraft** is operated by or used at the
direction of the Jet Aviation Business Jets, Inc." (Lichtenstein Decl., Ex. D.)

**Response To Defendants' Undisputed Material Fact No. 18**

Undisputed that the paragraph correctly quotes a portion of Paragraph 5 of the Managed
Aircraft Endorsements appended to Jet Aviation's fleet insurance policies for each of the annual
policy periods April 1, 2004 through April 1, 2008. (Tomlinson Decl., Exh. A; Exh. C; Exhs. E - G.)

Illinois National also objects to Defendants' Undisputed Material Fact No. 18 on the ground
that the declaration cited to by Defendants lacks foundation and should therefore be disregarded.
See Local Civil Rule 7.2(a).

**Defendants' Undisputed Material Fact No. 19**

Paragraph 5 of the Endorsement in the Policy states, in relevant part, "The insurance afforded
by this policy for the interest of the 'Insured Owner' described in Item 1 of this endorsement or the
**Named Insured** (as fully described in Item 1 of the Declarations Page) is extended to other **Aircraft**
insured under this policy but excluding any **Non-Owned Aircraft** unless such **Non-Owned Aircraft**
is operated by or used at the direction of the **Named Insured**." (Lichtenstein Decl., Exh. C.)

**Response To Defendants' Undisputed Material Fact No. 19**

Undisputed that the paragraph correctly quotes a portion of Paragraph 5 of the Managed
Aircraft Endorsements appended to the 2008 Policy. (Tomlinson Decl., Exh. I at ILNAT030973.)

Illinois National also objects to Defendants' Undisputed Material Fact No. 19 on the ground the declaration cited to by Defendants lacks foundation and should therefore be disregarded. See Local Civil Rule 7.2(a).

**Defendants' Undisputed Material Fact No. 20**

"Jet Aviation Business Jets, Inc." which appeared in paragraph 5 of earlier managed aircraft endorsements issued by Illinois National to Wyndham was replaced with "Named Insured" in the Endorsement by Illinois National or at its direction. (Lichtenstein Decl., Ex. C, D.)

**Response To Defendants' Undisputed Material Fact No. 20**

Disputed. Illinois National objects to Undisputed Material Fact No. 20 on the grounds that it is not based upon personal knowledge or admissible evidence. Jet Aviation's broker, Marsh, prepared the language in the entire Managed Aircraft Endorsements for the 2008 Policy replacing "Jet Aviation Business Jets, Inc." with "Named Insured" in order to refer to all Jet Aviation entities and was only intended to refer to Jet Aviation entities. (Houghton Decl. Exh. R at 75:19-77:7, 90:22-92:6, 101:2-16; Exh. S at 57:17-58:16; Tomlinson Decl. ¶¶ 36-39; Konicki Decl. ¶¶ 21-22.)

Illinois National also objects to Defendants' Undisputed Material Fact No. 20 on the ground that the declaration cited to by Defendants lacks foundation and should therefore be disregarded. See Local Civil Rule 7.2(a).

**Defendants' Undisputed Material Fact No. 21**

Illinois National, by this lawsuit, seeks reformation of the Policy due to claiming the replacement described in paragraph 19, *supra,* is the product of a "mistake." (Lichtenstein Decl., Ex. G.)

**Response To Defendants' Undisputed Material Fact No. 21**

Disputed that this statement sets forth a "material fact" as required under Local Civil Rule 56.1, and is legal argument prohibited by Local Civil Rule 7.2. Illinois National's Complaint speaks for itself.

**Defendants' Undisputed Material Fact No. 22**

At no time did Wyndham or its insurance broker, Aon, participate in the drafting, negotiation, or any bargaining relating to the Endorsement included in the Policy, including the replacement of "Jet Aviation Business Jets, Inc." with "Named Insured" in paragraph 5 of the Endorsement (Iervolino Decl. ¶ 12; Sopchyk Decl. ¶¶ 6, 8.)

**Response To Defendants' Undisputed Material Fact No. 22**

Undisputed.

9

**Defendants' Undisputed Material Fact No. 23**

Illinois National did not request any input from Wyndham or Aon relating or referring to any changes or made in the Endorsement, including the replacement of "Jet Aviation Business Jets, Inc." with "Named Insured" in paragraph 5 of the Endorsement.  (Iervolino Decl. ¶ 13; Sopchyk Decl. ¶¶ 7, 9.)

**Response To Defendants' Undisputed Material Fact No. 23**

Disputed and vague as stated, except Illinois National admits it had no contact with Wyndham or Aon with respect to any matters concerning the 2008 Policy. (Tomlinson Decl. ¶ 13; Konicki Decl. ¶ 27)

**Defendants' Undisputed Material Fact No. 24**

Plaintiffs in the Underlying Actions alleged that Jason Ketcheson operated the Cessna 172 aircraft in the course and scope of his employment relationship with Wyndham. (Lichtenstein Decl., Ex. H ¶ 7; Ex. I ¶ 18.)

**Response To Defendants' Undisputed Material Fact No. 24**

Disputed that Defendants' Undisputed Material Fact No. 21 sets forth "material facts" as required under Local Civil Rule 56.1.  Further, Wyndham has admitted that it had no knowledge of and did not authorize the subject flight. (Complaint, ¶ 34; Answer, ¶ 34; Breitenbach Aff., Exh. A at page 2 ("[T]here was no 'authorization' relating to the rental or flight.")

## SUPPLEMENTAL STATEMENT OF DISPUTED MATERIAL FACTS

Illinois National submits the following supplemental statement of disputed material facts (referred to in the accompanying Memorandum of Law as "SF__") in support of its opposition to Defendants' motions:

### THE AIRCRAFT MANAGEMENT SERVICE AGREEMENT

**Plaintiff's Undisputed Material Fact No. 25**

On or about December 19, 2001, Wyndham's predecessor, Cendant Operations, Inc. (Wyndham and its predecessor, Cendant Operations, Inc., are referred to as "Wyndham") and Jet Aviation Business Jets, Inc. ("Jet Aviation") entered into an Aircraft Management Services Agreement (the "Agreement"). (Konicki Decl. ¶ 4-5, Exh. A)

**Plaintiff's Undisputed Material Fact No. 26**

Among other things, the Agreement obligated Jet Aviation to provide domestic flight planning and scheduling, flight crew staffing, and management of scheduled and unscheduled maintenance of Wyndham's aircraft. (Konicki Decl. ¶ 6)

**Plaintiff's Undisputed Material Fact No. 27**

As it does for many clients, if Wyndham's aircraft was not available when needed by Wyndham, Jet Aviation could arrange for an aircraft for Wyndham's use from the fleet managed by Jet Aviation or from another source, even though such aircraft would not be owned by Wyndham. (Konicki Decl. ¶ 7)

**Plaintiff's Undisputed Material Fact No. 28**

Pursuant to Section 7 of the Agreement, Wyndham could allow Jet Aviation to insure its aircraft on Jet Aviation's fleet insurance policy. The Agreement further provided that upon written request and at the expense of the Owner, Jet Aviation would use its best efforts to obtain any additional coverages or limits the Owner desires. The Agreement required Wyndham to pay Jet Aviation for the coverage for Wyndham's aircraft and Jet Aviation would furnish Wyndham copies of each policy and endorsement on which the Owner is named relating to the aircraft. (Konicki Decl. ¶ 8, Exh. A at Sections 7.1, 7.3, 7.4 and 7.5)

**Plaintiff's Undisputed Material Fact No. 29**

Pursuant to Section 7 of the Agreement, Jet Aviation agreed to procure insurance for Wyndham's aircraft insured under Jet Aviation's fleet policy. (Konicki Decl. ¶ 8)

NY/575971v1

**Plaintiff's Undisputed Material Fact No. 30**

Among the liability coverages procured by Jet Aviation and provided to Jet Aviation's clients, including Wyndham, was coverage for liability for non-owned aircraft that are operated by or used at the direction of Jet Aviation. (Konicki Decl. ¶ 9; Tomlinson Decl. ¶ 20)

**Plaintiff's Undisputed Material Fact No. 31**

The Agreement does not contain any provision stating that Jet Aviation must provide Wyndham with liability coverage for non-owned aircraft that are not operated by or used at the direction of Jet Aviation. (Konicki Decl. ¶ 10, Exh. A; Houghton Decl. Exh. N at RFA 4)

**Plaintiff's Undisputed Material Fact No. 32**

Wyndham never requested or directed Jet Aviation to procure liability coverage for non-owned aircraft that are not operated by or used at the direction of Jet Aviation. (Konicki Decl. ¶ 11; Houghton Decl. Exh. N at RFAs 8 and 9)

**Plaintiff's Undisputed Material Fact No. 33**

Wyndham never advised Jet Aviation, either orally or in writing, that Jet Aviation was obligated to procure non-owned aircraft liability insurance on behalf of Wyndham with respect to Wyndham's use of non-owned aircraft with no involvement of Jet Aviation. (Konicki Decl. ¶ 17)

**Plaintiff's Undisputed Material Fact No. 34**

Jet Aviation understood that it was not obligated to procure insurance on behalf of Wyndham extending coverage for aircraft Wyndham used, but did not own, which were not operated by or used at the direction of Jet Aviation. (Konicki Decl. ¶ 14)

**Plaintiff's Undisputed Material Fact No. 35**

Jet Aviation has never sought to procure insurance for a client under its fleet insurance policy that extended coverage to aircraft that was not within its fleet, or that was not operated by or used at the direction of Jet Aviation. (Konicki Decl. ¶ 15)

**Plaintiff's Undisputed Material Fact No. 36**

Jet Aviation's intent and understanding was that it had to be involved in some way in the aircraft, which would give Jet Aviation some degree of knowledge and control with respect to the aircraft at issue. If not, potential liability could be endless and unknown under Jet Aviation's fleet insurance policy. (Konicki Decl. ¶ 16; Houghton Decl. Exh. R at 42:5-44:7)

## THE 2004 – 2009 JET AVIATION POLICIES

**Plaintiff's Undisputed Material Fact No. 37**

For successive one-year policy periods beginning April 1, 2004, up to the 2008-2009 policy period, a series of aircraft fleet management insurance policies ("the Policies") were purchased by Jet Aviation and issued by National Union Fire Insurance Company of Pittsburgh, PA ("National Union") for the first annual period of 2004-2005 and thereafter by Illinois National. (Konicki Decl. ¶ 12; Tomlinson Decl. ¶ 6)

**Plaintiff's Undisputed Material Fact No. 38**

The provisions and conditions of the coverage provided under the Policies were negotiated by the underwriter for National Union and Illinois National, on the one hand, and by Jet Aviation, through its broker, Marsh USA, Inc., on the other hand. (Tomlinson Decl. ¶ 10)

**Plaintiff's Undisputed Material Fact No. 39**

Neither Wyndham, nor its brokers, had involvement in connection with underwriting the policies purchased and renewed by Jet Aviation. (Tomlinson Decl. ¶ 13; Konicki Decl. ¶ 27)

**Plaintiff's Undisputed Material Fact No. 40**

Each of the Policies contained "Managed Aircraft Endorsements" that extended coverage to each of Jet Aviation's clients, such as Wyndham, with whom Jet Aviation had signed an Aircraft Management Services Agreement and who chose to insure their aircraft under Jet Aviation's fleet policy. (Konicki Decl. ¶ 12; Tomlinson Decl. ¶ 16)

**Plaintiff's Undisputed Material Fact No. 41**

A separate Managed Aircraft Endorsement was appended to the policy for each such client. These clients were identified on the Endorsements as "Insured Owners," i.e., owners of aircraft that were insured under Jet Aviation's fleet insurance policy.  (Konicki Decl. ¶ 12; Tomlinson Decl. ¶ 16)

**Plaintiff's Undisputed Material Fact No. 42**

For each period during which an Insured Owner's aircraft was insured under the Policies, a copy of the policy was generated for each Insured Owner including the Managed Aircraft Endorsement applicable to that Insured Owner.  Marsh sent the policies to Jet Aviation, who in turn distributed the policies to the respective Insured Owners, including Wyndham. (Tomlinson Decl. ¶ 18; Konicki Decl. ¶ 18)

**Plaintiff's Undisputed Material Fact No. 43**

Jet Aviation understood and agreed that the coverage afforded to Insured Owners for the use of non-owned aircraft was excluded under the Policies, unless the non-owned aircraft was operated by or used at the direction of Jet Aviation Business Jets, Inc. (Konicki Decl. ¶ 13)

**Plaintiff's Undisputed Material Fact No. 44**

It has never been Illinois National's intention or understanding to provide to Insured Owners coverage under the Policies for the use of non-owned aircraft that are not operated by or used at the direction of Jet Aviation Business Jets. (Tomlinson Decl. ¶ 20)

**Plaintiff's Undisputed Material Fact No. 45**

During negotiations for each of the Policies, the terms of coverage proposed by Jet Aviation, through its broker, Marsh, and to which Illinois National agreed, was that the coverage provided to Insured Owners excluded coverage for the use of non-owned aircraft, unless that non-owned aircraft was operated by or used at the direction of Jet Aviation Business Jets (Tomlinson Decl. ¶ 21)

**Plaintiff's Undisputed Material Fact No. 46**

Had there been an intention to provide non-owned aircraft coverage for Wyndham for the use of aircraft in which a Jet Aviation entity had no involvement, this risk would have had to have been specifically underwritten and there would have been a premium charged for such coverage, and no premium was charged for this coverage. (Tomlinson Decl. ¶ 41; Houghton Decl. Exh. R at 223:8-17)

**Plaintiff's Undisputed Material Fact No. 47**

Coverage for liability arising from non-owned aircraft, without limiting it to aircraft operated by or used at the direction of Jet Aviation Business Jets, was not a risk that Illinois National could evaluate and underwrite through the fleet policy purchased by Jet Aviation. (Tomlinson Decl. ¶ 23)

## THE 2004 POLICY

**Plaintiff's Undisputed Material Fact No. 48**

Jet Aviation Holdings, Inc. purchased Gold Medallion Comprehensive Business Aircraft Policy No. GM 1852800-01 issued by National Union Fire Insurance Company of Pittsburgh, Pa. for the policy period April 1, 2004 to April 1, 2005 (the "2004 Policy"). (Tomlinson Decl. ¶ 6)

**Plaintiff's Undisputed Material Fact No. 49**

Coverage C of the 2004 Policy provides as follows:

**Coverage C – Liability for the Use of Non-Owned Aircraft**

The Company will promptly pay on behalf of the <u>insured</u> all sums which the <u>insured</u> becomes legally obligated to pay as damages because of **bodily injury** and **property damage** caused by an **occurrence** during the policy period arising out of the use of **non-owned aircraft** by or on behalf of the <u>insured</u>.

(Tomlinson Decl., Exh. A at ILNAT002585)

14

**Plaintiff's Undisputed Material Fact No. 50**

The Managed Aircraft Endorsement identifying Cendant as the "Insured Owner" appended to the 2004 Policy provides in pertinent part as follows:

5) The insurance afforded by this policy for the interest of the "Insured Owner" described in Item 1. of this endorsement or Jet Aviation Business Jets, Inc. (as fully described in Item 1 of the Declarations Page) is extended to other **Aircraft** insured under this policy but excluding any **Non-Owned Aircraft** unless such **Non-Owned Aircraft** is operated by or used at the direction of Jet Aviation Business Jets, Inc.

(Tomlinson Decl., Exh. A at ILNAT002639)

**Plaintiff's Undisputed Material Fact No. 51**

Wyndham has never considered Jet Aviation's procurement of the 2004 Policy to be a breach of Jet Aviation's obligations under the Agreement.  (Houghton Decl. Exh. N at RFA 22)

**Plaintiff's Undisputed Material Fact No. 52**

Wyndham never advised Jet Aviation that the procurement of the 2004 Policy did not fulfill Jet Aviation's obligations under the Agreement or that the Managed Aircraft Endorsement attached to the 2004 Policy was incorrect in any way regarding the non-owned aircraft coverage.  (Konicki Decl. ¶ 20; Houghton Decl. Exh. N at RFA 23)


**THE 2005 POLICY**

**Plaintiff's Undisputed Material Fact No. 53**

Through the renewal for 2005, Jet Aviation Holdings, Inc. purchased Gold Medallion Comprehensive Business Aircraft Policy No. GM 1852800-02 issued by Illinois National for the policy period April 1, 2005 to April 1, 2006 (the "2005 Policy").  (Tomlinson Decl. ¶ 6)

**Plaintiff's Undisputed Material Fact No. 54**

A Confirmation of Aviation Insurance Coverages ("Confirmation") describes the coverage available to Cendant under the 2005 Policy in pertinent part as follows: "Including Non-Owned Liability (non-Owned Liability limited to aircraft used at or by the direction of Jet Aviation Business Jets, Inc.)."  (Houghton Decl. Exh A; Houghton Decl. Exh. N at RFAs 24, 25, and 27)

**Plaintiff's Undisputed Material Fact No. 55**

The provisions of Coverage C – Liability for the Use of Non-Owned Aircraft of the 2005 Policy and of the Managed Aircraft Endorsement for Wyndham appended to the 2005 Policy

remained the same as those in the 2004 Policy. (Tomlinson Decl., Exh. B at ILNAT003304, Exh. C at ILNAT004809)

**Plaintiff's Undisputed Material Fact No. 56**

Wyndham has never considered Jet Aviation's procurement of the 2005 Policy to be a breach of Jet Aviation's obligations under the Agreement. (Houghton Decl. Exh. N at RFA 40)

**Plaintiff's Undisputed Material Fact No. 57**

Wyndham never advised Jet Aviation that the procurement of the 2005 Policy did not fulfill Jet Aviation's obligations under the Agreement or that the Managed Aircraft Endorsement attached to the 2005 Policy was incorrect in any way regarding the non-owned aircraft coverage. (Konicki Decl. ¶ 20; Houghton Decl. Exh. N at RFA 41)

## THE 2006 POLICY

**Plaintiff's Undisputed Material Fact No. 58**

Through the renewal for 2006, Jet Aviation Holdings, Inc. purchased Gold Medallion Comprehensive Business Aircraft Policy No. GM 1852800-03, issued by Illinois National to Jet Aviation Holdings, Inc. for the policy period April 1, 2006 to April 1, 2007 (the "2006 Policy"). (Tomlinson Decl. ¶ 6)

**Plaintiff's Undisputed Material Fact No. 59**

Confirmations generated by Marsh and sent to Jet Aviation for distribution described the coverage available to Wyndham under the 2006 Policy in pertinent part as follows: "Including Non-Owned Liability (non-Owned Liability limited to aircraft used at or by the direction of Jet Aviation Business Jets, Inc.)." Houghton Decl., Exhs. B, C and Exh. S at 22:19-23:11, 24:24-26:1)

**Plaintiff's Undisputed Material Fact No. 60**

The provisions of Coverage C – Liability for the Use of Non-Owned Aircraft of the 2006 Policy and of the Managed Aircraft Endorsements for Cendant and Wyndham appended to the 2006 Policy remained the same as those in the 2005 Policy. (Tomlinson Decl., Exh. D at MARSH 000243; Exh. E; Exh. F)

**Plaintiff's Undisputed Material Fact No. 61**

The total annual premium for the coverage provided to Wyndham under the 2006 Policy was $73,399. (Konicki Decl. ¶ 26; Tomlinson Decl. ¶ 40; Houghton Decl. Exh. N at RFA 94)

**Plaintiff's Undisputed Material Fact No. 62**

Wyndham has never considered Jet Aviation's procurement of the 2006 Policy to be a breach of Jet Aviation's obligations under the Agreement. (Houghton Decl. Exh. N at RFA 62)

NY/575971v1

**Plaintiff's Undisputed Material Fact No. 63**

Wyndham never advised Jet Aviation that the procurement of the 2006 Policy did not fulfill Jet Aviation's obligations under the Agreement or that the Managed Aircraft Endorsement attached to the 2006 Policy was incorrect in any way regarding the non-owned aircraft coverage. (Konicki Decl. ¶ 20; Response to RFA No. 63)

## WYNDHAM BUYS ITS OWN NON-OWNED AIRCRAFT LIABILITY COVERAGE UNDER THE 2006 STARNET POLICY

**Plaintiff's Undisputed Material Fact No. 64**

Wyndham expected that policies separate from the 2006 Policy from Illinois National would provide coverage for non-owned aircraft that were not operated by or used at the direction of Jet Aviation. (Houghton Decl. Exh. N at RFA 59.)

**Plaintiff's Undisputed Material Fact No. 65**

Wyndham thus obtained non-owned aircraft liability coverage through a Corporate Contingent Aviation Liability Policy No. BA06N1038S issued by StarNet Insurance Company ("StarNet") to Wyndham for the policy period August 1, 2006 to August 1, 2007 (the "2006 StarNet Policy"). (Houghton Decl. Exh. N at RFA 56 and 57; Houghton Decl. Exh. F)

**Plaintiff's Undisputed Material Fact No. 66**

Wyndham's Non-Owned Aircraft Liability Application for the 2006 StarNet Policy included a copy of the Confirmation for the 2006 Policy from Illinois National that stated "non-Owned Liability limited to aircraft used at or by the direction of Jet Aviation Business Jets, Inc." (Houghton Decl. Exhs. D and E)

**Plaintiff's Undisputed Material Fact No. 67**

Wyndham paid $26,697 in premium for coverage under the 2006 StarNet Policy. (Houghton Decl. Exh. F at BERKLEY000168)

## THE 2007 POLICY

**Plaintiff's Undisputed Material Fact No. 68**

Through the renewal for 2007, Jet Aviation International, Inc. purchased Gold Medallion Comprehensive Business Aircraft Policy No. GM 1852800-04, issued by Illinois National for the policy period April 1, 2007 to April 1, 2008 (the "2007 Policy"). (Tomlinson Decl. ¶ 6)

NY/575971v1

**Plaintiff's Undisputed Material Fact No. 69**

A Confirmation generated by Marsh and sent to Jet Aviation for distribution described the coverage available to Wyndham under the 2007 Policy in pertinent part as follows: "Including Non-Owned Liability (non-Owned Liability limited to aircraft used at or by the direction of Jet Aviation Business Jets, Inc.)."  Houghton Decl. Exh. G and Exh. S at 32:5-17, 33:8-34:10).

**Plaintiff's Undisputed Material Fact No. 70**

The provisions of Coverage C – Liability for the Use of Non-Owned Aircraft of the 2007 Policy and of the Managed Aircraft Endorsement for Wyndham appended to the 2007 Policy remained the same as those in the 2006 Policy. (Tomlinson Decl., Exh. G at ILNAT 030863, ILNAT030680)

**Plaintiff's Undisputed Material Fact No. 71**

The total annual premium for the coverage provided to Wyndham under the 2007 Policy was $61,250.  (Konicki Decl. ¶ 26; Tomlinson Decl. ¶ 40; Houghton Decl. Exh. N at RFA 95)

**Plaintiff's Undisputed Material Fact No. 72**

Wyndham has never considered Jet Aviation's procurement of the 2007 Policy to be a breach of Jet Aviation's obligations under the Agreement.  (Houghton Decl. Exh. N at RFA 78)

**Plaintiff's Undisputed Material Fact No. 73**

Wyndham never advised Jet Aviation that the procurement of the 2007 Policy did not fulfill Jet Aviation's obligations under the Agreement, or that the Managed Aircraft Endorsement attached to the 2007 Policy was incorrect in any way regarding the non-owned aircraft coverage.  (Konicki Decl. ¶ 20; Houghton Decl. Exh. N at RFA 79)

**Plaintiff's Undisputed Material Fact No. 74**

Wyndham understood that the 2007 Policy excluded coverage for any non-owned aircraft unless such non-owned aircraft is operated by or used at the direction of Jet Aviation.  (Houghton Decl. Exh. N at RFA 72.)

**Plaintiff's Undisputed Material Fact No. 75**

Wyndham did not expect coverage for non-owned aircraft that were not operated by or used at the direction of Jet Aviation to be provided under the 2007 Policy.  (Houghton Decl. Exh. N at RFA 76)

**WYNDHAM BUYS ITS OWN NON-OWNED AIRCRAFT COVERAGE UNDER THE 2007 STARNET POLICY**

**Plaintiff's Undisputed Material Fact No. 76**

Wyndham expected that policies separate from the 2007 Policy from Illinois National would provide coverage for non-owned aircraft that were not operated by or used at the direction of Jet Aviation. (Houghton Decl. Exh. N at RFA 77)

**Plaintiff's Undisputed Material Fact No. 77**

Wyndham thus obtained non-owned aircraft liability coverage through a Corporate Contingent Aviation Liability Policy No. BA07N1038S issued by StarNet Insurance Company to Wyndham for the policy period August 1, 2007 to August 1, 2008 (the "2007 StarNet Policy"). (Houghton Decl. Exh. N at RFAs 74 and 75; Exh. H)

**Plaintiff's Undisputed Material Fact No. 78**

Wyndham paid $36,744 in premium for coverage under the 2007 StarNet Policy. (Houghton Decl. Exh. H at WYN000403)

**Plaintiff's Undisputed Material Fact No. 79**

Wyndham expected that the 2007 StarNet Policy would provide coverage for non-owned aircraft that were not operated by or used at the direction of Jet Aviation. (Houghton Decl. Exh. N at RFA 75)

**THE 2008 POLICY**

**Plaintiff's Undisputed Material Fact No. 80**

In connection with the renewal of the 2007 Jet Aviation Policy, Marsh advised Illinois National that various matters relating to the 2007 Policy should be revised. (Houghton Decl. Exh. R at 73:12-77:7; Tomlinson Decl. ¶ 36)

**Plaintiff's Undisputed Material Fact No. 81**

One such matter was that Jet Aviation's business operations included several affiliated Jet Aviation entities in addition to Jet Aviation Business Jets, Inc., and that the Managed Aircraft Endorsement needed to be revised to encompass all of the entities. (Houghton Decl. Exh. R at 75:19-77:7, 90:22-92:6, 101:2-16; Exh. S at 57:17-58:16; Tomlinson Decl. ¶ 36; Konicki Decl. ¶ 21)

**Plaintiff's Undisputed Material Fact No. 82**

Marsh thus replaced the reference to Jet Aviation Business Jets, Inc. in the Managed Aircraft Endorsement with the term "Named Insured." (Tomlinson Decl. ¶ 37; Konicki Decl. ¶ 22)

19

**Plaintiff's Undisputed Material Fact No. 83**

In March 2008, Illinois National accepted Marsh's "Binder Specifications," outlining the terms of coverage to be provided in the 2008 Policy, including the same non-owned coverage exclusion contained in all prior policies since 2004, as follows:

> Covered Nonowned Aircraft: Not owned in whole or in part or scheduled or exceeding maximum seat limitations inclusive of any other aircraft insured under the policy but excluding any nonowned aircraft unless such nonowned aircraft is operated by or used at the direction of Jet Aviation Business Jets, Inc.

(Tomlinson Decl. ¶ 32-34, Exh. H at ILNAT029200.)

**Plaintiff's Undisputed Material Fact No. 84**

The 2008 Confirmation, received by Wyndham, describes the coverage bound under Gold Medallion Comprehensive Business Aircraft Policy No. GM 1852800-05, issued by Illinois National to Jet Aviation for the policy period April 1, 2008 to April 1, 2009 (the "2008 Jet Aviation Policy") (Houghton Decl. Exh. I; Exh. N at RFA 81, 82.)

**Plaintiff's Undisputed Material Fact No. 85**

The 2008 Confirmation, received by Wyndham, described the coverage available to Wyndham under the 2008 Policy in pertinent part as follows: "Including Non-Owned Liability (non-Owned Liability limited to aircraft used at or by the direction of Jet Aviation Business Jets, Inc.)." (Houghton Decl. Exh. I; Exh. N at RFA 81, 84)

**Plaintiff's Undisputed Material Fact No. 86**

The Managed Aircraft Endorsement for Wyndham appended to the 2008 Policy states in pertinent part:

> 5)    The insurance afforded by this policy for the interest of the "Insured Owner" described in Item 1. of this endorsement or the **Named Insured** (as fully described in Item 1 of the Declarations Page) is extended to other **Aircraft** insured under this policy but excluding any **Non-Owned Aircraft** unless such **Non-Owned Aircraft** is operated by or used at the direction of the **Named Insured**.

(Tomlinson Decl. Exh. I at ILNAT030973)

**Plaintiff's Undisputed Material Fact No. 87**

The total annual premium for the coverage provided to Wyndham under the 2008 Policy was $45,367, down from $61,250 premium paid for the 2007 policy and $73,399 paid for the 2006 policy. (Konicki Decl. ¶ 26; Tomlinson Decl. at ¶ 40; Houghton Decl. Exh. N at RFA 94, 95 and 96)

## THE MUTUAL INTENTIONS AS TO THE 2008 POLICY

### Plaintiff's Undisputed Material Fact No. 88

In the replacement of "Jet Aviation Business Jets, Inc." with "Named Insured" in the 2008 Endorsement, the term "Named Insured" was intended to encompass all Jet Aviation entities and only Jet Aviation entities.  (Konicki Decl. ¶ 22; Tomlinson Decl. at ¶ 37; Houghton Decl. Exh. R at 75:19-77:7, 80:11-83:1, 90:22-92:6, 101:2-16; 139:9-140:9; 161:17-162:6; Exh. S at 57:17-58:16)

### Plaintiff's Undisputed Material Fact No. 89

In the replacement of "Jet Aviation Business Jets, Inc." with "Named Insured" in the 2008 Endorsement, Illinois National did not intend to provide coverage to Wyndham for the use of non-owned aircraft that was not operated by or used at the direction of Jet Aviation (Tomlinson Decl. ¶ 39)

### Plaintiff's Undisputed Material Fact No. 90

In the replacement of "Jet Aviation Business Jets, Inc." with "Named Insured" in the 2008 Endorsement, Jet Aviation did not intend for Wyndham to have coverage for non-owned aircraft that was not operated by or used at the direction of Jet Aviation.  (Konicki Decl. ¶ 24)

### Plaintiff's Undisputed Material Fact No. 91

In the replacement of "Jet Aviation Business Jets, Inc." with "Named Insured," Marsh did not did not intend for Wyndham to have coverage for non-owned aircraft that was not operated by or used at the direction of Jet Aviation.  (Houghton Decl. Exh. R at 68:6-69:13; 75:19-77:7, 80:11-83:1; 86:11-87:13, 88:6-89:3, 91:17-92:6, 94:19-95:1 and 96:20-97:2, 101:7-16,; and Exh. S at 62:12-63:8, 63:1-8)

### Plaintiff's Undisputed Material Fact No. 92

Wyndham understood and expected that non-owned aircraft liability coverage under the 2008 Policy was excluded unless the aircraft was operated by or used at the direction of Jet Aviation. (Houghton Decl. Exh. N at RFA 85, 89; Exh. J at ARSC 325; Exh. M at ¶ 27; Breitenbach Decl. Exh. B; Konicki Decl. ¶ 25)

### Plaintiff's Undisputed Material Fact No. 93

In April 2008, Wyndham's broker, Aon, confirmed to Wyndham the limitation on non-owned coverage for the 2008 Policy as follows:

"the Jet Aviation policy excludes "any Non-Owned Aircraft unless such Non-Owned Aircraft is operated by or used at the direction of Jet Aviation Business Jets, Inc." The Non-Owned policy that we place for you with Berkley Aviation (Policy #BA07N1038S), covers ANY Non-Owned Aircraft having a seating capacity not to

exceed 50 total seats, anywhere in the world.  This policy is an excess policy and would become excess above Jet Aviation's policy in the event that the Non-Owned Aircraft is operated by or used at the direction of Jet Aviation."

(Houghton Decl. Exh. J at ARSC 325)

**Plaintiff's Undisputed Material Fact No. 94**

Prior to this litigation, Wyndham did not consider Jet Aviation's procurement of the 2008 Policy to be a breach of Jet Aviation's obligations under the Agreement.  (Houghton Decl. Exh. N at RFA 92)

## WYNDHAM BUYS ITS OWN NON-OWNED AIRCRAFT COVERAGE UNDER THE 2008 STARNET POLICY

**Plaintiff's Undisputed Material Fact No. 95**

Wyndham obtained non-owned aircraft liability coverage through Corporate Contingent Aviation Liability Policy No. BA08N1038S issued by StarNet Insurance Company for the policy period August 1, 2008 to August 1, 2009 (the "2008 StarNet Policy").  (Houghton Decl. Exh. M at ¶ 19; Decl. Exh. K, Houghton Decl. Exh. N at RFA 88.)

**Plaintiff's Undisputed Material Fact No. 96**

The 2008 StarNet Policy provided non-owned aircraft liability coverage to Wyndham and had a $100 million per-occurrence limit of liability.  (Houghton Decl. Exh. K at WYN000001)

**Plaintiff's Undisputed Material Fact No. 97**

Wyndham paid $33,290 in premium for coverage under the 2008 StarNet Policy.  (Houghton Decl. Exh. K at WYN000001)

**Plaintiff's Undisputed Material Fact No. 98**

During the policy period April 1, 2008 to April 1, 2009, Wyndham expected that the 2008 StarNet Policy would provide coverage for non-owned aircraft that were not operated by or used at the direction of Jet Aviation.  (Houghton Decl. Exh. N at RFA 90 and 91)

## THE 2009 FLEET INSURANCE POLICY PROCURED BY JET AVIATION

**Plaintiff's Undisputed Material Fact No. 99**

For the policy period from April 1, 2009 to April 1, 2010, Jet Aviation obtained Managed Aircraft Hull and Liability Policy, No. MAP12000657, underwritten principally by Global

NY/575971v1

Aerospace, Inc. (the "2009 Global Aerospace Policy"). Endorsement No. 32, applicable to the managed aircraft schedules attached to the 2009 Global Aerospace Policy states as follows:

> With respect to Coverage C, the definition of "Insured" is extended to include the person(s) or organization(s) described in the schedule below, provided the non-owned aircraft is used by or on behalf of that person or organization and concurrently approved by Jet Aviation International, Inc. and/or its subsidiaries.

(Konicki Decl. ¶ 28; and Exh. B)

**Plaintiff's Undisputed Material Fact No. 100**

Wyndham has never advised Jet Aviation that the procurement of the 2009 Global Aerospace Policy did not fulfill Jet Aviation's obligations under the Agreement. In particular, Wyndham has never advised Jet Aviation that the above endorsement attached to the 2009 Global Aerospace Policy was incorrect in any way. (Konicki Decl. ¶ 29)

## THE ACCIDENT AND UNDERLYING ACTIONS

**Plaintiff's Undisputed Material Fact No. 101**

On August 4, 2008, a Cessna 172K aircraft rented by two employees of Wyndham Resort Development Corporation, Jason Ketcheson and Frank Toohey (the "Cessna"), crashed into a residence in Gearhart, Oregon (the "Accident"). (Houghton Decl. Exh. N at RFA 97)

**Plaintiff's Undisputed Material Fact No. 102**

The Cessna was rented from Aviation Adventures, LLC in Seaside, Oregon ("Aviation Adventures"). (Houghton Decl. Exh. N at RFA 98)

**Plaintiff's Undisputed Material Fact No. 103**

Wyndham had no knowledge of and did not authorize the rental or the flight. (Exhs., L and M at ¶ 34; Breitenbach Decl. Exh. A at pg. 2)

**Plaintiff's Undisputed Material Fact No. 104**

The rented Cessna was not operated by or used at the direction of Jet Aviation. (Konicki Decl., ¶ 31.; Houghton Decl. Exh. N at RFA 101)

**Plaintiff's Undisputed Material Fact No. 105**

On or about August 5, 2008, Wyndham gave notice of the claims asserted against them arising from the Accident under the 2008 StarNet Policy, administered by Berkley Aviation. (Houghton Decl. Exh. N at RFA 109; Exh. P ¶ 5; Exh. Q ¶ 6; Exh. O ¶¶ 2, 3)

**Plaintiff's Undisputed Material Fact No. 106**

On or about August 6, 2008, Berkley Aviation accepted its duty to defend Wyndham in connection with the Accident under the 2008 StarNet Policy without reservation. (Houghton Decl. Exh. P ¶ 6; Exh. Q ¶ 7; Exh. O ¶ 4)

**Plaintiff's Undisputed Material Fact No. 107**

Wyndham did not inquire regarding coverage under the 2008 Illinois National Policy until on or about October 22, 2009. (Breitenbach Decl. ¶ 6)

**Plaintiff's Undisputed Material Fact No. 108**

On April 6, 2009, Wyndham advised Illinois National that it had no position as to coverage under the 2008 policy. (Breitenbach Decl. Exh. B)

**Plaintiff's Undisputed Material Fact No. 109**

Berkley is defending Wyndham in this coverage litigation under the 2008 StarNet Policy. (Houghton Decl. Exh. N at RFA 116; Exh. Q ¶ 15; Exh. O ¶ 16-17)


DATED:   June 21, 2010

Andrew T. Houghton, Esq. (*Pro Hac Vice*)
Timothy D. Kevane, Esq. (*Pro Hac Vice*)
Aaron F. Mandel
SEDGWICK, DETERT, MORAN & ARNOLD LLP
125 Broad Street, 39th Floor
New York, New York 10004-2400
Telephone: (212) 422-0202
Facsimile:  (212) 422-0925

Attorneys for Plaintiff
Illinois National Insurance Company

NY/575971v1