Andrew T. Houghton (*pro hac vice*)
Timothy D. Kevane (*pro hac vice*)
Aaron F. Mandel
SEDGWICK, DETERT, MORAN & ARNOLD, LLP
125 Broad St., 39th Floor
New York, New York 10004
Telephone: (212) 422-0202
Facsimile: (212) 422-0925

Attorneys for Plaintiff
ILLINOIS NATIONAL INSURANCE COMPANY

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW JERSEY

-------------------------------------------------------X

| | |
|---|---|
| ILLINOIS NATIONAL INSURANCE COMPANY, | Case No.: 2:09-cv-01724-GEB-MCA |
| Plaintiff, | **DECLARATION OF GARY KONICKI IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND TO DISMISS** |
| -vs- | |
| WYNDHAM WORLDWIDE OPERATIONS, INC.; WYNDHAM WORLDWIDE CORPORATION; WYNDHAM VACATION OWNERSHIP, INC.; and WYNDHAM RESORT DEVELOPMENT CORPORATION, | Return Date: July 6, 2010 |
| | Oral Argument Requested |
| Defendants. | |

-------------------------------------------------------X

I, Gary Konicki, am over the age of eighteen, and based on personal knowledge, am competent to testify regarding the following:

1.    I am employed by Jet Aviation Holdings USA, Inc. ("Jet Aviation") as Director of Accounting Operations. I have been employed by Jet Aviation and its subsidiary companies since 2001. I am fully aware of the facts set forth in this declaration from personal knowledge unless indicated otherwise.

2.     I submit this declaration in support of the opposition of Illinois National Insurance Company ("Illinois National") to the motion for summary judgment submitted by defendants Wyndham Worldwide Operations, Inc., Wyndham Worldwide Corporation, Wyndham Vacation Ownership, Inc. and Wyndham Resort Development Corporation (collectively "Wyndham").

3.     Jet Aviation offers aircraft owners and operators management services, including international and domestic flight planning and scheduling, flight crew staffing, line operations, maintenance and hangarage, insurance management, accounting and administrative issues. Jet Aviation manages close to 70 aircraft.

4.     As of 2008, my responsibilities at Jet Aviation included management of shared accounting and finance services across Jet Aviation subsidiaries. It was also my responsibility to review and carry out Jet Aviation's insurance obligations pursuant to the management agreements with our clients. One of those agreements was with Cendant Operations, Inc. ("Cendant"), signed in December 2001. I have attached as Exhibit "A" a copy of that agreement as maintained by Jet Aviation (the "Agreement").

5.     I understand that around 2006, Cendant split into four entities, one of which was Wyndham Worldwide Corporation. The Agreement between Cendant and Jet Aviation remained effective as to the aircraft managed by Jet Aviation for Wyndham Worldwide Corporation. My reference to "Wyndham" for purposes of discussing the Agreement includes both Wyndham and its predecessor, Cendant.

6.     The Agreement provides for Jet Aviation's management and operation of Wyndham's (originally Cendant's) aircraft ("Wyndham's Aircraft"). Among other things, the Agreement obligated Jet Aviation to provide domestic flight planning and scheduling, flight crew staffing, and management of scheduled and unscheduled maintenance of Wyndham's Aircraft.

7.      As it does for many clients, if Wyndham's Aircraft was not available when needed by Wyndham, Jet Aviation could arrange for an aircraft for Wyndham's use from the fleet managed by Jet Aviation or from another source, even though such aircraft would not be owned by Wyndham.

8.      Under Section 7 of the Agreement, Jet Aviation agreed to procure third-party liability insurance for Wyndham's Aircraft in an amount of not less than $300,000,000 for bodily injury and property damage. In addition, Section 7 provides that upon the written request of Wyndham and at Wyndham's expense, Jet Aviation agreed to use its best efforts to obtain any additional coverages or limits that Wyndham requested.

9.      The liability coverage procured by Jet Aviation and provided to Jet Aviation's clients who chose to have their aircraft insured under Jet Aviation's fleet policy included coverage for liability for non-owned aircraft that are operated by or used at the direction of Jet Aviation. This coverage protected Jet Aviation's clients in situations where Jet Aviation arranged for an aircraft for the client's use from the fleet managed by Jet Aviation or from another source, even though such aircraft would not be owned by the client. This limited coverage was extended to Wyndham under Jet Aviation's fleet insurance policy.

10.     The Agreement does not contain a provision requiring Jet Aviation to provide Wyndham with liability coverage for non-owned aircraft that are not operated by or used at the direction of Jet Aviation.

11.     Wyndham has never requested Jet Aviation to procure liability coverage on their behalf for non-owned aircraft that are not operated by or used at the direction of Jet Aviation.

12.     For successive one-year policy periods beginning April 1, 2004, up to the 2008-2009 policy period, a series of aircraft fleet management insurance policies were purchased by Jet Aviation from AIG Aviation, now known as Chartis Aerospace, and issued by Illinois National, with

the exception of National Union Fire Insurance Company of Pittsburgh, PA ("National Union") for the first annual period of 2004-2005. Each of these policies contained the "Managed Aircraft Endorsement," which extended coverage to each of Jet Aviation's clients such as Wyndham, with whom Jet Aviation had signed an Aircraft Management Services Agreement and who chose to insure their aircraft under Jet Aviation's fleet management policy. A separate Managed Aircraft Endorsement was appended to the policy for each such client. These clients were identified on the Endorsements as "Insured Owners," i.e., owners of aircraft that were insured under Jet Aviation's fleet insurance policy.

13.     During negotiations for each of these policies, beginning with the 2004-2005 policy period, Jet Aviation understood and agreed that the coverage afforded to Insured Owners for the use of aircraft they did not own was excluded, unless that non-owned aircraft was operated by or used at the direction of Jet Aviation Business Jets, Inc. This language was set forth in the Managed Aircraft Endorsements for each year, which were attached to Jet Aviation's successive policies and which I review further below.

14.     The above wording reflected Jet Aviation's understanding and intention that it was not obligated to procure insurance on behalf of Wyndham extending coverage for aircraft Wyndham used, but did not own, which were not operated by or used at the direction of Jet Aviation.

15.     Under the Agreement, Wyndham had the option of insuring the Wyndham Aircraft on its own, or, to have the Aircraft insured under Jet Aviaton's fleet insurance policy. The term "fleet" refers to the fleet of aircraft that was managed by Jet Aviation. Jet Aviation has never sought to procure insurance for a client under its fleet insurance policy that extended coverage to aircraft that was not within its fleet, or that was not operated by or used at the direction of Jet Aviation.

16.    Jet Aviation's intent and understanding was that it had to be involved in some way in the aircraft, which would give Jet Aviation some degree of knowledge and control with respect to the aircraft at issue. If not, potential liability could be endless and unknown under our fleet insurance policy. That is, Jet Aviation has no knowledge of Wyndham's use of aircraft in its worldwide operations, including such information such as what type of aircraft it is flying and its condition, the purpose and location of use, who is flying the aircraft and whether they are qualified, or any detail as to passengers or any other cargo.

17.    Wyndham never advised Jet Aviation, either orally or in writing, that Jet Aviation was obligated to procure non-owned aircraft liability insurance on behalf of Wyndham with respect to Wyndham's use of non-owned aircraft with no involvement of Jet Aviation.

18.    During the years from 2004 through 2008, Jet Aviation received from Marsh the fleet management policies issued by National Union and Illinois National. In each year, Marsh would also provide a copy of the policy for each of Jet Aviation's clients whose aircraft were insured under the Jet Aviation fleet policy. Each policy for a Jet Aviation client included only the Managed Aircraft Endorsement applicable to that respective client. Jet Aviation then distributed the policies to its respective clients, including Wyndham.

19.    For the policy period from April 1, 2007 to April 1, 2008, Jet Aviation obtained Business Aircraft Policy, No. GM 1852800-04 issued by Illinois National to Jet Aviation International, Inc. (the "2007 Policy"). Paragraph 5 of the Managed Aircraft Endorsement attached to the 2007 Policy states in part as follows:

> The insurance afforded by this policy for the interest of the "Insured Owner" described in Item 1. of this endorsement or Jet Aviation Business Jets, Inc. (as fully described in Item 1 of the Declarations Page) is extended to other Aircraft insured under this policy but excluding any Non-Owned Aircraft unless such Non-Owned Aircraft is operated by or used at the direction of Jet Aviation Business Jets, Inc.

20.   Neither Cendant nor Wyndham ever advised Jet Aviation that the procurement of the 2007 Policy, or any prior policy procured on behalf of Wyndham from and after the date of the Agreement, did not fulfill Jet Aviation's obligations under the Agreement.  In particular, neither Cendant nor Wyndham ever advised Jet Aviation that the Managed Aircraft Endorsement attached to the 2007 Policy, or any prior policy, was incorrect in any way regarding the non-owned aircraft coverage.

21.   As mentioned above, the Jet Aviation entity that entered into the Agreement with Cendant in 2001 was "Jet Aviation Business Jets, Inc." It was our intention and understanding that the Managed Aircraft Endorsement in our policy with Illinois National was updated in 2008 to reflect that there were other subsidiaries of Jet Aviation. Thus, the Endorsement's reference to Jet Aviation Business Jets, Inc. only was modified with the intention to include all of Jet Aviation's entities.

22.   The specific reference to Jet Aviation Business Jets, Inc. in the Managed Aircraft Endorsement was replaced with "Named Insured," which term was intended to encompass all of the