**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
)
ILLINOIS NATIONAL INSURANCE )
COMPANY, )
)
     Plaintiff, )
)
v. )  Civil Action No. 09-1724 (GEB-DEA)
)
WYNDHAM WORLDWIDE OPERATIONS, )  **MEMORANDUM OPINION**
INC., WYNDHAM WORLDWIDE )
CORPORATION; WYNDHAM VACATION )
OWNERSHIP, INC.; and WYNDHAM )
RESORT DEVELOPMENT CORPORATION, )
)
     Defendants. )
)
)
_____ )


**BROWN, Chief Judge**

   This matter comes before the Court upon the motion of Defendants Wyndham Worldwide

Operations, Inc., Wyndham Worldwide Corporation, Wyndham Vacation Ownership, Inc., and

Wyndham Resort Development Corporation (collectively "defendants" or "Wyndham") for

summary judgment and to dismiss the complaint filed by Plaintiff Illinois National Insurance

Company ("Illinois National"). (Doc. No. 60.)  The Court has considered the parties'

submissions and decided the matter without oral argument pursuant to FED. R. CIV. P. 78.  For

the reasons that follow, the Court will grant the motion.

## I.      BACKGROUND

Illinois National began this action on April 13, 2009, by filing a complaint for declaratory judgment.  (Doc. No. 1.)  This action arises out of an accident on August 4, 2008 in which a Cessna 172 aircraft crashed into a residence in or around Gearhart, Oregon, resulting in the deaths of the two persons aboard the aircraft and three others on the ground, as well as property damage around the crash site.  (Compl. at ¶ 1; Doc. No. 1.)  Wyndham contends that the accident and the wrongful death litigation arising therefrom is covered under their insurance policy issued by Illinois National, and has demanded coverage under the Illinois National policy.  (Compl. at ¶ 3; Doc. No. 1.)

### A.      Facts[1]

Illinois National issued Gold Medallion Comprehensive Business Aircraft Policy No. GM 1852800-05, covering Jet Aviation International, Inc. ("Jet Aviation") and its subsidiaries for the period April 1, 2008 to April 1, 2009.  (Defs.' 56.1 Stmt. at ¶ 6; Doc. No. 60-2.)  During this period, in August 2008, a Cessna 172 aircraft piloted by Jason Ketcheson crashed into a house in Gearhart, Oregon.  (*Id.* at ¶ 1.)  Mr. Ketcheson and his passenger, Mr. Toohey, were both employed by Wyndham Resort Development Corporation.  (*Id.* at ¶ 3.)  Mr. Ketcheson had rented the Cessna 172 from Aviation Adventures to travel with Mr. Toohey to a work-related meeting in Oregon.  (*Id.* at ¶ 2.)

On or about December 19, 2001, Wyndham's predecessor, Cendant Operations, Inc. and Jet Aviation entered into an Aircraft Management Services Agreement (the "Agreement").  (Pl.'s

---

[1] The facts section of this Memorandum Opinion is taken from the parties Statements of Material Facts not in Dispute filed pursuant to L. CIV. R. 56.1, and shall not be construed as Findings of Fact.

56.1 Stmt. at ¶ 25; Doc. No. 76.)  Among other things, the Agreement obligated Jet Aviation to provide domestic flight planning and scheduling, flight crew staffing, and management of scheduled and unscheduled maintenance of Wyndham's aircraft.  If Wyndham's aircraft were not available when needed by Wyndham, Jet Aviation could arrange for an aircraft for Wyndham's use from another source.  Pursuant to Section 7 of the Agreement, Jet Aviation agreed to procure insurance for Wyndham's aircraft insured under Jet Aviation's policy.  (*Id.* at ¶¶ 26-29.)  Among the liability coverages procured by Jet Aviation and provided to Jet Aviation's client, Wyndham, was coverage for liability for non-owned aircraft that are operated by or used at the direction of Jet Aviation.  (*Id.* at ¶ 30.)

For successive one-year policy periods beginning April 1, 2004, up to the 2008-2009 policy period at issue, a series of aircraft fleet management insurance policies were purchased by Jet Aviation and issued by Illinois National.[2]  The provisions and conditions of the coverage provided under the policies were negotiated by the underwriter for National Union and Illinois National and by Jet Aviation, through it's broker.  (Pl.'s 56.1 Stmt. at ¶ 38; Doc. No. 76.)  A separate Managed Aircraft Endorsement was appended to the policy for each client that Jet Aviation had signed an Aircraft Management Services Agreement and who chose to insure their aircraft under Jet Aviation's fleet policy.  (*Id.* at ¶¶ 40, 41.)  These clients were identified on the Endorsements as "Insured Owners."  (*Id.* at ¶ 41.)

The original 2004 policy contains the following Managed Aircraft Endorsement:

5)      The insurance afforded by this policy for the interest of the "Insured

---

[2] The first annual period of 2004-2005 was actually covered by a policy issued by National Union Fire Insurance Company of Pittsburgh, Pa.  All subsequent policies were issued by Illinois National.  (Pl.'s 56.1 Stmt. at ¶ 37.)

Owner" described in Item 1 of this endorsement or Jet Aviation Business Jets, Inc. (as fully described in Item 1 of the Declarations Page) is extended to other Aircraft insured under this policy but excluding any Non-Owned Aircraft unless such Non-Owned Aircraft is operated by or used at the direction of Jet Aviation Business Jets, Inc.

(Pl.'s 56.1 Stmt. at ¶ 50.)  This Managed Aircraft Endorsement was left unchanged until the 2008 policy was negotiated.  (*Id.* at ¶¶ 50, 55, 60, 70.)  The Managed Aircraft Endorsement was revised for the 2008 policy period.  (*Id.* at ¶ 81.)  Jet Aviation's insurance broker replaced the two references to "Jet Aviation Business Jets, Inc." in the Managed Aircraft Endorsement with the term "Named Insured."  (*Id.* at ¶ 82.)

The Managed Aircraft Endorsement, as amended, further provides:

1) Jet Aviation Business Jets, Inc. has entered into an Aircraft Management Agreement with the person(s) or organization(s) described below and referred to as "Insured Owner":

Wyndham Worldwide Operations, Inc., Wyndham Worldwide Corporation & Bank of America, N.A., as Lessor

7 Sylvan Way
Parsippany, NJ 07504

And/or subsidiary (and/or subsidiary thereof).

2) The definition of Named Insured is extended to include the person(s) or organization(s) described in Item 1 of this endorsement.

Despite this expansion of coverage, the premium for the coverage provided to Wyndham under the 2008 policy was $45,367, down from $61,250 paid for the 2007 policy.  (Pl.'s 56.1 Stmt. at ¶ 87; Doc. No. 76.)  Also, Wyndham obtained separate non-owned aircraft liability coverage through a policy issued by StarNet Insurance Company for the policy period of August 1, 2008 to August 1, 2009.  (*Id.* at ¶ 95.)  This policy provided coverage for non-owned aircraft that were

4

not operated by or used at the direction of Jet Aviation.  (*Id.* at ¶ 98.)  It is also undisputed that

neither Wyndham, nor its brokers had involvement in the negotiations of or the underwriting

behind the provisions of the policy.  (*Id.*  at ¶¶ 38, 39.)  The policy was negotiated between

Illinois National on one side and Jet Aviation, through its broker, Marsh USA, Inc., on the other.

(*Id.*)

## II.    DISCUSSION

Defendants filed the instant motion for summary judgment and motion to dismiss,

arguing that: (1) the policy's plain language provides coverage, (2) Illinois National cannot

obtain reformation of its own unilateral mistake, (3) Illinois National cannot obtain reformation

following a loss when it would result in the denial of coverage, (4) reformation is barred by

Illinois National's negligence, and (5) Illinois National's complaint fails to state a claim for

mistake.  (Doc. No. 60-1.)

### A.    Standard of Review

#### 1.    Summary Judgment Standard

A party seeking summary judgment must "show that there is no genuine issue as to any

material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P.

56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Hersh v. Allen Prods. Co.,*

*Inc.*, 789 F.2d 230, 232 (3d Cir. 1986).  The threshold inquiry is whether there are "any genuine

factual issues that properly can be resolved only by a finder of fact because they may reasonably

be resolved in favor of either party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)

(noting that no issue for trial exists unless there is sufficient evidence favoring the nonmoving

party for a jury to return a verdict in its favor).  In deciding whether triable issues of fact exist,

the court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995); *Hancock Indus. v. Schaeffer*, 811 F.2d 225, 231 (3d Cir. 1987).

### 2.    Motion to Dismiss Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that plaintiff has failed to set forth fair notice of what the claim is and the grounds upon which it rests. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  A complaint will survive a motion to dismiss if it contains sufficient factual matter to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly,* 550 U.S. at 570).  The plausibility standard requires that "the plaintiff plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" and demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556).  Although a court must accept as true all factual allegations in a complaint, that tenet is "inapplicable to legal conclusions," and "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555); *see also Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).  In evaluating a motion to dismiss, a court may consider only the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic

6

documents if the complainant's claims are based upon those documents.  *See Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

Federal Rule of Civil Procedure 9(b) requires a plaintiff to plead fraud with particularity sufficient to place the defendant on notice of the precise misconduct with which they are charged, and to protect defendants from spurious charges of fraudulent behavior.  *See Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984), cert. denied, 469 U.S. 1211 (1985); see also FED. R. CIV. P. 9(b) ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity").  Therefore, pleading the fraud element, a plaintiff must specify "'the who, what, when, where, and how: the first paragraph of any newspaper story.'" *Advanta Corp. Sec. Litig.*, 180 F.3d 525, 534 (3d Cir. 1999) (quoting *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)). The Court of Appeals for the Third Circuit clarified that,

> [a]lthough Rule 9(b) falls short of requiring every material detail of the fraud such as date, location, and time, plaintiffs must use "alternative means of injecting precision and some measure of substantiation into their allegations of fraud."

*In re Rockefeller Ctr. Props. Secs. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002); see also *Lum v. Bank of Am.*, 361 F.3d 217, 225 (3d Cir. 2004) (citing *Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 659 (3d Cir. 1998)), cert. denied, 543 U.S. 918 (2004).

### B.   Analysis

#### 1.   The Language of the Policy

Wyndham moves for summary judgment, arguing that the plain language of the insurance policy provides coverage.  (Def.'s Br. at 9; Doc. No. 60-1.)  They argue that because the

Endorsement includes Wyndham as a "Named Insured" and on the very same page provides coverage for "Non-Owned Aircraft" that is operated by or used at the direction of the "Named Insured," the policy provides Wyndham with coverage for claims arising out of the accident. (*Id.*)

In its opposition, Illinois National argues that the Court should consider "the contract as a whole as well as the surrounding circumstances."  (Pl.'s Br. at 13; Doc. No. 81.)  They argue that the Court should consider several surrounding circumstances and evidence outside the four corners of the policy, such as the fact that this policy followed several years of prior policies that renewed the same coverage annually, that the premiums decreased despite the expansion of coverage, and that Wyndham procured separate insurance coverage for non-owned aircraft.  (*Id.*) They argue that reformation of the contract is appropriate in this instance.

### 2.      Reformation of the Contract

Wyndham argues that Illinois National cannot obtain reformation of the contract based on its own unilateral mistake.  (Defs.' Br. at 10; Doc. No. 60-1.)  Wyndham argues that the mistake was unilateral because Wyndham had no knowledge or involvement in the drafting process or negotiations.  (*Id.* at 12 (citing Defs.' 56.1 Stmt. at ¶¶ 22, 23; Doc. No. 60-2.))

In New Jersey, "[g]enerally, when interpreting an insurance policy, courts should give the policy's words their plain, ordinary meaning."  *Colliers Lanard & Axilbund v. Lloyds of London*, 458 F.3d 231, 236 (citing *NAV-ITS, Inc. v. Selective Ins. Co. of Am.*, 183 N.J. 110 (N.J. 2005) (internal quotation marks omitted).  "If the policy language is clear, the policy should be interpreted as written, [but] [i]f the policy is ambiguous, the policy will be construed in favor of the insured."  *Id.*  Further, if a policy is clear and unambiguous, the plain language of the

8

insurance policy will control.  *Id.* at 237.

The Third Circuit has noted that where a contract is clear, "it is rare that such a document will be reformed by a court."  *Raiczyk v. Ocean County Veterinary Hosp.*, 377 F.3d 266, 270 (3d Cir. 2004)(citation omitted).  The New Jersey Supreme Court teaches that the party seeking reformation must prove a "mutual mistake", which only exists when "both parties were laboring under the same misapprehension as to [a] particular, essential fact."  *Bonnco Petrol, Inc. v. Epstein*, 115 N.J. 599, 608 (1989) (citations omitted).  "To reform a written instrument, the party seeking relief must make out its case by 'clear and convincing' evidence."  *St. Pius X House of Retreats, Salvatorian Fathers v. Diocese of Camden*, 88 N.J. 571, 601 (1982).

Here, Illinois National argues that the mistake was mutual because the document did not reflect the bargain made by the parties.  (Pl.'s Br. at 15; Doc. No. 81.)  However, it is also undisputed that Illinois National and Wyndham did not deal directly with one another, and thus did not "bargain."  Illinois National then argues that negligence is not a bar to reformation based on mutual mistake, citing three pages of case law for the proposition that a drafting error does not preclude relief.  (Pl.'s Br. at 15-18; Doc. No. 81.)  The Court concludes that because Wyndham did not participate in the negotiation and drafting of the 2008 policy, there can be no mutual mistake.  Even taking all inferences in favor of Illinois National, the Court concludes that it has failed to prove by clear and convincing evidence that a mutual mistake occurred.

In order to reform an agreement on the basis of  a unilateral mistake, as opposed to mutual mistake, the following essential elements must each be present: (1) the mistake must be of so great a consequence that to enforce the contract as actually made would be unconscionable; (2) the matter as to which the mistake was made must relate to the material feature of the

9

contract; (3) the mistake must have occurred notwithstanding the exercise of reasonable care by the party making the mistake, and (4) the relief afforded must not seriously prejudice the other party, except for loss of his bargain. *Fleming Cos., Inc. v. Thriftway Medford Lakes, Inc.*, 913 F. Supp. 837, 843 (D.N.J. 1995) (citing *Conduit & Foundation Corp. v. Atlantic City*, 2 N.J. Super. 433, 439-440 (Ch. Div. 1949)); *see also Brookside Enterprises, Inc. v. Baum*, 1994 U.S. Dist. LEXIS 18361 (D.N.J. Dec 19, 1994). Negligence is defined as the failure to exercise reasonable care under the circumstances. Thus, since a mistaken party must have exercised reasonable care under the circumstances before the party may obtain reformation, where the mistake is the result of the mistaken party's own negligence such remedies are unavailable. *Moro v. Pulone*, 140 N.J. Eq. 25, 29 (Ch. Div. 1947) (citing *Harrington v. Heder*, 109 N.J. Eq. 528, 534 (Ch. Div. 1932)).

The Court concludes that this is not an extreme situation that would warrant reformation of the contract based on a unilateral mistake. The case at bar fails the first prong of the analysis provided in *Fleming* because this contract as written would not be unconscionable. The third prong of the analysis, whether the party seeking to reform the contract exercised reasonable care, is also not met. Here, it is clear to the Court that Illinois National was at best negligent while drafting the endorsement to include a corporate entity that it did not intend to include, and Wyndham is entitled to insurance coverage as a matter of law.

Further, Illinois National is the primary drafter of this insurance contract, and Wyndham had no input whatsoever in the changes that were made between the 2007 policy and the 2008 policy. Though the Court believes that the policy is clear on its face, where a word or phrase is ambiguous, a court generally will adopt the meaning that is most favorable to the non-drafting party if the contract was the result of negotiations between parties of unequal bargaining power.

*Pacifico v. Pacifico*, 190 N.J. 258, 268 (2007) (citing *RCI Ne. Servs. Div. v. Boston Edison Co.*, 822 F.2d 199, 203 n.3 (1st Cir. 1987)).   This is also more than a mere scrivener's error.  A scrivener's error occurs, following a bargain or agreement, when "the only mistake is in the reduction of the agreement to writing."  27 Williston on Contracts § 70:93.  Here, the mistake is in the meaning of the term "Named Insured," and more than a simple typographical error.

### 3.    Motion to Dismiss

Wyndham also styles part of its motion as one to dismiss, arguing that the two causes of action in Illinois National's complaint "fail to state a claim under Rule 12(b)(6) and have not been pled with the particularity required by Rule 9(b)."  (Defs.' Br. at 19; Doc. No. 60-1.)  Wyndham argues that Illinois National seeks reformation on the basis of the mistaken use of the term "Named Insured," but the complaint lacks specific details regarding the individuals who made the mistake, specific statements regarding the mistake, or even the corporate entities that were involved.  (*Id.*)

Illinois National cites non-precedential cases indicating that mistake need not be pled with the same particularity as fraud.  (Pl.'s Br. at 29-30; Doc. No. 81.)  It also argues that the complaint properly alleged "the parties' understanding and agreement with respect to the coverage under all the prior policies that were renewed annually, specifically alleging the coverage."  (*Id.* at 30 (citing Compl. at ¶¶ 16-17.))

The Court notes that the plain language of Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." (emphasis added.)  Illinois National's claims for reformation based upon mistake are clearly governed by Rule 9(b)'s heightened pleading standard.  The Court concludes that

these claims have not been properly averred.  The Complaint simply recites the applicable

language from the policy and exclusions, and states that:

> During the negotiations for each of the Policies, the parties understood and
> agreed that liability coverage available to Insured Owners for the use of non-
> owned aircraft was limited to non-owned aircraft operated by or used at the
> direction of Jet Aviation Business Jets, Inc.

(Compl. at ¶ 16.; Doc. No. 1.)  This does not identify with the required particularity "the who,

what, when, where, and how" of the mistake as required by Rule 9(b).  Therefore, in addition to

concluding that the policy is not ambiguous and is not subject to reformation based upon mutual

or unilateral mistake, the Court also concludes that the Complaint has not been pled with the

required particularity.


III.    **CONCLUSION**

For the reasons stated herein, the motion for summary judgment and to dismiss will be

granted.  An appropriate form of order is filed herewith.


Dated:  August 23, 2010


_____s/ Garrett E. Brown, Jr._____
GARRETT E. BROWN, JR., U.S.D.J.