NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ILLINOIS NATIONAL INSURANCE COMPANY, <br>                                  Plaintiff, <br> v. <br><br> WYNDHAM WORLDWIDE OPERATIONS, INC., WYNDHAM WORLDWIDE CORPORATION; WYNDHAM VACATION OWNERSHIP, INC.; and WYNDHAM RESORT DEVELOPMENT CORPORATION, <br>                                  Defendants. | Hon. Garrett E. Brown, Jr. <br><br> Civil Action No. 09-1724 <br><br> **MEMORANDUM OPINION** |

**BROWN, Chief Judge**

This matter comes before the Court for a determination of reasonable attorneys' fees and costs. By Order of March 21, 2011, this Court granted Wyndham Worldwide Operations, Inc.'s ("Wyndham") motion for attorneys' fees pursuant to New Jersey Rule 4:42-9(a)(6), and the Court ordered supplemental documentation regarding reasonable hourly rates. Wyndham and Plaintiff Illinois National Insurance Co. ("Illinois National") timely responded to the Court's order. Wyndham submits that defense counsel from the firm Coughlin Duffy billed $117,613.88 in fees and costs for 637.90 hours performed, and that defense counsel from the firm Lowenstein Sandler PC billed another $608,078.31 in fees and costs for 1,956.70 hours performed. Of these fees and costs, Wyndham seeks reimbursement for $725,151.69. (Lictenstein Decl. ¶¶ 47–48, 66.) Illinois National objects to the reasonableness of the rates charged by the Lowenstein

1

Sandler attorneys,[1] and makes specific objections to the reasonableness of the hours billed by defense counsel.

The Court reviews Wyndham's fees request within the framework of the "lodestar" method, by which the Court assesses reasonable fees by multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate. *See, e.g.*, *Washington v. Phila. County Court of Common Pleas*, 89 F.3d 1031, 1035 (3d Cir. 1996). "[F]ee requests [must] be subjected to a thorough and searching analysis" to ensure that time expended by counsel was reasonable and not duplicative or excessive. *Evans v. Port Auth. of N.Y. & N.J.*, 273 F.3d 346, 362 (3d Cir. 2001). The court may not base its fees determination on a "generalized sense of what is usual and proper but 'must rely upon the record.'" *Id.* at 361 (quoting *Smith v. City of Phila. Housing Auth.*, 107 F.3d 223, 225 (3d Cir. 1997)). The party seeking attorneys' fees bears the burden to prove the reasonableness of the fee request. *Rode v. Dellarsciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990).

### *Reasonableness of Hourly Rates*

"The general rule is that a reasonable hourly rate is calculated according to the prevailing market rates in the community." *Washington*, 89 F.3d at 1035 (3d Cir. 1996) (citing *Blum v. Stenson*, 465 U.S. 886, 895–96 & n.11 (1984)). Defendants, as the parties seeking attorneys' fees, "bear[] the burden of producing sufficient evidence of what constitutes a reasonable market rate for the essential character and complexity of the legal services rendered in order to make out a prima facie case." *Smith*, 107 F.3d at 225. "The fee applicant's burden may be satisfied by the

---

[1] Illinois National has not objected to the rates charged by the Coughlin Duffy attorneys.

submission of affidavits of non-party attorneys with personal knowledge of the hourly rates customarily charged in the relevant community." *Apple Corps Ltd. v. Int'l Collectors Soc'y*, 25 F. Supp. 2d 480, 492 (D.N.J. 1998) (citing *Washington*, 89 F.3d at 1036). Once this burden has been met, "[t]he burden then shifts to the party opposing the fee application to produce affidavits or other submissions which create an issue as to the reasonableness of the requested hourly rate." *Apple Corps*, 25 F. Supp. at 492 (citing *Washington*, 89 F.3d at 1036). In the absence of contrary evidence, the fee applicant's requested rate will be applied. *Smith*, 107 F.3d at 225 (citations omitted).

      Wyndham's supplemental submissions included the declarations of New Jersey attorneys Kevin J. Bruno, Jeffrey M. Pollock, and Steven J. Pudell, who have experience representing policyholders in complex insurance coverage disputes. Each of these attorneys has reviewed the rates charged by the Lowenstein attorneys and determined them to be reasonable according to the prevailing market rates in the New Jersey legal community for attorneys of similar experience and skill. The Court is satisfied from these declarations that Wyndham has satisfied the burden of establishing a prima facie case for the hourly rates portion of its fees request. Illinois National does not present any additional evidence to contest these rates, but contends that it was unreasonable for Wyndham to replace Coughlin Duffy with Lowenstein, whose attorneys charged approximately twice the hourly rate of the Coughlin Duffy attorneys. In response to Illinois National's argument, Wyndham submits the declaration of Marcus Banks, the Group Vice President for Wyndham's legal department, who states that Wyndham decided to substitute Lowenstein for Coughlin Duffy because of Lowenstein's relative expertise in litigating against insurers to obtain coverage. (Banks Decl. ¶¶ 5–6 (explaining that Coughlin Duffy "primarily

3

focused on representing insurance carriers who deny coverage to their insureds").) Wyndham also submits the declaration of Sherilyn Pastor, a partner at the firm McCarter & English, who states from her experience with insurance disputes that the difference in rates charged by Coughlin Duffy and Lowenstein can be explained by the different business models of insurance defense law firms (Coughlin Duffy) and law firms who represent the interests of corporate policyholders (Lowenstein). (Pastor Decl. ¶¶ 9–10.) Ms. Pastor also represents that McCarter & English's insurance practice group (and she in particular) charges higher hourly rates (up to $640) than Lowenstein Sandler's highest rate billed in this case. (*See id.* ¶ 6.)

   This Court finds nothing inherently unreasonable about Wyndham's decision to select different legal counsel that specialized in seeking insurance coverage on behalf of insureds. The fact of the matter is that the Lowenstein attorneys provided the legal strategy that prevailed before this Court. The Court further notes that Illinois National has not submitted any evidence that indicates that the rates charged by Lowenstein were unreasonably high for a law firm specializing in complex insurance litigation in the New Jersey legal community. The hourly rates charged by Lowenstein partners ranged from $450–$540, associates ranged from $210–$360, and paralegal and litigation support staff ranged from $135–$162. According to counsel, these rates reflect discounts ranging from 7.62%–9.6% less than their normal billing rates. (Porrino Decl. ¶ 4.) The Court has reviewed the credentials of these individuals and finds the rates billed to be reasonably commensurate to their training and experience. As noted above, the senior partners in the insurance practice group at McCarter & English, a competitor firm, charge higher rates than those billed by Lowenstein Sandler in this case. (*See* Pastor Decl. ¶ 6.) Courts in this District have found similar rates to be reasonable. *See, e.g.*, *Titan Stone, Tile & Masonry, Inc. v. Hunt*

*Constr. Group, Inc.*, Civ. No. 05-3362, 2008 WL 687263, at *7 (D.N.J. Mar. 10, 2008) (finding reasonable partner rates ranging from $425–$510, associate rates ranging from $280–$370, and paralegal rates ranging from $90–$220). In light of Wyndham's evidence, and in the absence of contrary evidence from Illinois National, this Court concludes that the hourly rates charged by the Lowenstein attorneys are reasonable.

### *Reasonableness of Hours Billed*

Having determined the reasonableness of the attorneys' rates, this Court must now determine whether the number of hours billed by defense counsel are reasonable. The party requesting fees bears the burden to provide evidence supporting the time claimed. *See, e.g.*, *Public Interest Research Group of N.J., Inc. v. Windall*, 51 F.3d 1179, 1188 (3d Cir.1995); *Apple Corps*, 25 F. Supp. 2d at 485. "Hours are not reasonably expended if they are excessive, redundant, or otherwise unnecessary." *Rode*, 892 F.2d at 1183.

Illinois National submits the following objections to the hours billed by Wyndham's counsel: (1) Lowenstein's use of block billing; (2) time relating to counsel's representation of third-parties in responding to Illinois National's subpoenas; (3) time relating to Wyndham's contingent claim against Jet Aviation; (4) time relating to counsel's communications with defense counsel in underlying claims; (5) time relating to interviews of two witnesses; (6) time relating to preparation and performance of two depositions; (7) excessive time relating to Wyndham's motions for summary judgment and dismissal; (8) time relating to discovery motions; (9) time relating to Wyndham's internal document handling; (10) time relating to Wyndham's review of documents for production; (11) time billed by Lowenstein that was duplicative of work performed by Coughlin Duffy; (12) time relating to communications with

Berkley and/or Kern Wooley LLP; (13) costs for which Wyndham failed to provide receipts; and (14) redacted billing entries that are vague and/or missing descriptions. The Court considers each objection in turn.

   *1. Block Billing*

Illinois National initially objects that the Lowenstein attorneys utilized a "block-billing" methodology, rather than a task-based time-tracking system. Considering that this fees award compensates all aspects of this litigation, and not just a narrow subset of legal services performed as is the case with some sanctions-based fee awards, this Court sees nothing fundamentally wrong with Lowenstein's use of block-billing in this case. On the whole, this Court is satisfied that Lowenstein's billing records are sufficiently detailed to enable meaningful review of the fees request. *See Rode*, 892 F.2d at 1190 ("A fee petition is required to be specific enough to allow the district court 'to determine if the hours claimed are unreasonable for the work performed.'") (quoting *Pawlak v. Greenawalt*, 713 F.2d 972, 979 (3d Cir. 1983)). Where a particular block entry prevents meaningful review of that line item, the Court will reduce that entry accordingly. *See, e.g.*, *United States v. NCH Corp.*, Civil Nos. 98-5268, 05-881, 2010 WL 3703756, at *4 (D.N.J. Sept. 10, 2010) ("While a substantial number of vague entries may be a reason to exclude hours, it is not a reason to exclude the entire entry. This Court believes the more appropriate approach would be to look at the entire block, comparing the listed activities and the time spent, and determining whether the hours reasonably correlate to all of the activities performed.").

The Court notes that Wyndham generally contests Illinois National's estimates of the allocation of services among block entries. However, Wyndham does not provide specific billing information for discrete tasks to rebut Illinois National's estimates. Because Wyndham bears the

burden of establishing the reasonableness of its fees request, this oversight will redound to Wyndham's detriment. *See, e.g.*, *Estate of Schultz v. Potter*, Civ. No. 05-1169, 2010 WL 883710, at *5 n.9 (W.D. Pa. Mar. 5, 2010) (recognizing that "[a] [party] block bills at his own peril"). To the extent that Illinois National's estimates appear reasonable, the Court will rely on them in addressing Illinois National's objections.

    2. *Time Spent Representing Third-Parties*

Illinois National next challenges a series of entries totaling 42.3 hours of work and $9,556.90 in fees on the grounds that defense counsel performed these services, related to Illinois National's subpoenas, on behalf of third parties. (*See* Mandel Decl. ¶¶ 6–7 & Ex. B.)  Wyndham does not respond to this objection.  The Court has reviewed the challenged time entries and agrees that they appear to include time billed for services relating to subpoenas directed at third parties, and not defense counsel's representation of Wyndham in the instant litigation.  Illinois National does not challenge each of these entries in their entirety, but only the portion which it claims reasonably approximates the time spent by defense counsel on these unrelated tasks.  The Court finds that Illinois National's estimates are reasonable reductions for those entries that Illinois National does not oppose in their entirety, and the Court agrees with Illinois National on the entries that should be disallowed in their entirety.  Consequently, the Court will sustain this objection and exclude these fees from the fees award.

    3. *Time Related to Contingent Claim Against Jet Aviation*

Next, Illinois National opposes 12.2 hours and $3,004 in fees billed for services relating to Wyndham's anticipated claims against Jet Aviation, in the event of an adverse ruling in this litigation. (*See* Mandel Decl. ¶¶ 8–9 & Ex. C.)  Wyndham does not oppose this objection.  The

7

Court has reviewed the challenged entries involving services related to Wyndham's anticipated claims against Jet Aviation, and the Court agrees that Wyndham has not shown these services to be reasonably related to the defense in this litigation. Accordingly, the Court will sustain this objection and exclude these fees from the fees award.

      *4. Communications with Underlying Counsel*

Illinois National also objects to 5.8 hours and $1,355 in fees billed for services relating to defense counsel's communications with Wyndham's defense counsel for the underlying actions arising from the plane crash, Dombroff Gilmore Jacques & French. (*See* Mandel Decl. ¶¶ 10–11 & Ex. D.) Wyndham does not oppose this objection. The Court has reviewed the challenged entries, and the Court agrees that Wyndham has not shown these services to be reasonably related to the defense in this litigation. Therefore, the Court will sustain this objection and exclude these fees from the fees award.

      *5. Witness Interviews*

Illinois National's next objection concerns 26.5 hours and $10,062.50 in fees billed for services relating to the interviews of two witnesses. Specifically, Illinois National points out that more than 15 of these 26 hours were spent by two Lowenstein partners to interview just one witness. (Pl.'s Resp. Br. at 18.) Plaintiff also notes that defense counsel did not rely on these witnesses to support any of the motions filed in this case. Wyndham does not respond to this objection.

The Court disagrees that the fees should be disallowed simply because defense counsel did not use these witnesses to support their dispositive motions. However, the Court agrees that the time billed by defense counsel was duplicative and excessive. The Court has reviewed the

challenged entries, and Illinois National's proposed reductions, and the Court will reduce the hours billed by the two Lowenstein partners by half, resulting in a reduction in fees of $3,590.50. As reduced, the time expended by these attorneys is commensurate with the fees billed by co-counsel for these services. The Court will allow the remainder of the fees billed in this regard. Accordingly, the Court will sustain in part this objection and reduce the fees awarded to Wyndham by $3,590.50.

     *6. Deposition Entries*

Illinois National next objects to 107.8 hours and $37,274 in fees billed for the preparation for and depositions of witnesses Alan Winters and Zoe Holmes, which took place on May 27 and 28, 2010 in Dallas, Texas. (*See* Mandel Decl. ¶ 13 & Ex. F.) Illinois National generally objects to the amount of time billed by defense counsel relating to these two depositions, noting that Mr. Lichtenstein, who conducted the depositions, billed more than 65 hours to prepare for a combined 9.5 hours of deposition time, including an entry for 10 hours the day after the depositions ended that merely indicates he was "[i]n Dallas, Texas for depositions of Winters and Holmes." (*See* Pl.'s Resp. Br. at 18.) Wyndham does not respond to these objections. As with other objections, Illinois National proposes specific reductions for each entry related to the portion of the entry Illinois National estimates was devoted to the challenged service.

The Court has reviewed the entries relating to the relevant depositions, and the Court agrees that the amount of time billed was excessive. Based on Illinois National's estimates from Wyndham's block entries, it appears that five defense attorneys billed a combined 107 hours (*see* Mandel Decl. Ex. F) for these two depositions that took approximately 9.5 hours to complete, greater than a 10:1 ratio. Mr. Lichtenstein alone billed more than 65 hours for these depositions.

9

Courts have recognized that such ratios of preparation time to performance time by experienced counsel are excessive. *See, e.g.*, *Apple Corps*, 25 F. Supp. 2d at 491 (reducing fee request where senior partner billed preparation time nearly three times the amount of time required for the four-day hearing). The Court will disallow the 10 hours billed by Mr. Lichtenstein for unspecified services performed on May 29, 2010. The Court will award one-third of the remaining challenged time entries, as identified by Exhibit F of the Mandel Declaration. This adjustment results in a net reduction to the fees award of $26,380, and reduces the amount of hours billed for these depositions from approximately 107 hours to approximately 32 hours, a ratio of 3:1. Accordingly, the Court hereby sustains in part this objection and reduces the fees awarded by $26,380.

      7. *Wyndham's Motions for Summary Judgment & Dismissal*

Illinois National next objects to 217.8 hours and $70,967.49 in fees billed for services related to Wyndham's motion for summary judgment and a prior March 2, 2010 motion before Magistrate Judge Madeline Cox Arleo that sought leave to file dispositive motions and a stay of discovery. (*See* Mandel Decl. ¶ 14 & Ex. G.) Illinois National objects that the more than 160 hours billed on the summary judgment briefs are unreasonable, considering that Wyndham's preliminary motion before Magistrate Judge Arleo covered much of the same ground and only required 49.5 hours of work. Illinois National also objects to the allocation of work on these assignments among defense counsel, noting that one of Lowenstein's senior partners, Robert Chesler, billed more than 40 hours for legal research and drafting the motion briefs. Notably, it appears that Mr. Chesler did not bill any hours related to the March 2, 2010 preliminary motion before Magistrate Judge Arleo, which Illinois National describes as a precursor to the summary

10

judgment brief. Wyndham responds that the time billed for these tasks reflects the complexity of Illinois National's lengthy opposition brief, which included more than 70 case citations and a number of exhibits.

The Court has considered the challenged time entries and compared the summary judgment brief to the March 2, 2010 brief submitted to Magistrate Judge Arleo. The Court has also considered the relative complexity of the issues addressed in the briefs, including the complexity of the arguments raised in opposition to the summary judgment brief. The Court agrees that the two briefs are substantively similar, and that the amount of time billed on the summary judgment brief was excessive. *See, e.g.*, *Microsoft Corp. v. United Computer Res. of N.J.*, 216 F. Supp. 2d 383, 395 (D.N.J. 2002) (rejecting portion of fees request relating to the drafting of supplemental pleadings where the information presented in those documents had been previously submitted in other documents). The Court further agrees that the legal research and drafting hours billed by Mr. Chesler were excessive for an attorney of his experience. *See, e.g.*, *Microsoft*, 216 F. Supp. 2d at 392 (stating that the party opposing the fees request "should not be asked to pay for [opposing counsel's] decision to assign the routine tasks of research and drafting to partners of the firm"); *Apple Corps*, 25 F. Supp. at 490 (emphasizing that "routine work . . . should be directed to low level attorneys") (citation omitted). Accordingly, the Court will sustain in part Illinois National's objection to the fees billed for services related to Wyndham's dispositive motions, and the Court will reduce the fees award as follows: (i) the Court will reduce the time billed by defense counsel for these services by half; and (ii) the Court will permit Mr. Chesler to recover 10 total hours (at blended rate of $541.53) related to the summary judgment and reply briefs. These adjustments will reduce the total fees awarded by $40,385.40.

*8. Discovery Motion Practice*

Next, Illinois National challenges 451.6 hours and $131,743.20 in fees for services relating to discovery disputes and motion practice. (Mandel Decl. ¶ 15 & Ex. H.)  Illinois National contends that defense counsel from both Coughlin Duffy and Lowenstein engaged in a pattern of delay and obstruction that necessitated the filing of unnecessary discovery motions before Magistrate Judge Arleo.  Wyndham responds that many of the discovery disputes resulted from Illinois National's overreaching discovery demands and continuing requests for privileged materials.  Wyndham maintains that it sought a stay of discovery during the pendency of the dispositive motions in an attempt to prevent unnecessary costs.

After carefully reviewing the challenged entries and Illinois National's arguments regarding the discovery the disputes, the Court disagrees with Illinois National's broad attack on defense counsel's discovery practice.  While Illinois National may have prevailed on some of the discovery disputes, the Court is aware of no ruling by Magistrate Judge Arleo that defense counsel were engaging in frivolous discovery disputes or otherwise abusing the discovery process.  The Court further notes that Illinois National opposed Wyndham's request for a stay of discovery while the dispositive motions were pending.  (*See* Doc. No. 50.)  Ultimately, Illinois National has not shown that Wyndham abused the discovery process, or that these expenditures are categorically unreasonable.

As for Illinois National's objections to specific entries, this Court agrees that the more than 23 hours billed to have two attorneys attend an hour-long hearing before Magistrate Judge Arleo on April 14, 2010, are excessive.  The Court will reduce Mr. Lichtenstein's billings from 4/12–14/2010 to 4 hours of preparation and 1 hour for the hearing, and the Court will reduce Mr.

Jesse's billings from 4/14–15/2010 to 2 hours for drafting the summary of the hearing. Accordingly, the Court will reduce the overall fees award by $5,512.50, and the Court will overrule the remainder of this objection.

*9. Wyndham's Internal Document Handling*

Illinois National further objects to 380.6 hours and $61,851.50 in fees billed for services relating to internal document management. (*See* Mandel Decl. ¶¶16–17 & Ex. I.) According to the billing records, these services related to the transferring of files from Coughlin Duffy to Lowenstein, updating and converting file documents to electronic formatting, retrieving files, and other unspecified case management issues. Illinois National contends that it should not be required to reimburse the costs associated with Wyndham's decision to substitute counsel midstream, and further argues that the paraprofessional tasks (file organization, conversion, and retrieval) should be considered administrative overhead expenses and not be reimbursed. Wyndham does not respond to this objection.

The Court has reviewed these entries, and agrees that Illinois National should not be required to reimburse the costs incurred by the substitution of counsel. Although the Court permitted the increased rates associated with the change in counsel, because the record supported the conclusion that these rates were reasonable, the Court does not believe that the increased costs occasioned by the change of counsel in this case are reasonable. Therefore, the Court will disallow costs related to the transition of files. It is not precisely clear from the billing records and the entries identified by Illinois National when the transition period concluded, but it appears that most of the transition work had occurred by February 15, 2010, and the remainder of the entries appear to be document, file, and database management routinely performed by paralegals

13

and computer support staff. The Court disagrees that these expenses are inherently unreasonable overhead costs. However, the Court notes that a number of the entries billed by Lowenstein paralegal Elizabeth Esposito provide only the vague description "[a]ttend to case management issues." (*See* Lowenstein Billing Entries of 4/2, 4/7, 4/20, 4/23, 8/11, 8/16, and 8/27/2010.) These vague entries do not permit the Court to ascertain whether these services were reasonably expended in the furtherance of this litigation.

The Court will sustain this objection in part and overrule it in part as follows: (i) the Court will disallow the 16.9 hours and $2,897 in fees billed by Coughlin Duffy attorneys related to the transition of files; (ii) the Court will disallow fees identified by Illinois National that Lowenstein attorneys and paraprofessionals billed during this transition period prior to February 15, 2010, resulting in a net reduction to the fees awarded of $19,392.90; and (iii) the Court will disallow the fees for Ms. Esposito's vague entries in April and August 2010, resulting in a net reduction to the fees awarded of $1,584.

*10. Wyndham's Production Document Review*

Illinois National also challenges 104.9 hours and $23,001.80 in corresponding fees for services related to defense counsel's review of Wyndham's documents for production. (*See* Mandel Decl. ¶ 18 & Ex. J.) Illinois National argues that this amount of time is excessive in light of the fact that Wyndham "produced only 1,344 pages of documents in response to Illinois National's discovery request," consisting primarily of the contract between Wyndham's predecessor and Jet Aviation, the 2006–2008 insurance policies, and the complaints in the underlying litigation. Wyndham does not respond to this objection.

The Court has reviewed the challenged entries, and the Court agrees that the time billed in this regard is excessive. The Court will sustain this objection in part and reduce the challenged fees by half, resulting in a net reduction of $11,500.90

*11. Duplicative Work*

Next, Illinois National contests 194.9 hours and $60,413.70 in related fees for duplicated work they contend was performed by both Coughlin Duffy and Lowenstein attorneys. Specifically, Illinois National objects to work billed by both firms with regard to reviewing documents produced by Illinois National and preparing responses to Illinois National's First Set of Requests for Admissions. Wyndham does not respond to this objection.

The Court has carefully reviewed these contested entries, and the Court agrees that they are duplicative and excessive. The Court notes that, based on Illinois National's estimates, Coughlin Duffy's attorneys spent approximately 53 hours on these tasks, and Lowenstein attorneys spent approximately 142 hours on the same. The Court finds Illinois National's estimates of the time spent on these tasks to be reasonable. The Court recognizes that the breadth of Illinois National's Requests for Admissions was a point of dispute before Magistrate Judge Arleo. (*See* Tr. of Apr. 14, 2010 hr'g (Doc. No. 63) at 53–56.) Defense counsel represented at that hearing that Wyndham would respond to the requests for admissions if Illinois National reduced them from 122 to a reasonable amount; Magistrate Judge Arleo ordered defense counsel to make specific objections to individual requests. (*See id.*) The Court will allow the fees billed by Coughlin Duffy, as these do not appear to be unreasonable. Although the Court cannot ascertain the exact degree of the work duplicated by Lowenstein, counsel's representations before Magistrate Judge Arleo indicated that defense counsel had not responded to the requests for

15

admissions prior to the April 14 hearing. Thus, the Court will subtract the fees billed by Lowenstein personnel for the work on these matters prior to the April 14, 2010 hearing. Accordingly, the Court will sustain this objection in part and reduce the fees award by $35,988.90. The Court notes that, applying Illinois National's estimates, this reduction will reimburse the Lowenstein attorneys for approximately 53 hours, which is similar to the amount billed by Coughlin Duffy for the same work.

   12. *Communications with Berkley, Kern & Wooley LLP*

Illinois National also objects to 41.9 hours and $11,080.50 in fees billed for correspondence with third party Berkley Aviation and its counsel, Kern and Wooley LLP. (*See* Mandel Decl. ¶ 22 & Ex. M.) The Court understands that Berkley Aviation managed Wyndham's non-owned aircraft insurance policy issued by StarNet Insurance Company, and that Berkley has paid for Wyndham's legal costs in the aftermath of the plane crash that precipitated the instant litigation. As with other categories of objections, Illinois National proposes reductions based on the estimated portion of multi-task blocks it believes defense counsel devoted to the objectionable task. Wyndham does not respond to these objections. The Court has reviewed the challenged entries and agrees that Wyndham has not shown how these services furthered their representation of Wyndham. The Court further finds Illinois National's proffered reductions reasonable, in light of the descriptions provided by defense counsel's billing records. Thus, the Court will sustain this objection and reduce the fees award by $11,080.50.

   13. *Costs & Receipts*

Illinois National next challenges the more than $40,000 in costs identified by Coughlin Duffy and Lowenstein, on account that defense counsel failed to justify these costs with receipts.

Defense counsel have since filed a supplemental certification with copies of the receipts.  Courts in this Circuit will allow the following types of expenses "when it is the custom of attorneys in the local community to bill their clients separately for them": (a) computerized legal research expenses; (b) photocopying expenses; (c) the attorney's telephone expenses; (d) travel time and expenses; and (e) postage or courier expenses.  *See, e.g.*, *Apple Corps*, 25 F. Supp. 2d at 497 (citing *Abrams v. Lightolier, Inc.*, 50 F.3d 1204, 1225 (3d Cir.1995)).  Such costs will only be reimbursed if they "are incurred in order for the attorney to be able to render his or her legal services."  *See Abrams*, 50 F.3d at 1225l; *Apple Corps*, 25 F. Supp. 2d at 497.  From defense counsel's billing records, it appears that Coughlin Duffy seeks $4,397.38 in expenses, and Lowenstein seeks $38,580.81 in expenses.  The Court has reviewed defense counsel's receipts, and the Court approves most of defense counsel's expenses as reasonable.

With regard to Coughlin Duffy's costs, defense counsel concedes that the receipts only support $4,107.74 of the expenses they seek.  (*See* Porrino Decl. Ex. D at 1.)  The expenses consist of costs for photocopies, legal research, courier services, and teleconference services.  On the whole, these services are of the type typically billed by attorneys and permitted by courts.  However, the Court notes that the $862.46 in outside copying expenses, based on the date of the bill (January 26, 2010) and the nature of the copying project, appears to relate to the transition of files between Coughlin Duffy and Lowenstein, when Lowenstein was substituted as counsel.  This Court has rejected additional fees incurred by the substitution of counsel, and the Court will disallow these related costs as well.  Further, the Court notes that the receipts for legal research costs total $1,592.38, $8.96 less than the $1,601.34 stated by defense counsel.  The Court will

17

adjust these costs accordingly. With the aforementioned adjustments, the Court will award Coughlin Duffy $3,236.32 in costs, a reduction of $1,161.06 from the original amount sought.

As for Lowenstein's expenses, defense counsel asserts that the amount requested is less than the amount shown on their receipts, $46,441.72. (Porrino Decl. Ex. C at 1.) Of note, Lowenstein applied a discounted rate to the legal research bills, and seeks only $29,438.26 of the more than $40,000 stated in the receipts. Lowenstein also indicates that $1,358.40 in travel expenses should be subtracted, because these costs were refunded. These costs do not appear to be included in the travel receipts. The expenses sought primarily consist of photocopies, postage fees, legal research, courier services, pacer fees, telephone bills, transcription services, and travel expenses. While these costs are generally reimbursable, the receipts do not match all of the costs sought, and it appears that costs for meals and other improper expenses were included in travel costs. The Court will award costs based on the reasonable expenses supported by the record. From the receipts, it appears that meals and in-room movie costs totaling $375.03 were included in the travel bills. These costs are not reasonably related to an attorneys' legal services, and will be excluded. *See, e.g.*, *Apple Corps*, 25 F. Supp. 2d at 490 & n.19. After deducting these expenses, the receipts provided to the Court show Lowenstein's travel costs to be $1,431.65, or $404.03 less than the amount Lowenstein claims is supported by the receipts. The Court's review of the photocopy service receipts reveals that defense counsel incurred $898.54 in such expenses, which is less than the $996.93 asserted by defense counsel. Consistent with this Court's rulings as to other expenses incurred prior to February 15, 2010, during the transition period between Coughlin Duffy and Lowenstein, the Court will disallow $471.90 of these expenses for a project that was ordered on February 11, 2010. The total amount awarded for

18

these photocopy services will be $426.64.  The Court will allow the $221.20 in pacer fees, $207 in courier services, $39.61 in telephone bills, $189.45 for postage, and $2,225.90 in transcription charges stated in defense counsel's declaration, because the receipts the Court has reviewed either match or exceed these amounts.  However, the receipts for taxi rides to airports indicates that defense counsel incurred $205.48 for local travel costs, rather than the $489.48 represented by counsel, so the Court will reduce this sum accordingly.  With regard to the legal research costs, the Court is satisfied that the discounted expenses billed for legal research are reasonable, and the Court will allow the $29,438.26 in costs sought by defense counsel for these expenses.  After these adjustments, the Court will award Lowenstein $35,073.22 in costs, a reduction of $3,507.59 from the original amount sought.

      14.  *Redacted, Vague, & Missing Entries*

Finally, Illinois National objects to 620.5 hours of work, corresponding to $161,974.20 in fees, that have heavily redacted and/or vague descriptive entries that make it impossible for Illinois National to make proper objections.  Illinois National also objects to 10.6 hours, and the accompanying $1,916 in fees, that appear to lack descriptive entries altogether.  Illinois National contends that these fees should either be disallowed, or alternatively that it should have the opportunity to review the unredacted copies and make objections to unreasonable fees.  In response, Wyndham has provided the Court with unredacted copies of defense counsel's billing records.  The Court has reviewed the numerous challenged entries in the original, redacted billing records.  While some of Illinois National's challenges overreach, demanding a degree of specificity not required for billing entries, the Court agrees that the redactions inhibited Illinois National's ability to make reasonable objections to the fees requested.  The Court will order

defense counsel to provide Illinois National with unredacted copies of their billing records, and the Court will give Illinois National 15 days to make specific objections as to these entries. Defense counsel will have 10 days to respond to any additional objections filed by Illinois National. For purposes of these supplemental submissions, the parties shall limit their arguments to the entries identified by Illinois National as heavily redacted, vague, or missing descriptive entries; the parties are directed not to reargue specific objections decided above. The Court will rule on any supplemental objections and include any modifications in a final fees order.

### *Conclusion*

For the aforementioned reasons, the Court will reduce Wyndham's fees application by $176,897.15. The Court will order defense counsel to provide unredacted billing records to Illinois National upon receipt of this order. Illinois National will have until 15 days after receipt of the records to make specific objections to the entries they have identified as having vague, heavily redacted, or missing descriptions. Defense counsel will have until 10 days after receipt to respond to any supplemental objections filed by Illinois National. The Court will rule on any additional objections and incorporate those revisions into a final fees award. An appropriate form of order accompanies this Memorandum Opinion.

Dated: June 7, 2011

                                           /s/ Garrett E. Brown, Jr.
                                       GARRETT E. BROWN, JR. U.S.D.J.