

**Michael David Lichtenstein**
Member of the Firm
Tel  973 597 2408
Fax  973 597 2409
mlichtenstein@lowenstein.com

August 24, 2011

VIA ECF & FEDEX

Hon. Madeline Cox Arleo, U.S.M.J.
United States District Court
District of New Jersey
M.L. King, Jr. Building & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07101

**Re:    Illinois National Insurance Co. v. Wyndham Worldwide Operations, Inc., et al.
        Docket No. 09-1724**

Dear Judge Arleo:

This firm represents the Wyndham defendants ("Wyndham") in the referenced action. As Your Honor may know, the Court of Appeals has remanded this case to the District Court. We write to request a scheduling conference with the Court and to advise the Court how we envision discovery proceeding.

**BACKGROUND.**  Plaintiff Illinois National Insurance Co. ("Illinois National") commenced this lawsuit in April 2009 against Wyndham seeking a declaratory judgment that Wyndham is not entitled to insurance coverage for an airplane accident that occurred on August 4, 2008 in Gearhart, Oregon, as well as reformation of the 2008 Policy. The basis for Illinois National's claims is that it purportedly made a "mistake" prior to issuing the 2008 Policy, with the effect of providing coverage to Wyndham. Specifically, prior policies provided insurance coverage for non-owned aircraft operated by or used at the direction of "Jet Aviation," an aircraft maintenance company used by Wyndham. However, Illinois National replaced "Jet Aviation" with the defined term "Named Insured" in the 2008 Policy, the policy at issue here. Wyndham, along with Jet Aviation, is identified as a "Named Insured" in the policy.

Wyndham moved for summary judgment on the grounds that no mutual mistake existed between Wyndham, as a Named Insured, and Illinois National, among other arguments. The parties fully briefed the summary judgment motion and on August 23, 2010, Judge Brown granted summary judgment in Wyndham's favor.

Prior to summary judgment, Illinois National served discovery requests aimed at ascertaining Wyndham's intent and understanding under the 2008 Policy and prior policies. Specifically, Illinois National sought post-accident communications between and among Wyndham, its

Hon. Madeline Cox Arleo, U.S.M.J.                                    August 24, 2011
Page 2

insurer Berkley Aviation, Inc. (who provided coverage and defense for litigation arising from the accident), Robert Kern, Esq. (an attorney for Berkley), and Aon (Wyndham's insurance broker).[1] This privilege dispute resulted in extensive briefing to Your Honor.  In addition, Wyndham also served discovery requests on Illinois National aimed at learning what corrective action, if any, Illinois National took to remedy its purported "mistake" as well as the procedures Illinois National employs to issue insurance policies generally and what procedures were employed for the 2008 Policy. Shortly before summary judgment was granted, Illinois National responded to Wyndham's discovery requests.  The responses are, in Wyndham's view, deficient.  As a result of the Court's summary judgment grant, the briefing before Your Honor and Illinois National's deficient discovery responses were rendered moot.

Illinois National appealed the Court's decision.  After extensive briefing and oral argument, the Court of Appeals reversed, and remanded the case to the District Court.  The decision is enclosed for the Court's convenience.  The Court of Appeals stated that on remand the District Court "should evaluate Illinois National's and Jet Aviation's intent as well as Wyndham's argument that reformation may be inequitable due to negligence and because the remedy is sought after an accident." Illinois National v. Wyndham, No. 10-3833, Slip op. at 17 (3d Cir. Aug. 3, 2011).

**DISCOVERY IN THE DISTRICT COURT**.  Although Wyndham respectfully disagrees with the Court of Appeals' reversal of the summary judgment grant, Wyndham is eager and ready to re-commence discovery in the District Court.  Therefore, we respectfully request that the Court schedule a status conference to address open issues and enter a new discovery schedule.

As discussed, the discovery dispute briefing before Your Honor involved Illinois National's attempts to obtain privileged documents pertinent to Wyndham's intent.  However, based on the Court of Appeals' direction that the District Court focus on "Illinois National's and Jet Aviation's intent," Wyndham's intent is not relevant to Illinois National's claims.  Therefore, Wyndham submits that the discovery disputes before Your Honor are largely moot.  We trust Illinois National will agree.

Wyndham will undertake to evaluate the deficiencies in Illinois National's discovery responses, which it served shortly before the summary judgment grant, that relate to the remaining issues in this case.  Of course, Wyndham will "meet and confer" with counsel for Illinois National before undertaking any motion to compel.

Accordingly, Wyndham respectfully requests that the Court convene a status conference in order to fix new deadlines so that discovery may be completed as expeditiously (and reasonably) as possible.

---

[1] After entry of summary judgment in Wyndham's favor, counsel for Illinois National continued to seek documents it subpoenaed from Wyndham's defense counsel in the underlying actions.

**Lowenstein
Sandler**
ATTORNEYS AT LAW

Hon. Madeline Cox Arleo, U.S.M.J.                                      August 24, 2011
Page 3


We thank Your Honor for your attention to this matter.

Respectfully submitted,

*Michael David Lichtenstein /EJ*

Michael David Lichtenstein


23943/2
08/24/11 18210144.3

Enclosures
cc:      Honorable Garrett E. Brown, U.S.D.J. (via FedEx and ECF)
         Andrew T. Houghton, Esq. (via ECF)
         Aaron F. Mandel, Esq. (via ECF)



PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 10-3833

———

ILLINOIS NATIONAL INSURANCE COMPANY,

Appellant

v.

WYNDHAM WORLDWIDE OPERATIONS, INC.;
WYNDHAM WORLDWIDE CORPORATION;
WYNDHAM VACATION OWNERSHIP, INC.; and
WYNDHAM RESORT DEVELOPMENT CORPORATION

———

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-09-cv-01724)
District Judge:  Honorable Garrett E. Brown, Jr.

———

Argued May 24, 2011
Before:  FUENTES, FISHER
and NYGAARD, *Circuit Judges.*

(Filed: August 03, 2011)

Jeffrey W. Dillon
Andrew T. Houghton (Argued)
Timothy D. Kevane
Aaron F. Mandel
Sedgwick
125 Broad Street, 39th Floor
New York, NY  10004
        *Counsel for Appellant*

Eric Jesse
Michael D. Lichtenstein (Argued)
Lowenstein Sandler
65 Livingston Avenue
Roseland, NJ  07068

Christopher S. Porrino
Lowenstein Sandler
6 Becker Farm Road
Roseland, NJ  07068
        *Counsel for Appellees*

———

## OPINION OF THE COURT

———

FISHER, *Circuit Judge*.

Appellant Illinois National Insurance Company ("Illinois National") and Appellees Wyndham Worldwide Operations, Inc., Wyndham Worldwide Corporation,

2

Wyndham Vacation Ownership Inc., and Wyndham Resort Development Corporation (collectively "Wyndham") are in a contract dispute over insurance coverage. In resolving this dispute, we must decide whether the doctrine of mutual mistake allows reformation of a contract against a party that did not participate in the negotiations.

Illinois National filed suit seeking a declaratory judgment that a 2008 plane crash did not trigger coverage under an aircraft fleet insurance policy that it issued to Jet Aviation Business Jets, Inc. ("Jet Aviation"). Wyndham filed a counterclaim seeking coverage and filed motions for summary judgment and to dismiss Illinois National's complaint. The United States District Court for the District of New Jersey granted Wyndham's motion to dismiss Illinois National's complaint as well as Wyndham's motion for summary judgment on its counterclaim. On appeal, Illinois National argues that the District Court erred both when it determined that mutual mistake can only serve as a basis for reformation in an action against a bargaining party and when it held that Illinois National had insufficiently pled mutual mistake. We agree and hold that New Jersey law allows reformation on the basis of mutual mistake against a party that did not participate in the negotiation of a contract and that Illinois National sufficiently pled mutual mistake.

For the following reasons, we conclude that the District Court's grant to Wyndham of summary judgment was improper, as was its dismissal of Illinois National's complaint. Accordingly, we will reverse the District Court's grant of summary judgment and dismissal and remand for further proceedings consistent with this opinion.

3

I.

A.

Illinois National issues insurance products and services. Jet Aviation offers aircraft maintenance, completions and refurbishment, engineering, and fixed base operations, along with aircraft management, charter services, aircraft sales and personnel services. Wyndham is a recognized service leader in the hospitality industry.

Illinois National provided insurance coverage to Jet Aviation and to some of Jet Aviation's clients, so long as Jet Aviation managed the client's aircraft and aircraft usage. Jet Aviation managed an aircraft owned by Wyndham and provided insurance for that aircraft pursuant to the terms of a series of Aircraft Management Services Agreements.

In 2001, Wyndham's predecessor, Cendant Operations, Inc., and Jet Aviation entered into the first of these Aircraft Management Services Agreements. Among other things, the agreements obligated Jet Aviation to provide domestic flight planning and scheduling, flight crew staffing, and management of scheduled and unscheduled maintenance for Wyndham's aircraft. If Wyndham's aircraft was not available when needed, Jet Aviation could arrange for an aircraft for Wyndham's use from another source. Pursuant to the Aircraft Management Services Agreements, Jet Aviation agreed to procure insurance for Wyndham's aircraft while it was managed by Jet Aviation. The agreement also stated that it would provide Wyndham with insurance coverage when

4

Wyndham used non -owned aircraft at the direction of Jet Aviation.

For successive one-year periods beginning in 2004, and through the 2008 policy year, a series of aircraft fleet management insurance policies were purchased by Jet Aviation and issued by Illinois National.  Each was negotiated by Illinois National and Jet Aviation, directly and through their agents.  The policies contained endorsements that provided coverage for Jet Aviation's clients.  These clients were identified on the endorsements as "Insured

5

Owners" and also as "Named Insured."[1]   The 2004-2007 Policies contain the following Managed Aircraft Endorsement:

_____

[1] The Managed Aircraft Endorsement from 2004-2008 stated:

   1)    Jet Aviation Business Jets, Inc. has entered into an Aircraft Management Agreement with the person(s) or organization(s) described below and referred to as "Insured Owner":

Wyndham Worldwide Operations, Inc., Wyndham Worldwide Corporation & Bank of America, N.A., as Lessor
7 Sylvan Way
Parsippany, NJ 07504

    And/or subsidiary (and/or subsidiary thereof).

   2)    The definition of Named Insured is extended to include the person(s) or organization(s) described in Item 1 of this endorsement.

4)    The insurance afforded by this policy for the interest of the "Insured Owner" described in Item 1. of this endorsement shall not be invalidated by any act or neglect of Jet Aviation Business Jets, Inc. listed in Item 1 of the policy Declarations provided that the "Insured Owner" described in Item 1. of this endorsement did not consent to such act or neglect which would otherwise invalidate the insurance provided by this policy or that the "Insured Owner" described in Item 1. of this endorsement had no knowledge that such act or neglect to which they consented would invalidate the insurance provided by this policy.

    The insurance afforded by this policy for the interest of the Jet Aviation Business Jets, Inc. listed in Item 1 of the policy Declarations shall not be invalidated by any act or neglect of the "Insured Owner" described in Item 1. of this endorsement provided that the Named Insured listed in Item 1. of the policy Declarations did not consent to such act

---

(App. at A471 (2004 Policy, with Cendant listed because Wyndham had not yet been spun off); (*Id.* at A1235 (2008 Policy).).)

7

or neglect which would otherwise invalidate the insurance provided by this policy.

5)   The insurance afforded by this policy for the interest of the "Insured Owner" described in Item 1 of this endorsement or Jet Aviation Business Jets, Inc. (as fully described in Item 1 of the Declarations Page) is extended to other Aircraft insured under this policy but excluding any Non-Owned Aircraft unless such Non-Owned Aircraft is operated by or used at the direction of Jet Aviation Business Jets, Inc. . . .

(App at. A471.)

In the negotiations leading up to the 2008 policy, Jet Aviation proposed new language for the endorsement. The revised endorsement, which was integrated into the 2008 policy, replaced "Jet Aviation" with "Named Insured." It provided:

4)   The insurance afforded by this policy for the interest of the "Insured Owner" described in Item 1. of this endorsement shall not be invalidated by any act or neglect of the Named Insured listed in Item 1 of the policy Declarations provided that the "Insured Owner" described in Item 1. of this endorsement

8

did not consent to such act or neglect which would otherwise invalidate the insurance provided by this policy or that the "Insured Owner" described in Item 1. of this endorsement had no knowledge that such act or neglect to which they consented would invalidate the insurance provided by this policy.

The insurance afforded by this policy for the interest of the Named Insured listed in Item 1 of the policy Declarations shall not be invalidated by any act or neglect of the "Insured Owner" described in Item 1. of this endorsement provided that the Named Insured listed in Item 1. of the policy Declarations did not consent to such act or neglect which would otherwise invalidate the insurance provided by this policy.

5)   The insurance afforded by this policy for the interest of the "Insured Owner" described in Item 1. of this endorsement or Named Insured (as fully described in Item 1 of the Declarations Page) is extended to other Aircraft insured under this policy but excluding any Non-Owned Aircraft unless such Non-Owned Aircraft is operated by or used at the direction of the Named Insured. . . .

9

(Id. at A1235.)

Jet Aviation and Illinois National claim that the drafting change was designed to make it more clear that entities affiliated with Jet Aviation were covered. Both contracting parties have stated that they believed that it did not expand coverage to entities that were unaffiliated with Jet Aviation, such as Wyndham. However, the modification, as written, appears to provide third parties with coverage when using non-owned aircraft without Jet Aviation's involvement.

Despite being drafted to seemingly provide expanded coverage, Wyndham's premium declined from $61,250 for the 2007 policy to $45,367 for the 2008 policy. Wyndham did not know about the change made to the endorsement for 2008 and continued to obtain non-owned aircraft liability coverage through a policy issued by StarNet Insurance Company ("StarNet").[2]

It is undisputed that neither Wyndham nor its brokers was involved in the negotiations or drafting of the revised provisions of the endorsement. It was negotiated between Illinois National and Jet Aviation.

In August 2008, Jason Ketcheson, a Wyndham employee, rented a Cessna 172 from Aviation Adventures to travel to a work-related meeting in Oregon. Jet Aviation had

---

[2] The StarNet policy provided coverage for non-owned aircraft that were not operated by or used at the direction of Jet Aviation. In other words, it explicitly provides coverage for incidents like the 2008 plane crash.

10

no involvement in this transaction. Ketcheson crashed into a house in Gearhart, Oregon, killing five people. As a result, various claimants have sued Wyndham for damages. The crash may have triggered coverage under the language of the 2008 policy.

B.

Illinois National filed suit against Wyndham seeking a declaratory judgment that the 2008 policy did not cover claims arising out of the August 2008 Cessna crash. It argued that the District Court should find that the 2008 policy, as written, did not provide coverage to Wyndham, or alternatively, that if the contract as written would provide coverage, the District Court should exercise its equitable power of reformation because there had been mutual mistake in the drafting of the contract between Illinois National and Jet Aviation. Wyndham filed a counterclaim seeking coverage under the 2008 policy for the August 2008 Cessna crash, filing a motion to dismiss Illinois National's claim and a motion for summary judgment. Both sides filed statements of material facts not in dispute; additionally, Illinois National filed a supplemental statement of disputed material facts and requested more discovery.

The District Court granted both of Wyndham's motions, holding that Wyndham was entitled to coverage under the 2008 policy and that Illinois National was not entitled to reformation based upon the alleged mistake. The District Court held that the 2008 policy was clear on its face and that Wyndham was entitled to coverage as a matter of law. The District Court went on to explain that "because

11

Wyndham did not participate in the negotiation and drafting of the 2008 policy, there can be no mutual mistake." *Illinois Nat'l Ins. Co. v. Wyndham Worldwide Operations, Inc.*, No. 09-1724, 2010 WL 3326709 at \*5 (D.N.J. Aug. 23, 2010). Instead, the District Court analyzed Illinois National's argument in the context of unilateral mistake and determined that reformation was unavailable. *Id.* at \*5-6. Further, the District Court dismissed Illinois National's complaint on the basis that it failed to plead mistake with particularity as required by Federal Rule of Civil Procedure 9(b). *Id.*

Illinois National filed a timely notice of appeal.

## II.

The District Court had jurisdiction under 28 U.S.C. § 1332(a) because the parties' citizenship was completely diverse and the amount in controversy exceeded $75,000. We have jurisdiction under 29 U.S.C. § 1291. We exercise plenary review of the District Court's order. *See McGovern v. Philadelphia*, 554 F.3d 114, 115 (3d Cir. 2009) (plenary review of order granting motion to dismiss); *Spence v. Esab Group, Inc.*, 623 F.3d 212, 216 (3d Cir. 2010) (plenary review of order granting summary judgment motion).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, --- U.S. ----, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted). A party is entitled to summary judgment when it demonstrates that there is no genuine issue of material fact and that the evidence establishes its entitlement

12

to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  In reviewing a motion for summary judgment, "we must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Norfolk S. Ry. Co. v. Basell USA Inc.*, 512 F.3d 86, 91 (3d Cir. 2008) (internal quotation marks omitted).

III.

Illinois National argues that the District Court erred in granting summary judgment to Wyndham on its counter claim by erroneously interpreting New Jersey law and concluding that reformation on the basis of mutual mistake can never be sought against a third-party that was not present when the contract was consummated. *Illinois Nat'l Ins. Co.*, 2010 WL 3326709 at *5.  Illinois National argues that there is no categorical rule preventing a contracting party from seeking reformation for mutual mistake when the party against whom reformation is being sought did not participate in the negotiation of the contract at issue.

When interpreting state law, we follow a state's highest court; if that state's highest court has not provided guidance, we are charged with predicting how that court would resolve the issue. *Canal Ins. Co. v. Underwriters at Lloyd's London*, 435 F.3d 431, 436 (3d Cir. 2006).  To do so, we must take into consideration: (1) what that court has said in related areas; (2) the decisional law of the state intermediate courts; (3) federal cases interpreting state law; and (4) decisions from other jurisdictions that have discussed the issue. *Id.* (citing *Werwinski v. Ford Motor Co.*, 286 F.3d

13

661, 675 (3d Cir. 2002).).   "Although lower state court decisions are not controlling on an issue on which the highest court of the state has not spoken, federal courts must attribute significant weight to these decisions in the absence of any indication that the highest state court would rule otherwise." *Wisniewski v. Johns-Manville Corp.*, 759 F.2d 271, 273-74 (3d Cir. 1985).

The Supreme Court of New Jersey has set out general principles for contract interpretation and reformation:

> As a general rule, courts should enforce contracts as the parties intended.  Similarly, it is a basic rule of contractual interpretation that a court must discern and implement the common intention of the parties.  The court's role is to consider what is written in the context of the circumstances at the time of drafting and to apply a rational meaning in keeping with the expressed general purpose.

*Pacifico v. Pacifico*, 920 A.2d 73, 77 (N.J. 2007) (internal citations and quotation marks omitted).  In furtherance of the goal of binding parties to their mutual intent at the time of contracting, a court may reform a contract if it "was created by the negotiations of the parties, but by mutual mistake is wanting in formal expression or execution, so as to evince the actual intent of the parties.  *Gross v. Yeskel*, 134 A.2d 737, 737 (N.J. Eq. 1926) (internal citations omitted).

"Generally, when interpreting an insurance policy, courts should give the policy's words their plain, ordinary

14

meaning." *Nav-Its, Inc. v. Selective Ins. Co. of Am.*, 869 A.2d 929, 933 (N.J. 2005) (internal citations and quotation marks omitted).   We interpret a contract according to its plain language by reading the document as a whole in a fair and common sense manner so as to match the reasonable expectations of the parties.   *Hardy ex rel. Dowdell v. Abdul-Matin*, 965 A.2d 1165, 1168-69 (N.J. 2009).

However, in New Jersey, even an unambiguous contract may be reformed when there was mutual mistake and the written contract does not match what the parties intended. *Cent. State Bank v. Hudik-Ross Co., Inc.*, 396 A.2d 347, 350 (N.J. Super. 1978) ("The rule that contracts may be reformed where there has been mutual mistake is 'well settled in our jurisprudence.'").   A mutual mistake is "1. A mistake in which each party misunderstands the other's intent. . . . [or] 2. A mistake that is shared and relied on by both parties to a contract." Black's Law Dictionary 1023 (8th ed. 2004).

Mutual mistake is evaluated by determining the understanding of the parties at the time the contract was formed. *Bonnco Petrol, Inc. v. Epstein*, 560 A.2d 655, 659-60 (N.J. 1989).   A party seeking reformation for mutual mistake must show that both parties labored under the same misapprehension as to a particular and essential fact.   *Id.* at 660. The understanding of persons who were not contracting parties at the time of consummation of a contract is irrelevant. *Gross*, 134 A.2d at 737 (stating that courts should only look at the intent of the contracting parties at the time of consummation of a contract); *Sav. Inv. & Trust Co. v. Conn. Mut. Life Ins. Co.*, 85 A.2d 311, 314 (N.J. Super. 1952) ("Equity, in an effort to effectuate the intent of contracting

15

parties, will exercise its power to reform instruments where there has been a mutual mistake of the parties.").

"The power of a court of equity to reform deeds and other writings for the correction of mistakes stands among its most ancient and useful powers." *Cummins v. Bulgin*, 37 N.J. Eq. 476, 476 (1883). That power is not limited to the original parties to the contract, but extends to all those standing in privity with them. *Union Fur Shop. v. Max Melzer, Inc.*, 29 A.2d 873, 876 (N.J. 1943) (subsequent purchaser of business entitled to reformation of contract between original seller and buyer, based upon evidence of original seller's and buyer's common intention); *see also Allen B. Du Mont Lab., Inc. v. Marcalus Mfg. Co.*, 152 A.2d 841, 846 (N.J. 1959) (rejecting argument that reformation is impossible in the absence of an original party to the transaction: "If reformation is sought to establish a right against another, then of course that other must be before the court; a party to the mistake need not be joined unless he has a subsisting interest that will be affected.").

The District Court held that "because Wyndham did not participate in the negotiation and drafting of the 2008 policy, there can be no mutual mistake." *Illinois Nat'l Ins. Co.*, 2010 WL 3326709 at *5. *Id.* We believe this is an errant interpretation of New Jersey law. Reformation on the basis of mutual mistake can be granted even when it is to the disadvantage of a third party.

Turning to the facts, Illinois National and Jet Aviation were the only parties that negotiated and drafted the 2008 policy. (App. at A397-98.) As Wyndham admits, it "had

16

[no] involvement with . . . [the] revision to the Endorsement. [The contracting parties] never communicated with Wyndham to discuss the revision or request input. . . . [And,] Wyndham never had an opportunity to form an understanding of what [the contracting parties] intended when [they] inserted 'Named Insured.'" (Br. for Appellee Wyndham at 7.) Jet Aviation and Illinois National agree that their intent, at the time the contract was drafted, was to limit coverage for non-owned aircraft to aircraft used by or at the direction of Jet Aviation. (App. at A1773.)

Under these circumstances, the District Court erred by not analyzing the contract under the principles of mutual mistake set forth under New Jersey law. On remand, the District Court should evaluate Illinois National's and Jet Aviation's intent as well as Wyndham's arguments that reformation may be inequitable due to negligence and because the remedy is sought after an accident.

IV.

Illinois National argues that the District Court also erred by determining that Illinois National's complaint seeking declaratory judgment should be dismissed under Fed. R. Civ. P. 9(b). The District Court stated that Illinois National had failed to "identify with the required particularity 'the who, what, when, where, and how' of the mistake as required by Rule 9(b)." *Illinois National*, 2010 WL 3326709 at *12. Rule 9(b) provides that when a party alleges fraud or mistake, "a party must state with particularity the circumstances constituting fraud or mistake." *Id.* Rule 9(b) exists to insure adequate notice so that defendants can

17

intelligently respond. *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 414 n.2 (3d Cir. 2003) ("The purpose of Rule 9(b) is to provide notice, not to test the factual allegations of the claim.").

To survive a motion to dismiss, a plaintiff must allege facts sufficient to nudge his claims across the line from conceivable to plausible. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 230 (3d Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).). Illinois National's complaint stated that it sought a declaratory judgment that the 2008 policy did not cover the August 2008 Cessna incident. (App. at A40.) The complaint stated the understanding of the parties, Illinois National and Jet Aviation, at the time of drafting: "[d]uring the negotiations for each of the Policies, the parties understood and agreed that liability coverage available to Insured Owners for the use of non-owned aircraft was limited to non-owned aircraft operated by or used at the direction of Jet Aviation Business Jets, Inc." (*Id.* at A41.) Further, it identified the specific drafting error that had been made. (*Id.* at A45.) Specifically, the 2008 policy substituted "Jet Aviation Business Jets, Inc." with "Named Insured" without realizing that doing so could lead to the contract being read to provide coverage to Insured Owners for non-owned aircraft that were not operated by or used at the direction of Jet Aviation Business Jets, Inc. (*Id.*)

The complaint was sufficient. It specifically alleged the mistake and the remedy being sought. (*Id.* at A43-6.) Wyndham's counterclaim shows that it understood what was being pleaded. (*Id.* at A52-64.) Illinois National's complaint met the purpose of Rule 9(b) in that Wyndham was able to

18

answer, engage in discovery, and move for summary judgment on its counterclaim.

The District Court therefore erred in granting Wyndham's motion to dismiss Illinois National's complaint pursuant to Rule 9(b).

## V.

We conclude that the District Court's grant of Wyndham's motion for summary judgment and motion to dismiss Illinois National's complaint were in error. Accordingly, we will reverse and remand for further proceedings consistent with this opinion.[3]

---

[3] Illinois National also contends that the District Court erred in its interpretation of the Managed Aircraft Endorsement and in its refusal to allow Illinois National additional discovery pursuant to Fed. R. Civ. P. 56(f) (now Fed. R. Civ. P. 56(d)) prior to its grant of Wyndham's motion for summary judgment. Because we dispose of this case on the grounds that Illinois National's complaint was sufficient and that the District Court applied the incorrect test for mutual mistake, we do not reach the Illinois National's other arguments for reversal.

Nygaard, *Circuit Judge*, dissenting.

The majority's exclusive focus upon mutual mistake, and the intent of Illinois National and Jet Aviation is, I respectfully submit, misplaced. There is no mutual mistake here, only negligence and ignorance—neither of which is a legitimate basis for an equitable reformation of the contract. The insurer made changes to its policy, and negligently sold the altered policy to the insured, who was ignorant of the changes. Although Jet Aviation facilitated the procurement of Wyndham's aircraft insurance coverage with Illinois National, this fact does not eliminate the general contractual obligations of the insurer to the insured. A s written, the Endorsement—expressing the aircraft insurance coverage purchased by Wyndham—extended the indemnification of Jet Aviation's policy with Illinois National to insure the non-owned aircraft of the "Named Insured." The Endorsement explicitly references Wyndham as a "Named Insured." The insurer indemnified the insured on these terms and these words are binding.

As we have previously stated, New Jersey law insists that insurance policies are to be interpreted according to their "plain, ordinary meaning." *Colliers Lanard & Axilbund v. Lloyds of London*, 458 F.3d 231, 236 (3d Cir. 2006) (quoting *Nav-Its, Inc. v. Selective Ins. Co. of America*, 869 A.2d 929, 933 (2005). The plain meaning of a contract can be overridden only in rare, exceptional circumstances. *Id.* Moreover, while I do not read any patent or latent ambiguity here, in such instances policies generally "should be construed to sustain coverage." *President v. Jenkins*, 853 A.2d 247, 254 (2004). There is simply no support in state law for the conclusion that the insurer's failure to read the plain

1

language of its own policy before issuing it to the insured justifies supplanting these well-accepted tenets of contract and insurance law with considerations of equity to reform the contract. This is particularly so where, as here, the insurer seeks reformation post-loss. Judge Brown analyzed these issues thoroughly and reasonably. For these reasons, I respectfully dissent.