

**Michael David Lichtenstein**
Member of the Firm

Tel  973 597 2408
Fax 973 597 2409

mlichtenstein@lowenstein.com

March 6, 2012

**Via ECF & FedEx**

Hon. Madeline Cox Arleo, U.S.M.J.
United States District Court
District of New Jersey
M.L. King, Jr. Building & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07101

Re:   **Illinois National Insurance Co. v. Wyndham Worldwide Operations, Inc., et al.**
      **Civil Action No. 09-1724**

Dear Judge Arleo:

This firm represents the Wyndham entities in the referenced matter.  We respectfully submit this reply letter-brief in further support of our February 14, 2012 letter [Doc. No. 141] to compel Illinois National to produce review procedures and guidelines for changing or issuing aviation insurance policies.  Because these documents are relevant to Wyndham's contention that Illinois National's negligence precludes it from reforming the Managed Aircraft Endorsement (the "Endorsement"), the Court should order their production.

Through the meet and confer process, Wyndham narrowed Document Requests Nos. 1-4 (*see* Ex. A to Wyndham's February 14 letter [Doc 141-1]) to target Illinois National's review procedures that are most needed to demonstrate its negligence.  Wyndham now seeks review and quality control policies and procedures used by AIG (or Chartis) Aviation for aviation insurance policies and endorsements prior to their issuance or any such procedures for making changes to insurance policies and endorsements.  Wyndham has limited the timeframe for this request to January 1, 2007 to December 31, 2011.  As part of the meet and confer, Illinois National agreed to produce, in addition to the June 15, 2008 Review Procedure (at Ex. B to Illinois National's February 28 letter), the procedures that immediately predate and postdate the June 2008 review procedures (and a document referenced therein), but no more.[1]

---

[1] Illinois National argues that the only relevant procedure is the one it already produced, which was implemented on June 15, 2008, because it was the procedure in place on June 20 when "Jet's broker [Marsh] requested" the use of "Named Insured" in the Endorsement.  However, Illinois National may have its date wrong.  Illinois National's contention that Marsh first requested the change in June 2008 is not reflected in the testimony of two Marsh employees who

Hon. Madeline Cox Arleo, U.S.M.J.                                    March 6, 2012
Page 2

Illinois National's February 28 opposition letter-brief is notable for what it does not say. Illinois National is not objecting to Wyndham's revised request for review procedures on the grounds that it is burdensome, harassing, or ambiguous. Instead, its justification for not producing the documents rests solely on its (misplaced) belief that the procedures sought could not possibly be relevant. Illinois National's position fails to comprehend the breadth of what "relevance" means under the Federal Rules. In addition, Illinois National contends that Wyndham has somehow "conceded" that the only review procedures that are relevant are those Illinois National has agreed to produce. Wyndham, however, has made no such concession.

Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." The policy and endorsement review and issuance procedures that Wyndham seeks are directly related to determining whether Illinois National was negligent when it changed and issued the Endorsement. This is the case for the simple reason that the procedures sought can be used by Wyndham to prove its case.

One of the ways that Wyndham can demonstrate Illinois National's negligence is by comparing the procedures it (purportedly) used for the Endorsement to (1) earlier and later procedures it used for the type of insurance policy issued to Jet Aviation and Wyndham -- the Golden Medallion Policy as well as (2) procedures that are in place for other types of aviation insurance policies and endorsements. The purpose of such a comparison would be to discover whether Illinois National decided to exercise stricter care in issuing or amending some policies and endorsements but declined to have such procedures in place when the Endorsement was changed. If that is the case Wyndham is entitled to use these procedures to inquire of Illinois National's witnesses why it decided to use relaxed procedures for the Endorsement when it was capable of exercising stricter care in other circumstances and for other policies.

In response, the best Illinois National can state is that Wyndham is on some sort of "fishing expedition." However, that is simply not the case, because all this "expedition" would uncover is evidence directly relevant to the inquiry that the Third Circuit directed the District Court to undertake, *i.e.*, whether Illinois National was negligent.

---

brokered the Illinois National Policy. Alan Winters of Marsh testified that he believed the use of "Named Insured" in the Endorsement was first requested in March 2008; he believed that ILNAT029057 (at Ex. A of Illinois National's February 28 letter) was attached to a March 26, 2008 e-mail from Barbara Tomlinson of AIG (now Chartis) Aviation to Marsh. (*See* Ex. A Tr. 130-133.) Zoe Holmes of Marsh also testified that Illinois National agreed to the change prior to June 20, 2008. (*See* Ex. B. Tr. 49-53.)

**Lowenstein
Sandler**
ATTORNEYS AT LAW

Hon. Madeline Cox Arleo, U.S.M.J.                                    March 6, 2012
Page 3

Illinois National also argues that Wyndham has "conceded" that the only relevant procedures are those Illinois National has already produced or stated it will produce. If that were actually the case, we would not be writing these letter-briefs. Instead, Wyndham has articulated in its letters to the Court and in a letter to Illinois National the types of documents it is seeking. By reframing Wyndham's request to what it is agreeable to producing, Illinois National disingenuously obfuscates the issues.

Based on the foregoing, Illinois National's argument that *only* the June 15, 2008 procedure that was in place when Illinois National contends the "mistake"[2] occurred is relevant is far too narrow and reflects an erroneous understanding of "relevance" under the Federal Rules. Wyndham is entitled to know whether Illinois National has exercised stricter care in amending and issuing other versions of the Golden Medallion policy and other aviation policies and if, so why. The starting point for such an inquiry is the review procedures that describe the level of care to be used.

For these reasons, and those set forth in Wyndham' February 14 letter-brief, Wyndham respectfully requests that the Court compel Illinois National to produce review and quality control procedures for its aviation insurance policies and endorsements in place during 2007-2011 inclusive.

Respectfully submitted,

*Michael David Lichtenstein /EJ*

Michael David Lichtenstein


23943/2
03/06/12 19890445.1

cc:    Andrew T. Houghton, Esq. (via ECF)
       Aaron F. Mandel, Esq. (via ECF)

---

[2] It is a bit premature for Illinois National to state, at page 2 of its letter, that it is "undisputed" that the term "Named Insured" as used by Illinois National in the Managed Aircraft Endorsement was intended to refer only to Jet Aviation entities. Discovery is still ongoing with several depositions to be taken.

**LOWENSTEIN Sandler**
ATTORNEYS AT LAW

# EXHIBIT A

```
1              UNITED STATES DISTRICT COURT
            FOR THE DISTRICT COURT OF NEW JERSEY
2
     ILLINOIS NATIONAL          )
3    INSURANCE COMPANY,         )
                     )
4          Plaintiff,   )
                     )
5    VS.              ) NO. 2:09-cv-01724
                     )
6                    )
     WYNDHAM WORLDWIDE         )
7    OPERATIONS, INC.; WYNDHAM  )
     WORLDWIDE CORPORATION;     )
8    WYNDHAM VACATION          )
     OWNERSHIP, INC.; and      )
9    WYNDHAM RESORT DEVELOPMENT )
     CORPORATION,             )
10                   )
           Defendants.  )
11

12     -----------------------------------
13           ORAL DEPOSITION OF
14           ALAN D. WINTERS
15           MAY 27, 2010
16             VOLUME 1
17     -----------------------------------
18     ORAL DEPOSITION OF ALAN D. WINTERS, produced as a
19   witness at the instance of the PLAINTIFF, and duly
20   sworn, was taken in the above-styled and numbered cause
21   on May 27, 2010, from 9:00 a.m. to 5:53 p.m., before
22   Stacey Q. Paget, CSR in and for the State of Texas,
23   reported by machine shorthand, at the law offices of
24   Sedgwick, Detert, Moran & Arnold, LLP, 1717 Main Street,
25   54th Floor, Dallas, Dallas County, Texas, pursuant to
```

1    the Federal Rules of Civil Procedure and the provisions

2    stated on the record or attached hereto.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1              A P P E A R A N C E S
2       FOR THE WITNESS:
3          MR. BART WULFF
           SHACKELFORD MELTON & MCKINLEY
4          3333 Lee Parkway
           Tenth Floor
5          Dallas, Texas  75219
           (214) 780-1400
6          (214) 780-1415
7
8       FOR THE PLAINTIFF:
9          MR. ANDREW T. HOUGHTON
           SEDGWICK, DETERT, MORAN & ARNOLD, LLP,
10         125 Broad Street
           39th Floor
11         New York, New York  10004-2400
           (212) 422-0202
12         (212) 422-0925
13
        FOR THE DEFENDANT, WYNDHAM WORLDWIDE OPERATIONS, INC.;
14      WYNDHAM WORLDWIDE CORPORATION; WYNDHAM VACATION
        OWNERSHIP, INC.; and WYNDHAM RESORT DEVELOPMENT
15      CORPORATION:
16         MR. MICHAEL DAVID LICHTENSTEIN
           LOWENSTEIN SANDLER
17         65 Livingston Avenue
           Roseland, New Jersey 07068
18         (973) 597-2408
19
20
21
22
23
24
25
```

1    INDEX Winters, Alan D. Deposition Vol. I (pp. 1 - 245)
                                        PAGE

2    Appearances.......................................... 3
3    Stipulations........................................n/a
4    ALAN D. WINTERS
5        EXAMINATION BY MR. HOUGHTON..................... 13
         EXAMINATION BY MR. LICHTENSTEIN.................107
6        FURTHER EXAMINATION BY MR. HOUGHTON.............207
         FURTHER EXAMINATION BY MR. LICHTENSTEIN.........226
7        FURTHER EXAMINATION BY MR. HOUGHTON.............229
8
     Reporter's Certificate.............................. 243
9
                            EXHIBITS
10
     NO.  DESCRIPTION                        PAGE
11
         1   Amended notice of deposition................... 13
12       2    Confirmation of Aviation Insurance Coverages,
             ILNAT 000505-000510........................... 28
13       3    Confirmation of Aviation Insurance for Jet
             Aviation Intl, Inc, Bates stamped Marsh
14           000311 through Marsh 000315 ................... 31
         4    2007-2008 Policy No. GM 1852800-04, Bates
15           stamped Marsh 000317-000383, ................. 32
         5    Jet Aviation Business Jets, Inc. Aircraft
16           premium breakdown sheet, Bates Marsh 000310.... 49
         6    3/26/08 Email from B. Tomlinson to Z. Holmes,
17           Bates stamped Marsh 000396 through 000403 ..... 53
         7    Confirmation of aviation insurance, Marsh
18           000386 - 000388............................... 63
         8    Copy of '07-'08 policy to start renewal,
19           Marsh 000782 - 000842......................... 71
         9    1/4/08 email from A. Winters to B. Tomlinson
20           and G. Dekker, ILNAT 019590 through 019596..... 73
         10   E-mail chain ending 3/11/08 from W. Lovett to
21           Winters, Tomlinson, Dekker, Bates ILNAT
             029329 through 029331......................... 83
22       11   6/20/08 email from Z. Holmes to B. Tomlinson
             with attached document, Bates ILNAT 029053
23           through 29058................................. 89
         12   Copy of 2008 policy, Marsh 000462 through
24           Marsh 000534.................................. 92
         13   7/8/08 Letter, Bates Marsh 000843 through
25           000856........................................ 97

                                                        4

1    14  10/22/08 File note about crash, Bates Marsh
           000062.........................................101

2    15  10/22/08 Email from A. Winters to Keith
           Wright, Bates stamp Marsh 000061...............103

3    16  2/11/08 underwriting submission
           specifications to AIG from A. Winters, ILNAT

4         028031 - 028043................................142

       17  February 29, 2008 email from Mr. Dekker to

5         Mr. Winters, ILNAT 029319......................148

       18  6/27/08 letter, with attached 2008 policy, on

6         Marsh letterhead...............................150

       19  Email ending 10/23/08 from W. Beversluis to

7         G. Konicki, JA 00907 - 00908...................171

       20  Email ending 12/12/08 to W. Beversluis from

8         Nelson Camacho, Marsh 000036 - 000037,.........180

       21  Email chain ending January 8, 2009, from Z.

9         Holmes to A. Winters, Bates Marsh 000052 and
         000053.........................................183

10   22  Email chain ending 1/9/2009 from G. Konicki
         to Jet Aviation recipients, JA 00403 to 00442..187

11   23  1/14/2009 letter from AIG to Wyndham, signed...188

       24  4/13/2009 letter from M. Breightenbach, AIG,

12         to Jeffrey Cohen, Wyndham......................189

       25  E-mail from Barb Tomlinson to Marsh with

13         endorsements, ILNAT 019632 to 019652...........216

       26  E-mail chain ending 10/23/08, from K. Wright

14         to Marcus Banks, G. Konicki, copy to A.
         Winters, ILNAT 000003 to 000004................225

15

16                CERTIFIED QUESTIONS

17   NO.                  PAGE/LINE

18   1  .........................................  163  10

19

20

21

22

23

24

25

1    No. 2.

2        A.  Managed Aircraft Endorsement 000401 as per

3    attached UNTX0 whatever.

4        Q.  Could you just help me because the print is so

5    small?

6        A.  Right there (indicating).

7        Q.  Managed aircraft endorsement as per UNTX01?

8        A.  Yeah, that's the -- on this other stuff.

9        Q.  That's a policy form?

10       A.  Yes.

11       Q.  Okay.

12       A.  That's the one that's got the marks about the

13   named insured.

14           MR. HOUGHTON:  What page is that?

15           MR. LICHTENSTEIN:  That's on page Marsh

16   000401.

17       A.  That's that page that's in one of those at the

18   top of that pile there, the one that you guys were

19   talking about "the named insured" was handwritten in,

20   that's the form.

21       Q.  (BY MR. LICHTENSTEIN)  And is that the form

22   that reads "Jet Aviation," or is that the form that

23   reads "named insured"?

24       A.  Let me have that, and I'll -- it's right there

25   on the top.  It's one of the last one or two.  It's that

1      correspondence in the top there.

2          Q.  Let me make it easier.  I'm going to hand you

3      the pile.

4          A.  Yeah, that would be better.  Right here.

5          Q.  What exhibit number are you looking at,

6      Mr. Winters?

7          A.  This is No. 11.

8          Q.  And that's the e-mail from Ms. Holmes to

9      Ms. Tomlinson?

10         A.  Correct.

11         Q.  And on the page that's Bates numbered ILNAT

12     029057, that's the form you're referring to?

13         A.  Yes.

14         Q.  UNTX0186?

15         A.  Pretty sure that's what it is.

16         Q.  So going back to Exhibit 6, and that was the

17     e-mail from Zoe Holmes to Barb -- I'm sorry -- from

18     Barbara Tomlinson to Zoe Holmes attaching the final

19     version of the specs?

20         A.  Correct.  But that's not complete because all

21     the attachments that are referenced in here aren't with

22     this.

23         Q.  Right.  So this, as a preliminary matter, isn't

24     actually a complete copy of the e-mail and attachments;

25     is that right?

1     A.  That's the way I'm reading it, yes.

2     Q.  Okay.  But as you just pointed out to us on

3  Marsh 000401, there is a reference that there was an

4  agreement to use managed aircraft endorsement form

5  UNTX0186; is that right?

6     A.  Yes.

7     Q.  Okay.  Now, that form, and I'm referring now

8  back to Exhibit 11, which is the Holmes e-mail with the

9  handwriting, that form read, certainly at the time that

10  this e-mail was sent on March 26, 2008, let's just look

11  at paragraph 5, that included the language "Jet Aviation

12  Business Jets, Inc.," correct?  That didn't include the

13  language "the named insured," right?

14     A.  At the time this was done, that what you're

15  holding in your hand would have been part of this

16  (indicating).

17     Q.  And when you say "that," do you mean the form,

18  or do you mean the form when --

19     A.  That piece of paper you got in your hand right

20  there, that would have been connected to this.

21     Q.  Okay.  So you mean the piece of paper including

22  the handwritten --

23     A.  Yes.

24     Q.  -- notations and the circles, correct?

25     A.  Yeah, I don't -- some of those circles are your

1    circles, but the ones that were originally there, yes.

2        Q.  Okay.  The ones that say "the named insured"

3    substituting for "Jet Aviation Business Jets, Inc.,"

4    correct?

5        A.  That's my understanding, yes.

6        Q.  So would there have been any other attachments

7    that you think are missing from Exhibit 6?

8        A.  Oh, I'd have to look at every line of that to

9    tell you.  I'd have to look at every line before I could

10   tell you that, but my belief is it would be that there

11   are other attachments that should be included with that.

12       Q.  So your understanding, just again, and then

13   I'll get off this topic, of the reference to the managed

14   aircraft endorsement UNTX, that was as amended by the

15   handwriting?

16       A.  Right, by the handwriting.

17       Q.  Now, when the policy first issued, when the

18   actual physical policy came out, were those changes

19   included in the managed aircraft endorsement?

20       A.  I don't think I could answer that.  There was

21   something here (looking through document).

22       Q.  Again, I don't mean it to be a trick question.

23   If you'll look on Exhibit 11.

24       A.  Yes, it says right there it's supposed to have

25   been changed to "the name insured," so --

# EXHIBIT B

1    UNITED STATES DISTRICT COURT
     FOR THE DISTRICT OF NEW JERSEY

2
     _____X

3    ILLINOIS NATIONAL INSURANCE   Case No.:  2:09-cv-01724
     COMPANY,

4
           Plaintiff,

5
           -vs-

6
     WYNDHAM WORLDWIDE OPERATIONS,

7    INC., WYNDHAM WORLDWIDE
     CORPORATION; WYNDHAM VACATION

8    OWNERSHIP, INC.; and WYNDHAM
     RESORT DEVELOPMENT CORPORATION,

9
           Defendants.

10   _____X

11   ********************************************************

     ORAL DEPOSITION OF

12
        ZOE HOLMES

13
        MAY 28, 2010

14   ********************************************************

15      ORAL DEPOSITION of ZOE HOLMES, produced as a

16   witness at the instance of Plaintiff, and duly sworn,

17   was taken in the above-styled and -numbered cause on the

18   28th day of May 2010, from 9:06 a.m. to 11:41 a.m.,

19   before TAMMY DICKSON CROSS, a Certified Shorthand

20   Reporter in and for the State of Texas, reported by

21   machine shorthand, at law offices of Sedgwick, Detert,

22   Moran & Arnold, LLP, 1717 Main Street, 54th Floor,

23   Dallas, Texas  75201, pursuant to the Federal Rules of

24   Civil Procedure and the provisions stated on the record

25   or attached hereto.

```
 1              A P P E A R A N C E S
 2    FOR THE PLAINTIFF:
          Mr. Andrew T. Houghton
 3        SEDGWICK, DETERT, MORAN & ARNOLD, LLP
          125 Broad Street, 39th Floor
 4        New York, New York  10004-2400
          Telephone:  (212) 422-0202
 5        Facsimile:  (212) 422-0925
          E-mail:  andrew.houghton@sdma.com
 6
      FOR THE DEFENDANTS:
 7        Mr. Michael David Lichtenstein
          LOWENSTEIN SANDLER, PC
 8        65 Livingston Avenue
          Roseland, New Jersey  07068
 9        Telephone:  (973) 597-2408
          Facsimile:  (972) 597-2409
10        E-mail:  mlichtenstein@lowenstein.com
11    FOR MARSH USA, INC.:
          Mr. Bart Wulff
12        SHACKELFORD, MELTON & McKINLEY
          3333 Lee Parkway, Tenth Floor
13        Dallas, Texas  75219
          Telephone:  (214) 780-1400
14        Facsimile:  (214) 889-9715
          E-mail:  bwulff@shacklaw.net
15
16
17
18
19
20
21
22
23
24
25
```

1    don't recall sitting here today what those things were.

2      Q    I'm going to show you a copy of an exhibit we

3    marked yesterday at Mr. Winters' deposition.  It's

4    Exhibit No. 6.

5            MR. LICHTENSTEIN:  I'm sorry.  Were those

6    the official ones I was looking at or -- I didn't take

7    your pile, did I?

8            MR. HOUGHTON:  No, no, no.  Those -- I'm

9    just going to get out of your way.

10           MR. LICHTENSTEIN:  Thank you.  I think

11   I'll move.  Can you hear me okay?

12           THE REPORTER:  Yes.

13           THE WITNESS:  Actually, if you could move

14   a little closer, my hearing is obstructed today --

15           MR. LICHTENSTEIN:  More than happy to.

16           THE WITNESS:  -- because of allergies, so

17   it is kind of hard for me to hear you.

18           MR. LICHTENSTEIN:  I'm coming all the way

19   down.

20           THE WITNESS:  Thank you.

21           MR. LICHTENSTEIN:  Now I'm getting in the

22   big show down here.  This is the deep end of the water.

23     Q    Ms. Holmes, have you seen a copy of -- have

24   you seen a copy of Exhibit 6 before?

25     A    Yes.

1    Q    Can you tell me what that is?

2    A    This is Barb Tomlinson's e-mail back to me

3    sending me the signed specifications that were agreed to

4    by the parties negotiating the renewal of the 2008

5    policy.

6    Q    Okay.  And at the time in or around March 26,

7    2008, the date of the e-mail, would you have had an

8    opportunity to review the specifications for accuracy?

9    A    I worked with Mr. Winters on this, yes.

10    Q    Okay.  And you see, I guess, on the last page

11    of the document appears to be Ms. Tomlinson's signature;

12    is that right?

13    A    Correct.

14    Q    And is it your understanding that through that

15    signature, Ms. Tomlinson, on behalf of AIG, is agreeing

16    to provide coverages in accordance with the

17    specifications identified in this document; is that

18    correct?

19    A    That's my understanding, yes.

20    Q    And is it your understanding that all of the

21    terms and conditions that were agreed to for the April

22    2008 fleet policy are identified in this final

23    specification document?

24    A    As far as I know, yes.

25    Q    And would you then expect the policy that

1    issued, the 2008 policy that AIG issued would have been

2    in accord with the terms and conditions identified in

3    these final specifications?

4        A   Well, this is an outline, but, yes, it's an

5    outline of the coverages.

6        Q   Ms. Tomlinson [sic], I'm going to show you a

7    copy of the document we marked at Mr. Winters'

8    deposition as Exhibit 11.  It's a June 20, 2008 e-mail

9    from Zoe Holmes to Barbara Tomlinson.  Do you recognize

10   this document?

11       A   This is an e-mail I would have sent to Barb.

12       Q   You would have drafted it?

13       A   Yes.

14       Q   And am I correct that this is a document you

15   would have drafted after you reviewed the actual 2008

16   policy that AIG would have sent to you?

17       A   Yes.

18       Q   Okay.  Based on the contents of this e-mail,

19   did you identify any inconsistencies between the policy

20   as initially drafted by AIG and the final form of

21   specifications that were included in the exhibit we just

22   looked at, Exhibit No. 6?

23       A   Could you repeat the question, please?

24       Q   Sure.  Let's just take a first look at the

25   paragraph.  This may speed it up.  You wrote, Alan and I

1     have discussed the Jet hull and liability policy,

2     comparing the policy against the signed policy

3     specifications.  Now, are the signed policy

4     specifications the attachment we just saw that were

5     signed by Ms. Tomlinson on March 26?

6      A   That's correct, yes.

7      Q   Okay.  So you're comparing the policy AIG sent

8     you to the signed specifications attached to Exhibit

9     6?

10      A   That's correct, yes.

11      Q   Okay.  And am I correct then that in the

12     numbered paragraphs that follow in this e-mail, you are

13     identifying inconsistencies between those signed policy

14     specifications and the actual language of the policy AIG

15     drafted?

16      A   That's correct, yes.

17      Q   And in Paragraph 4, you write, Endorsement No.

18     2, managed aircraft endorsement, at Paragraph 4, the

19     name Jet Aviation Business Jets, Inc., should read the

20     named insured.  Do you see that?

21      A   Yes.

22       MR. HOUGHTON:  You -- you misread that,

23     but --

24       MR. LICHTENSTEIN:  I'm sorry.  Well, I'll

25     read it again just to make sure the record is clear.

1        MR. WULFF:  Well, it says what it says.

2        MR. LICHTENSTEIN:  Okay.

3        MR. HOUGHTON:  It says what it says.

4        MR. LICHTENSTEIN:  It says what it says.

5    Q    Is it your understanding that Barb Tomlinson

6    on behalf of AIG had agreed in the signed policy

7    specifications to make that change, to substitute Jet

8    Aviation Business Jets, Inc., for the term named

9    insured?

10        MR. HOUGHTON:  Objection.

11   A    That's my understanding.

12   Q    Okay.  And that's, in fact, what you wrote to

13   Ms. Tomlinson on June 20th?

14   A    Correct.

15   Q    Do you have any reason to believe today that

16   that was an inaccurate statement?

17   A    I do not, no.

18   Q    Just let me ask you one further question about

19   this document.  If you go to the second to last page,

20   that's the managed aircraft endorsement --

21   A    Right.

22   Q    -- you see there's -- there is one, two,

23   three -- four different places strike-outs of the term

24   Jet Aviation Business Jets, Inc., and then a write-in of

25   the term the named insured.  Do you see that?

5/28/2010  Holmes, Zoe (pp. 1 - 94)

1    STATE OF TEXAS    )

2    COUNTY OF DALLAS    )

3         I, TAMMY DICKSON CROSS, Certified Shorthand

4    Reporter, duly commissioned and qualified in and for the

5    State of Texas, do hereby certify that there came before

6    me on the 28th day of May 2010, at 9:06 a.m., at the law

7    offices of Sedgwick, Detert, Moran & Arnold, LLP, 1717

8    Main Street, 54th Floor, Dallas, Texas  75201, the

9    following named person, to-wit, ZOE HOLMES, who was by

10   me duly sworn to testify the truth, the whole truth and

11   nothing but the truth of her knowledge touching and

12   concerning the matters in controversy in this case; and

13   that she was thereupon carefully examined upon her oath

14   and her examination was reduced to writing by me or

15   under my supervision; that the transcript is a true

16   record of the testimony given by the witness, same to be

17   sworn and subscribed by said witness before any Notary

18   Public, pursuant to the agreement of the parties.

19        I further certify that I am neither attorney nor

20   counsel for nor related to or employed by any of the

21   parties to the action in which this examination is

22   taken, and further that I am not a relative or employee

23   of any attorney or counsel employed by the parties

24   hereto or financially interested in the action.

25

1     In witness whereof, I have hereunto set my hand and

2    affixed my CSR seal this _____ day of _____,

3    2010.

4

5

6

7

8              _____

          TAMMY DICKSON CROSS, Texas CSR #6925

9         Expiration Date:  12/31/11

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25