UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ILLINOIS NATIONAL INSURANCE COMPANY,<br><br>            Plaintiff,<br><br>vs.<br><br>WYNDHAM WORLDWIDE OPERATIONS, INC., et al.,<br><br>            Defendants. | Civil Action No. 09-1724<br><br>Hon. Claire C. Cecchi, U.S.D.J.<br><br><br><br><br><br>Document Electronically Filed |

**WYNDHAM'S BRIEF IN OPPOSITION TO ILLINOIS NATIONAL'S MOTION FOR RECONSIDERATION OF THE MAGISTRATE JUDGE'S MAY 14, 2012 ORDER**

Michael David Lichtenstein
Eric Jesse
**LOWENSTEIN SANDLER PC**
Attorneys at Law
65 Livingston Avenue
Roseland, New Jersey 07068
973.597.2500

*Attorneys for Wyndham*

## **TABLE OF CONTENTS**

**PAGES**

TABLE OF AUTHORITIES ................................................................................... ii

PRELIMINARY STATEMENT ..............................................................................1

STATEMENT OF THE CASE.................................................................................3

ARGUMENT .............................................................................................................6

    I.     THE MAGISTRATE JUDGE DID NOT ABUSE HER DISCRETION BY DIRECTING DISCOVERY TO PROCEED WITH METHODS OTHER THAN THOSE THAT ILLINOIS NATIONAL PREFERS .....................6

    II.    THE MAGISTRATE JUDGE PROPERLY INTERPRETED THE THIRD CIRCUIT'S DECISION .............................................................................9

    III.   WYNDHAM HAS PROPERLY ASSERTED PRIVILEGES OVER DOCUMENTS AND COMMUNICATIONS........................................................11

        A.    Wyndham's Communications with its In-House Counsel and Outside Attorneys are Privileged. ..........................................................11

        B.    Wyndham's Communications with Berkley Are Also Privileged. .......................................................................................................12

        C.    Wyndham's Communications with Aon are Privileged. ............................13

        D.    The Work-Product Doctrine also Protects Wyndham's Post-Accident Communications..................................................................14

        E.    The Information Illinois National Seeks is Available from Less Intrusive Sources. ...........................................................................15

    IV.   TO THE EXTENT THE ISSUES OF PREJUDICE AND DETRIMENTAL RELIANCE ARE RELEVANT IN THIS CASE, WYNDHAM'S POST-ACCIDENT COMMUNICATIONS ARE IRRELEVANT TO SUCH ISSUES. ..................................................................15

CONCLUSION........................................................................................................16

# **TABLE OF AUTHORITIES**

**Pages**

**CASES**

*Arzoomanian v. British Telecomm.*,
  No. 03-374, 2007 WL 132983 (D.N.J. Jan. 12, 2007) ............................................................ 10

*Blumenfeld v. Neuman*,
  112 N.E.2d 741 (Ill. App. Ct. 1953) ............................................................................... 10, 11

*Boca Investerings P'Ship v. United States*,
  31 F. Supp. 2d 9 (D.D.C 1998) .......................................................................................... 12

*Caldara v. N.J. Transit Rail Operations*,
  No. 09-657, 2010 WL 4225878 (D.N.J. Oct. 20, 2010) ....................................................... 7, 9

*Cashman Equip. Corp. v. Rozel Operating Co.*,
  No. 08-363, 2009 WL 2487984 (M.D. La. Aug. 11, 2009) .................................................... 15

*Cellco Partnership v. Certain Underwriters at Lloyd's London*,
  No. 05-3158, 2006 WL 1320067, at *2 (D.N.J. May 2, 2006) ............................................... 14

*In re Cendant Corp. Sec. Litig.*,
  343 F.3d 658 (3d Cir. 2003) ............................................................................................... 14

*Deluccia v. City of Patterson*,
  No. 09-703, 2012 WL 909548 (D.N.J. Mar. 15, 2012) .......................................................... 7

*Illinois National Ins. Co. v. Wyndham Worldwide Operations, Inc.*,
  Docket No. 10-3833, Slip op. (3d Cir. Aug. 3, 2011) .................................................... passim

*Kresefky v. Panasonic Commc'ns & Sys. Co.*,
  169 F.R.D. 54 (D.N.J. 1996) ................................................................................................ 7

*Motorist Mut. Ins. Co. v. Columbus Finance, Inc.*,
  861 N.E.2d 605 (Ohio Ct. App. 2006) ................................................................................ 10

*N.L. Indus. v. Commercial Union Ins.*,
  144 F.R.D. 225 (D.N.J. 1992) ....................................................................................... 12, 14

*Pfender v. Torres*,
  336 N.J. Super. 379 (App. Div. 2001) ................................................................................ 13

*Runyon v. Smith*,
  322 N.J. Super. 236 (App. Div. 1999) ................................................................................ 15

*Savings Inv. & Trust Co. v. Conn. Mut. Life Ins. Co.*,
   85 A.2d 311 (N.J. Super. Ct. Ch. Div. 1951)..........................................................................10

*Sklodowsky v. Am. Dev. Of New Jersey*,
   Docket No. HNT-L-459-04, 2005 WL 3488456 (N.J. Super. Ct. App. Div. Dec. 9, 2005) ...........................................................................................................................15

*In re: State Commission of Investigation Subpoena Number 5441*,
   226 N.J. Super. 461 (App. Div. 1998) .....................................................................................13

*In re Tetra Tech. Inc. Sec. Litig.*,
   No. 08-0965, 2010 WL 1335431 (S.D. Tex. Apr. 5, 2010) ......................................................14

**RULES**

Fed. R. Civ. P. 26(b)(3)(A) .........................................................................................................14, 15

**OTHER AUTHORITIES**

12 Wright & Miller, *Federal Practice & Procedure*: Civil 2d § 3069 (2d ed. 1997) ......................7

Wyndham respectfully submits this brief in opposition to Illinois National Insurance Company's ("Illinois National") motion for reconsideration of the portion of the May 14, 2012 order of the Honorable Madeline Cox Arleo, U.S.M.J. denying Illinois National's motion to compel.

## PRELIMINARY STATEMENT

This motion is a mere face saving measure by Illinois National to justify an extensive, expensive, time consuming, but ultimately needless battle over privileged documents that has consumed this case for more than two years. In her May 14 order, Judge Arleo denied Illinois National's misguided effort to compel the production of clearly privileged documents because the information that Illinois National hoped to obtain can be procured in a more direct, cost effective, and less invasive manner: by asking direct fact questions about Wyndham's knowledge and understanding of the coverage afforded by Illinois National's insurance policy.

Oddly, the thrust of Illinois National's motion is that Judge Arleo, in a blanket manner, upheld Wyndham's privilege assertions and argues to the Court that the documents are not privileged. However, Illinois National misunderstands the basis of Judge Arleo's ruling. Judge Arleo did not allow a "broad blanket assertion of privilege" because no privilege review was conducted. (*See* April 26, 2012 Hr'g Tr. 21:18-20 ("I'm not going to go through the process of creating a protracted record on privilege if I don't have to.").)[1] Instead, Judge Arleo ascertained from counsel for Illinois National the nature of the information sought from the privileged documents and explained how such information can be acquired through simple and straight-forward discovery that negates the need to undertake a burdensome privilege review.[2] As a result, the issue for this Court to decide is whether Judge Arleo abused her discretion in

---

[1] A copy of the transcript is attached as Exhibit F to Mr. Houghton's May 29, 2012 Declaration [Doc. No. 161].

[2] Further negating the need for the privileged documents and a protracted privilege argument, counsel for Wyndham stated on the record that Wyndham did not rely on Illinois National's mistake -- which is exactly the information that Illinois National seeks. (Tr. 7:11-14.)

deciding a discovery dispute and ordering that discovery on the issue of Wyndham's prejudice be taken in one way (*i.e.*, through deposition, interrogatories, and requests for admission ("RFAs")) rather than through Illinois National's roundabout but preferred method (*i.e.*, production of documents over which privilege is asserted).  Only if this Court determines that Judge Arleo abused her discretion would a decision on the parties' privilege arguments need to be made and an *in camera* review conducted.

Illinois National also contends that Judge Arleo erred in interpreting the Third Circuit's opinion.  She did not.  The sole reason that Illinois National seeks Wyndham's privileged documents is to establish that reformation of the Illinois National policy will not prejudice Wyndham in any way because Wyndham never expected to have coverage for the plane crash in the first place.  However, on remand, Wyndham's expectations are no longer relevant to the inquiry that will ultimately be before the Court.[3]  The Third Circuit stated:

> On remand, the District Court should evaluate *Illinois National's* and *Jet Aviation's intent* as well as Wyndham's arguments that reformation may be inequitable due to negligence and because the remedy is sought after an accident.

*Illinois National Ins. Co. v. Wyndham Worldwide Operations, Inc.*, Docket No. 10-3833, Slip op. at 17 (3d Cir. Aug. 3, 2011) ("Slip op.") (emphasis added).  Based on the express direction of the Third Circuit, Judge Arleo concluded correctly that Wyndham's expectations are no longer relevant.  However, even if Judge Arleo erred in her understanding of the Third Circuit's instruction, that error is not a basis to require the production of privileged documents because Judge Arleo, despite concluding that Wyndham's expectations are irrelevant, nevertheless allowed Illinois National to take discovery about them.

---

[3] Wyndham argued to Judge Brown at summary judgment that there was no mutual mistake between Wyndham (a "Named Insured" under the policy at issue) and Illinois National.  The Third Circuit ruled that the mutual mistake analysis should not include Wyndham's expectations, but instead the expectations of Illinois National and Jet Aviation (Wyndham's aircraft maintenance company through which Wyndham obtained the 2008 policy).  Slip op. at 17.

## STATEMENT OF THE CASE

This is an insurance coverage lawsuit in which Illinois National seeks to disclaim coverage to Wyndham under the 2008 Policy and 2008 Endorsement for a tragic and fatal airplane accident in Gearhart, Oregon on August 4, 2008 (the "Accident.").[4] Jason Ketcheson, an employee of Wyndham Resort Development Corporation and a licensed pilot, rented a Cessna aircraft to travel to a work meeting in Oregon and was accompanied by a colleague, Frank Toohey. (Iervolino Decl. ¶ 4.) Shortly after take-off, the plane crashed into a house resulting in the deaths of the pilot and his passenger, as well as three children vacationing in the house. (*Id.* ¶ 5, 6.) Three additional victims (one adult and two children) survived but suffered injuries. (*Id.* ¶ 6.) The house that the plane crashed into was destroyed and a neighboring house was damaged. (*Id.*) As a result of the Accident, the families and estates of the deceased victims, the surviving victims, and the owners of the two damaged houses brought lawsuits against Wyndham and other defendants (the "Underlying Actions"). (*Id.* ¶ 7.) Wyndham sought coverage and defense under 2008 Policy. (*Id.* ¶ 9.) Illinois National denied both.[5] (*Id.* ¶ 10.)

Illinois National issued the 2008 Policy to, *inter alia*, Wyndham's aircraft maintenance company, Jet Aviation Business Jets, Inc. ("Jet Aviation"), as well as Wyndham for the period of April 1, 2008 to April 1, 2009. (*Id.* ¶ 8.) Though Illinois National has consistently maintained otherwise, the plain, common-sense reading of the 2008 Policy provides coverage to Wyndham for the Accident. Specifically, the 2008 Endorsement accompanying the 2008 Policy provides liability coverage for "**Non-Owned Aircraft** [that] is operated by or used at the direction of the **Named Insured**." (Lichtenstein Decl. Ex. A, ¶ 5.) Wyndham is identified as a

---

[4] The "2008 Policy" refers to the Golden Medallion Comprehensive Business Aircraft Policy No. 1852800-05 issued by Illinois National to, *inter alia*, Jet Aviation and Wyndham for the period of April 1, 2008 to April 1, 2009. The 2008 Endorsement refers to the Managed Aircraft Endorsement annexed to the 2008 Policy where Illinois National supposedly made its "mistake" by covering non-owned aircraft operated by or at the direction of the "Named Insured." The 2008 Policy and 2008 Endorsement include Wyndham as a "Named Insured."

[5] Shortly after the Accident, Wyndham's other insurer, Berkley Aviation ("Berkley"), accepted its duty to defend and indemnify Wyndham without a reservation of rights. Berkley is paying Wyndham's legal fees in this coverage action.

"Named Insured" at the very top of the 2008 Endorsement, as well as in other policy provisions and on the confirmation of coverages. (*See id.*, ¶ 1, 2.) As a result, there is coverage for non-owned aircraft operated by or used at the direction of Wyndham; the Cessna that crashed was rented from a third-party.

Based on this language, Wyndham sought coverage from Illinois National under the 2008 Policy. Illinois National disclaimed and filed the instant lawsuit asking the Court to declare that the 2008 Endorsement does not say what it says or, in the alternative, that the 2008 Endorsement be reformed. Its reformation claim is based on its use of "Named Insured" in the 2008 Endorsement; earlier Managed Aircraft Endorsements provided liability coverage for "**Non-Owned Aircraft** [that] is operated by or used at the direction of Jet Aviation Business Jets, Inc." *Compare* 2008 Endorsement *with* 2007 Endorsement (Lichtenstein Decl. Exs. A, ¶5 & B, ¶5.) Illinois National's position is that when it replaced "Jet Aviation Business Jets, Inc." with "Named Insured" it did not intend to expand coverage to Wyndham, notwithstanding that Wyndham falls within the definition for "Named Insured."

For years, Illinois National has sought documents over which Wyndham has asserted the common-interest and attorney client privileges, as well as the work-produce doctrine. These are *post-Accident* communications with Wyndham's in-house counsel, outside counsel, Berkley (the insurer providing Wyndham with defense and indemnity), and Aon (Wyndham's insurance broker). These privilege disputes were pending before Judge Arleo, when the Honorable Garrett E. Brown, U.S.D.J. granted Wyndham summary judgment.

Wyndham's argument to Judge Brown in April 2010 in its motion for summary judgment was that as between Illinois National and Wyndham there was no mutual mistake to warrant reformation of the 2008 Policy because Wyndham did not share Illinois National's purported understanding at the time of contracting. Wyndham also argued that the equitable remedy of reformation was not available to Illinois National because it was negligent or worse in drafting the policy and that such a remedy is not appropriate *after* an occurrence has taken place. Judge Brown granted Wyndham summary judgment finding the mistake was unilateral. Because

the Court granted Wyndham summary judgment on the mistake issue, it did not consider Wyndham's negligence and post-occurrence reformation arguments. Illinois National appealed Judge Brown's decision to the Third Circuit Court of Appeals, which reversed. In doing so, the Third Circuit stated that Wyndham's intent was not relevant and that the District Court should have considered Jet Aviation's intent -- not Wyndham's. Slip op. at 17. In addition, the Third Circuit directed the District Court to consider Wyndham's negligence and post-occurrence reformation arguments. *Id.*

The post-Accident communications that Illinois National seeks concern Wyndham's attempt to ascertain its legal entitlement to insurance coverage under the 2008 Policy. They do not concern Jet Aviation's or Illinois National's intent.

Shortly after the Third Circuit remanded, Wyndham wrote to Judge Arleo to request a scheduling conference to move the case quickly and efficiently towards summary judgment again. (Lichtenstein Decl. Ex. C.) Wyndham argued that this case was postured for such movement because the unresolved privilege disputes were mooted by the Third Circuit's opinion directing consideration only of Jet Aviation's and Illinois National's intention regarding the scope of coverage provided by the 2008 Policy. (*Id.*) Notwithstanding the Third Circuit's decision, Illinois National still insisted on invading Wyndham's privileged communications. (*Id.* Ex. D.) Judge Arleo ordered that the parties brief the privilege issues.

On April 26, 2012 the parties appeared for a hearing before Judge Arleo. At the hearing, Judge Arleo ascertained the reason that Illinois National sought Wyndham's privileged documents: to determine Wyndham's coverage expectations under the 2008 Policy and whether it was prejudiced. However, Judge Arleo ruled that the privilege issues need not be decided because, according to the Third Circuit, Wyndham's coverage expectations under the 2008 Policy are not relevant. However, out of an abundance of caution, Judge Arleo allowed Illinois National to take discovery on that very issue using other less intrusive and more efficient

methods (*i.e.*, interrogatories, RFAs, and depositions[6]), alleviating the need to conduct an exhaustive and unnecessary privilege review.  The reason Judge Arleo allowed this type of discovery is because "it's narrow and . . . it's not complicated . . . and because Rule 26 is broad, and I don't think there's any harm in a case with this much at stake to allow us a little bit extra discovery that doesn't involve privileged material."  (*See* Tr. 25:2-9.)  In addition, at the hearing Judge Arleo obtained a representation from Wyndham's counsel that it was not asserting Wyndham detrimentally relied upon Illinois National's purported mistake.  (*See* Tr. 7:11-14.)

Not satisfied with the simple and uncomplicated discovery approach that Judge Arleo allowed and with Wyndham's counsel's representation on the record (all of which gives Illinois National exactly what it wants), Illinois National brings this motion for reconsideration with a proposed order seeking a blanket production of Wyndham's privileged documents.

## ARGUMENT

Because Judge Arleo did not make any rulings on Wyndham's privilege claims, and instead directed Illinois National to pursue other forms of discovery, the issue before this Court is whether Judge Arleo abused her discretion in precluding Illinois National from obtaining documents over which Wyndham asserts privilege when there are other simple and straight-forward discovery mechanisms available that will allow it to obtain the same type of information.  Only if Judge Arleo abused her discretion does this Court have to review her interpretation of the Third Circuit opinion and make a privilege determination.

I. **THE MAGISTRATE JUDGE DID NOT ABUSE HER DISCRETION BY DIRECTING DISCOVERY TO PROCEED WITH METHODS OTHER THAN THOSE THAT ILLINOIS NATIONAL PREFERS.**

By barring Illinois National from over-litigating this case in favor of efficient discovery that elicits the same information, Judge Arleo did not abuse her discretion.  Instead, she properly exercised her discretion to resolve a discovery dispute over documents by

---

[6] Only two depositions -- of third parties -- have been taken in this case; no party depositions have been taken yet.

fashioning a remedy that allows Illinois National to get the information it wants -- discovery on Wyndham's coverage expectations and prejudice -- using alternative discovery methods. At the same time, Judge Arleo's remedy preserves judicial resources by avoiding an unnecessary privilege review of documents that are, at best, duplicative of the information Illinois National can otherwise elicit in a direct manner.

"In matters where the magistrate judge is authorized to exercise his or her discretion, the decision will be reversed only for an abuse of discretion." *Deluccia v. City of Patterson*, No. 09-703, 2012 WL 909548, at *1 (D.N.J. Mar. 15, 2012). One of the areas over which a magistrate judge has discretion is resolution of discovery disputes. *See Kresefky v. Panasonic Commc'ns & Sys. Co.*, 169 F.R.D. 54, 64 (D.N.J. 1996) ("Where, as here, the magistrate judge has ruled on a non-dispositive matter such as a discovery motion, his or her ruling is entitled to great deference and is reversible only for abuse of discretion."); *see also Caldara v. N.J. Transit Rail Operations*, No. 09-657, 2010 WL 4225878, at *1 (D.N.J. Oct. 20, 2010) ("Under this district's case law, district courts, when reviewing decisions about discovery disputes, apply the deferential 'abuse of discretion' standard."); 12 Wright & Miller, *Federal Practice & Procedure*: Civil 2d § 3069 (2d ed. 1997) ("[M]atters such as discovery scheduling or disputes might better be characterized as suitable for an abuse-of-discretion analysis."). This deferential abuse of discretion standard is "especially appropriate" in cases like the one at bar "where the Magistrate Judge has managed this case from the outset and developed a thorough knowledge of the proceedings." *Deluccia*, 2012 WL 909548, at *1 (citations omitted).

The reason Illinois National seeks the privileged documents is it "should be entitled to put on a case that there has been and will be no prejudice to Wyndham if this policy is reformed." (Tr. 14:9-13.) As a threshold matter, counsel for Wyndham addressed Illinois National's precise concern on the record at the April 26 hearing; Wyndham is not contending that it relied on the purported "mistake" in the 2008 Endorsement. (Tr. 7:11-14.) In addition, Judge Arleo recognized that the information that Illinois National seeks can be better and more efficiently obtained from narrowly targeted discovery (which she permitted to be served). While

Illinois National has served a plethora of paper discovery, its requests have tended not to ask the straight-forward questions that Judge Arleo outlined for Illinois National.

> The Court: No prejudice because why? Because they didn't know about the policy; correct?
>
> Mr. Houghton: Because they never asked for it, they never paid for it[7], they never expected to have it.
>
> * * *
>
> The Court: . . . You can give . . . them an admission . . .They're going to tell you that – you can give them a request for admission or interrogatory and did you ever ask for the policy before November of '08? . . . When did you first learn of the policy? . . . They're going to give you a date. But you can get all that by questions. You don't need to go into their privileged documents . . . Why do you need to go into their privileged documents to make those arguments? If query they're even relevant.

(Tr. 14:9 – 15:9; *see also* Tr. 17:6 – 19:11.)

Although Judge Arleo questioned whether this discovery was even appropriate based on the Third Circuit's decision, she nevertheless and in her discretion, allowed Illinois National to serve discovery (interrogatories and RFAs) and take depositions directed at these issues. Even though the Third Circuit "did not tell the District Court to consider the expectations of Wyndham . . ." Judge Arleo permitted discovery (using certain tools) because "it's narrow . . . and it's not complicated. It doesn't involve experts. It doesn't involve a long time period . . . and Rule 26 is broad, and I don't think there's any harm in a case with this much at stake to allow us a little bit of extra discovery that doesn't involve privileged material. That's why I'm doing it." (Tr. 24:9 – 25:9.) Judge Arleo further stated that "I think that this is a fair compromise to allow you to pursue that defense query. Whether it's going to matter at the end of the day, but it's not a big imposition on the defendants." (Tr. 25:20-23.)

---

[7] Counsel for Illinois National is incorrect here; Wyndham paid $45,367.00 for coverage under the 2008 Policy.

As a result, Judge Arleo was well within her discretion when she directed Illinois National to take discovery on Wyndham's expectations using interrogatories, RFAs, and depositions to obtain the information it contends it needs rather than Illinois National's exhausting but preferred method -- production of documents claimed as privilege and litigating privilege issues. The remedy allows Illinois National to obtain information on exactly what it wants; Judge Arleo properly determined what information Illinois National hopes to glean from the documents and determined that it can be obtained through better, less intrusive, and less complicated discovery while preserving judicial resources. *See Caldara*, 2010 WL 4225878, at *1 ("[T]he Court must guard against redundant or disproportionate discovery.").

## II. THE MAGISTRATE JUDGE PROPERLY INTERPRETED THE THIRD CIRCUIT'S DECISION.

Shortly after remand, Wyndham argued to Judge Arleo that Wyndham's intent under the Policy was no longer relevant based on the Third Circuit's decision, and that the unresolved privilege issues at the time Judge Brown granted summary judgment were moot. (*See* Lichtenstein Decl. Ex. C.) The basis for this position comes from the plain language of the Third Circuit's directive to the District Court:

> On remand, the District Court should evaluate Illinois National's and Jet Aviation's intent as well as Wyndham's arguments that reformation may be inequitable due to negligence and because the remedy is sought after an accident.

Slip op. at 17.

In its submissions to the Court before the grant of summary judgment, Illinois National's own words state the purpose for which it seeks the discovery: The documents "may contain the *author's thoughts* [*i.e.*, Wyndham's or a common-interest party's] with respect to Wyndham's entitlement to coverage under the Illinois National Policy or lack thereof." (Illinois National's May 26, 2010 letter, at p. 6 (emphasis added) [Doc. 68].) In addition, "[t]he communications are material to this case to the extent they reveal inconsistencies in *Wyndham's views* as to coverage." (*Id.* at p. 7 (emphasis added).) At the April 26, 2012 hearing, counsel for

Illinois National further stated that it seeks the privileged communications as evidence "that there has been and will be no prejudice to Wyndham if this policy is reformed" and that Wyndham "never expected to have this coverage." (Tr. 14:11-13; 20:11-13.)

This purpose, however, is completely out of line with what the Third Circuit directed the District Court to consider. Wyndham's expectations and understanding no longer matter and the Third Circuit did not tack on additional considerations. For that reason, Judge Arleo stated that "there is nothing in the Third Circuit opinion that suggests in any way, shape or form that the discovery should be broader than exactly what defense . . . counsel said," (Tr. 23:18-21), which was "[t]he Third Circuit said, very clearly, the question was: Was Illinois National negligent or worse in issuing a policy that they already found on its face clearly covers this claim? And the question is should they be entitled to this equitable remedy in light of their conduct? The Third Circuit didn't say anything . . . about [Wyndham's] conduct" (Tr. 22:13-21).

Aside from upholding what the Third Circuit stated, Judge Arleo's interpretation is appropriate; because Illinois National seeks the *equitable* remedy of reformation to correct its "mistake," it is the entity that must have "done equity." *Arzoomanian v. British Telecomm.*, No. 03-374, 2007 WL 132983, at *15 (D.N.J. Jan. 12, 2007). Determining whether Illinois National has done equity requires consideration of whether and to what extent Illinois National was negligent in extending coverage to Wyndham by using "Named Insured," a defined term that includes Wyndham at the top of the very page where the "mistake" was made. *See* Slip op. at 17; *see also Motorist Mut. Ins. Co. v. Columbus Finance, Inc.*, 861 N.E.2d 605, 109-610 (Ohio Ct. App. 2006) (failure to discovery mutual mistake by "sophisticated party . . . experienced in insurance matters" who bore the risk of mistake was negligence that barred reformation); *see also Blumenfeld v. Neuman*, 112 N.E.2d 741, 745 (Ill. App. Ct. 1953) (gross negligence bars reformation of a mutual mistake). Wyndham's conduct, however, is not pertinent to whether Illinois National was negligent. Negligence by the party seeking reformation will bar reformation regardless of reliance, and courts making such determinations look to the actions and understanding of the negligent contracting party. *See*, *e.g.*, *Savings Inv. & Trust Co. v. Conn.*

*Mut. Life Ins. Co.*, 85 A.2d 311 (N.J. Super. Ct. Ch. Div. 1951).  Moreover, even case law cited by Illinois National in its summary judgment opposition brief, which recognized that a drafter's gross negligence will bar reformation, did not include consideration of the impact on the party the contract is reformed against in stating the rule.  *See*, *e.g.*, *Blumenfeld*, 112 N.E.2d at 745.

### III. WYNDHAM HAS PROPERLY ASSERTED PRIVILEGES OVER DOCUMENTS AND COMMUNICATIONS.

Because Judge Arleo afforded Illinois National a simple and direct way to obtain the information on Wyndham's expectations, she did not make any rulings on the privileges that Wyndham asserts.  As such, Illinois National does not (and cannot) challenge any specific rulings on privilege matters.  Therefore, if this Court decides that Judge Arleo abused her discretion in ordering that Illinois National conduct discovery in one manner rather than by obtaining certain documents, the Court must still undertake a privilege review.[8]

For years -- and again through this motion -- Illinois National has overreached by trying to invade privileges that Wyndham has asserted over communications with (1) in-house attorneys, (2) outside counsel, (3) Berkley, the insurer providing a defense and indemnity to Wyndham for the Accident, and (4) Aon, Wyndham's insurance broker. To protect those communications Wyndham asserted the attorney-client, common-interest, and work-product privileges.  The documents and communications were made by or at the direction of counsel and concern Wyndham's consideration of legal entitlement to coverage from Illinois National.  (*See* Banks Decl. ¶ 11, 13, 17.)

### A. Wyndham's Communications with its In-House Counsel and Outside Attorneys are Privileged.

Emblematic of Illinois National's overreaching is its attempt to invade classically privileged communications between attorney and client.  Illinois National seeks Wyndham's in-

---

[8] The parties' submitted extensive letter-briefs to Judge Arleo on the privilege issues.  (*See* Doc. Nos. 140, 145, 151.)  If the Court decides to consider the privilege issues, Wyndham respectfully refers the Courts to the letter-briefs.  In addition, Wyndham will provide the Court with the privileged documents for an *in camera* review upon request.

house attorney communications as well as Wyndham's communications with outside counsel. To do so, it erroneously premises its position on an *assumption* that the communications are business communications. As a threshold manner, "there is a presumption that a lawyer in the legal department or working for the general counsel is most often giving legal advice." *Boca Investerings P'Ship v. United States*, 31 F. Supp. 2d 9, 12 (D.D.C 1998). Illinois National cannot overcome that presumption. This is because the communications involve legal issues, namely analysis of contract provisions, analysis related to insurance policy provisions and exclusions, disclosure of privileged documents to non-Wyndham entities, in-house counsel's handwritten notes related to legal entitlement to coverage, and requests for information. (Wyndham's Feb. 28, 2012 Letter Br. 5-6.) Illinois National also seeks communications with two of Wyndham's outside law firms relating to scope of representation, information regarding contract negotiations, and analysis of insurance provisions. (Letter Br. 6.)

### B. Wyndham's Communications with Berkley Are Also Privileged.

Berkley is Wyndham's other insurer, which is providing defense and indemnity (without reservation) to Wyndham for the Accident. Wyndham has asserted the common-interest privilege over certain communications with Berkley, made after the Accident, and which were made by or at the direction of counsel. (*See* Banks Decl. ¶ 13; Letter Br. 9 – 19.) Both Wyndham and Berkley share the same interest in pursuing additional insurance coverage. (*Compare* Banks Decl. ¶ 8-11 *with* Kern Decl. ¶ 8-10.) Under the common interest doctrine, parties with a "community of interest" can share documents and communicate with one another without waiver of the attorney-client privilege or work-product doctrine." *N.L. Indus. v. Commercial Union Ins.*, 144 F.R.D. 225, 230 (D.N.J. 1992).

Though Illinois National argues that Wyndham can have no such interest because Berkley is indemnifying Wyndham, it repeatedly ignores that Wyndham is obligated under the Berkley Policy to cooperate with Berkley in pursuing others to share the cost of any damages for the Accident, including insurers who have shirked their coverage obligations. (*See* Banks Decl.

¶8-9.)  Desperate for the documents, Illinois National also contends that no privilege exists in the face of sworn declarations attesting to the common interest in defending the Underlying Actions and pursuing other sources of coverage.  (*E.g.*, Banks Decl. ¶¶ 8-10, 13.)

The tripartite relationship that forms the common interest arises in two ways here.  First, it exists based on Wyndham's attorney-client relationship with its in-house counsel to address coverage issues and Berkley's joint interest in doing the same.  *See In re: State Commission of Investigation Subpoena Number 5441*, 226 N.J. Super. 461, 466 (App. Div. 1998) (the common interest doctrine "protects communications made when a nonparty sharing the client's interest is present at a confidential communication between attorney and client.")

Second, the common-interest privilege also applies because Berkley accepted, without reservation, its duty to indemnify and appointed defense counsel -- Dombroff Gilmore -- for Wyndham. Through this tripartite relationship, a common interest was also formed to defend the Underlying Actions, which is intertwined with pursuing additional sources (such as Illinois National) for contribution.  In both instances, the communications were made by or at the direction of counsel.  (*See* Banks Decl. ¶ 13.)[9]

### C. Wyndham's Communications with Aon are Privileged.

Wyndham, like many sophisticated companies, utilizes an outside insurance broker.  Wyndham hired Aon as its insurance broker because of its expertise in insurance-related matters.  (Iervolino Suppl. Decl. ¶ 3.)  Wyndham utilized that expertise (at the direction of counsel) to understand its legal entitlements to coverage.  As such, Wyndham's communications

---

[9] Although not the typical "attorney-client" communication, New Jersey recognizes that certain insured-insurer communications are protected by the attorney-client privilege. *See Pfender v. Torres*, 336 N.J. Super. 379, 386 (App. Div. 2001).  On that basis, Wyndham also asserts the attorney-client privilege over communications with Berkley.  The Wyndham-Berkley communications satisfy the four *Pfender* factors.  The communications were made at the direction of counsel with an expectation of confidentially; they were made in the context of seeking or obtaining legal advice regarding Wyndham's entitlement to coverage; litigation following the Accident was most definitely anticipated and with that anticipated litigation in mind communicated regarding insurance coverage; and Wyndham and Berkley share the same interest in ensuring additional sources of contribution be brought to bear. (Letter Br. 17-19.)

with Aon are also privileged. (Letter Br. 19 – 21.) Courts have not hesitated to apply the attorney-client privilege to insurance brokers. *See*, *e.g.*, *In re Tetra Tech. Inc. Sec. Litig.*, No. 08-0965, 2010 WL 1335431 at *4-5 (S.D. Tex. Apr. 5, 2010). Therefore, communications between an insured and its broker are within the attorney-client privilege if the communications "were made to facilitate the rendition of legal services to the client and involve an attorney." *Id.* at *5. Even the case cited by Illinois National, *Cellco Partnership v. Certain Underwriters at Lloyd's London*, recognized that insured-insurance broker communications are entitled to the attorney-client privilege protections when the broker "worked at the direction of the lawyer, and performed tasks relevant to the client's obtaining legal advice," which is the precise scenario at bar. No. 05-3158, 2006 WL 1320067, at *2 (D.N.J. May 2, 2006). Wyndham's communications with Aon were made by or at the direction of counsel, when litigation arising from the Accident was anticipated, and with Wyndham expecting they would remain confidential. For Wyndham to understand its legal entitlement to insurance from Illinois National, it was necessary for it to rely upon its insurance agent and expert, Aon.

### D. The Work-Product Doctrine also Protects Wyndham's Post-Accident Communications.

Wyndham's post-Accident communications with Berkley, Aon, and its outside counsel, as well as the communications of its in-house counsel are protected by the work-product doctrine. (Letter Br. 22-24.) The doctrine is distinct from and broader than the attorney-client privilege. *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 666 (3d Cir. 2003). The doctrine provides that "a party may not discover documents . . . that are prepared in anticipation of litigation or for trial by or for another party or its representative." Fed. R. Civ. P. 26(b)(3)(A). It can only be overcome if the party seeking discovery "has shown a substantial need for the information, and has proven that the information is not obtainable elsewhere without undue hardship." *NL Indus.*, 144 F.R.D. at 229. The application of the work product doctrine is not limited to material prepared by the party's attorney but also extends to the party's "insurer" and

"agent," in this case Berkley and Aon. *Cashman Equip. Corp. v. Rozel Operating Co.*, No. 08-363, 2009 WL 2487984, at *3 (M.D. La. Aug. 11, 2009); *see also* Fed. R. Civ. P. 26(b)(3)(A).

After the Accident, litigation was anticipated with respect to Wyndham's liability and associated potential coverage concerns. (Kern Decl. ¶ 11; Banks Decl. ¶¶ 4, 17.) Thus, when Wyndham, Berkley, and Aon communicated, they did so in anticipation of litigation and with the expectation of confidentiality. (Banks Decl. ¶ 17.)

### E. The Information Illinois National Seeks is Available from Less Intrusive Sources.

Illinois National's last argument is that even if privilege applies, it still must be entitled to the communications. (Br. 13.) In making such an argument, Illinois National ignores (as it has throughout its motion) that there are better and less intrusive sources from which to obtain the information. Judge Arleo ordered that discovery be taken using those means. Though we are loathe to map a route for Illinois National's case, all it has to do is ask about Wyndham's expectations about coverage. Consequently, with "less intrusive sources" available, Illinois National cannot make any sort of showing of need for the privileged documents. *See Sklodowsky v. Am. Dev. Of New Jersey*, Docket No. HNT-L-459-04, 2005 WL 3488456, at *6 (N.J. Super. Ct. App. Div. Dec. 9, 2005) (privilege upheld when information available through less intrusive depositions); *Runyon v. Smith*, 322 N.J. Super. 236, 245 (App. Div. 1999) (the requirement to pierce privilege "that the information sought cannot be secured from a less intrusive source, was not satisfied.").

### IV. TO THE EXTENT THE ISSUES OF PREJUDICE AND DETRIMENTAL RELIANCE ARE RELEVANT IN THIS CASE, WYNDHAM'S POST-ACCIDENT COMMUNICATIONS ARE *IRRELEVANT* TO SUCH ISSUES.

For the reasons discussed at Point II, the issues of prejudice and/or detrimental reliance are not relevant to this case because they are beyond the scope of the Third Circuit's remand. In any event, Wyndham's post-Accident communications are irrelevant to the issues of prejudice and detrimental reliance. The reason Illinois National seeks the privileged documents is to ascertain whether Wyndham detrimentally relied on the 2008 Policy. (*See*, *supra*, p. 7-8; 9-

10.) By focusing on post-Accident communications Illinois National looks to the wrong timeframe; the Post-Accident documents concerning Wyndham's understanding do not concern whether Wyndham changed its position based on the purported "mistake." As such, it is seeking documents unrelated to any detrimental reliance on the "mistake" by Wyndham.

## CONCLUSION

For the foregoing reasons, Wyndham respectfully requests that the Court deny Illinois National's motion for reconsideration and affirm Judge Arleo's May 14, 2012 order denying Illinois National access to documents over which Wyndham asserts privilege.

Respectfully submitted,

Dated: July 2, 2012

/s/ Michael David Lichtenstein
Michael David Lichtenstein
Eric Jesse
**LOWENSTEIN SANDLER PC**
Attorneys at Law
65 Livingston Avenue
Roseland, New Jersey 07068
973.597.2500
*Attorneys for Wyndham*