Andrew T. Houghton (*pro hac vice*)
Timothy D. Kevane (*pro hac vice*)
Aaron F. Mandel
SEDGWICK LLP
125 Broad St., 39th Floor
New York, New York 10004
Telephone: (212) 422-0202
Facsimile: (212) 422-0925

Attorneys for Plaintiff
ILLINOIS NATIONAL INSURANCE COMPANY

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW JERSEY

---------------------------------------------------------X

ILLINOIS NATIONAL INSURANCE
COMPANY,

                                  Case No.: 2:09-cv-01724-CCC-MCA

        Plaintiff,

      -vs-

WYNDHAM WORLDWIDE OPERATIONS,
INC.; WYNDHAM WORLDWIDE
CORPORATION; WYNDHAM VACATION
OWNERSHIP, INC.; and WYNDHAM
RESORT DEVELOPMENT CORPORATION,

        Defendants.

---------------------------------------------------------X

**PLAINTIFF ILLINOIS NATIONAL INSURANCE COMPANY'S REPLY
MEMORANDUM RE APPEAL OF MAY 14, 2012 ORDER**

Plaintiff Illinois National Insurance Company ("Illinois National") respectfully submits this reply memorandum in further support of its objections/appeal to the Magistrate Court's May 14, 2012 Order denying Illinois National's motion to compel disclosure of thirty-eight documents withheld by defendants Wyndham Worldwide Operations Inc., et al. ("Wyndham").

<u>PRELIMINARY STATEMENT</u>

One of the issues in this case concerns Wyndham's alleged expectations – or lack thereof – concerning the 2008 Illinois National Policy.  These alleged expectations are relevant to both Illinois National's claim for declaratory relief, and its reformation claim.

In its claim for declaratory relief, Illinois National contends that the only reasonable interpretation of the Policy, taking into account the circumstances underlying the issuance of the Policy, including the parties' expectations, supports the conclusion that no coverage is afforded for the aircraft accident.  Wyndham claims the opposite, including its assertion that the Policy is ambiguous.

In its reformation claim, Illinois National alleges that the Policy should be reformed to correct a mutual mistake.  Wyndham argues that reformation would be inequitable, but has recently admitted in open court and in written discovery that, in fact, it never detrimentally relied on having *any* coverage under the Illinois National Policy for an accident like the one at issue. Wyndham still contends, however, that although it never expected the coverage it now seeks, reformation would be unfair because Illinois National was grossly negligent in issuing the Policy.

With these divergent views of the intended scope of coverage under the Policy, Wyndham makes the remarkable claim that communications with its insurance broker, with another insurer, and internally among its own personnel, all of which Wyndham concedes discuss the Illinois National Policy at issue in this case, may be kept secret because they are

protected by attorney-client privilege.  Wyndham's theories for its claim are nonsense.  The Magistrate Court resolved the issue by restricting the subject of Illinois National's discovery to interrogatories or depositions, thereby avoiding a review of the thirty-eight documents, and any determination (for example) that an email between Wyndham and its insurance broker is somehow an attorney-client communication.

The Magistrate Court's restriction on this discovery was rooted in a basic misunderstanding of the Third Circuit's ruling.  Ex. A.[1]  The Third Circuit decision, however, did not address the scope of discovery in this case.  It imposed no limitation on discovery. Indeed, the Third Circuit specifically noted that it need not consider Illinois National's unanswered discovery as a basis to reverse Wyndham's flawed summary judgment motion.  Id. at 19 n. 3.  The Third Circuit decision related *only* to Illinois National's reformation claim.  As to that claim, the Third Circuit noted that Wyndham's intent was not relevant to whether a mutual mistake as between the contracting parties warranted reformation.  As with the discovery issues, the Third Circuit stated that it need not (and did not) decide the merits of the declaratory relief claim.  Id.  But even as to the reformation claim, the Third Circuit instructed that on remand the District Court should consider Wyndham's argument that reformation would be "inequitable due to negligence."  Id. at 16-17.  A request for documents that bear on the fact that Wyndham never detrimentally relied on coverage from Illinois National is, without question, reasonably calculated to lead to the discovery of admissible evidence concerning Wyndham's claim that reformation to correct a mutual mistake would be inequitable.

The Magistrate Court's ruling effectively maintained the secrecy of the withheld documents in a cloak of privilege.  That conclusion is contrary to law or clearly erroneous. There is simply no basis to hold that a communication between an insured and its insurance

---

[1] All lettered exhibits are attached to the Houghton Decl. that accompanies the moving papers.

broker or another insurer is attorney-client privileged.  While the practical effect of the ruling was to ostensibly maintain their privileged status, the Magistrate Court apparently did not review the documents and certainly made no specific finding that any one of them was privileged.  The "less intrusive means" restriction allowed a deposition, but without the documents a deposition would be of limited value.  In addition, the ruling is flawed because that kind of relief presupposes that the documents are *not* privileged, but less intrusive means exist to obtain the same information.  If that is what happened, the Magistrate Court abused its discretion because the ruling was unreasonable.

For these reasons and the reasons detailed in Illinois National's briefing before the Magistrate Court and its initial moving papers in support of this objection/appeal, the Magistrate Court's Order denying Illinois National's motion to compel the production of the documents should be reversed.

<u>ARGUMENT</u>

**I.** **THE MAGISTRATE COURT'S DISCOVERY RESTRICTION WAS BASED ON A MISUNDERSTANDING OF THE THIRD CIRCUIT'S RULING AND THE CLAIMS MADE IN THIS CASE**

Illinois National seeks a declaration that Wyndham is not entitled to coverage for the underlying aircraft crash; or reformation of the Policy to correct a mutual mistake concerning the intended coverage.

In August 2010, the Court granted Wyndham's summary judgment motion, concluding that the Illinois National Policy provided coverage for the accident, and that Illinois National was not entitled to reformation.  In August 2011, the Third Circuit reversed and remanded the case for further proceedings.

At the hearing on this motion, the Magistrate Court agreed with Wyndham's unfortunate spin on the Third Circuit's decision, that it "said very clearly" the question to be addressed on remand is whether Illinois National was "negligent or worse in issuing a policy that they already

3

found on its face clearly covers this claim." Ex. F at 22:13-20.  The Third Circuit made <u>no</u> such determination, declining to decide whether the District Court's interpretation of the Policy was sound.  Ex. A at 19 n. 3 ("Because we dispose of this case on the grounds that Illinois National's complaint was sufficient and that the District Court applied the incorrect test for mutual mistake, *we do not reach the Illinois National's other arguments for reversal.*") (emphasis added).

   The Magistrate Court also apparently made the sweeping decision that Wyndham's expectations and beliefs regarding coverage are irrelevant to this entire action, based on the Third Circuit's one-sentence instruction that the Court consider, on remand, "Illinois National's and Jet Aviation's intent as well as Wyndham's arguments that reformation may be inequitable due to negligence and because the remedy is sought after an accident."  Ex. F at 11:3-5, 23:12-25:1 (noting there was "nothing in the Third Circuit's opinion that suggests even remotely that discovery on remand should focus on [Wyndham's] expectations or their lack of expectations").

   The Magistrate Court's reasoning finds no support in anything the Third Circuit said, and is unfortunately undermined by what the Third Circuit *did say*.  The Magistrate Court overlooked that the Third Circuit specifically was not addressing Illinois National's claim for declaratory relief that the Policy, as reasonably interpreted, does not provide coverage for the underlying accident.  Wyndham alleges that the Illinois National Policy is ambiguous.  Doc. 16 at 8, 12.[2]  Therefore, the issue of Wyndham's alleged expectations regarding coverage is clearly discoverable.  See <u>Jeffrey M. Brown Assocs., Inc. v. Interstate Fire & Cas. Co.</u>, 997 A.2d 1072, 1074 (N.J. Super. App. Div. 2010) (extrinsic evidence relevant to interpret allegedly ambiguous language in policy); <u>Pacifico v. Pacifico</u>, 190 N.J. 258, 920 A.2d 73, 77 (2007) ("courts should enforce contracts as the parties intended.") By prohibiting Illinois National from discovering the

_____

[2] Illinois National asserts that the Policy is not ambiguous, since Wyndham's interpretation is not reasonable.  <u>See</u> <u>Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am.</u>, 948 A.2d 1285, 1289 (N.J. 2008) (ambiguity exists only where contract is susceptible to at least two reasonable alternative interpretations).

withheld documents, the Court has hampered its ability to litigate Wyndham's claims that the Policy is ambiguous.

The Magistrate Court's decision restricting discovery is also flawed with respect to the reformation claim.  Wyndham claims that reformation of the Policy would be inequitable due to Illinois National's alleged negligence.  Reformation is an equitable remedy that takes into account the totality of the circumstances.  Here, the totality of the circumstances include Wyndham's alleged expectations (or lack thereof) regarding coverage.  Insofar as Wyndham was never prejudiced by any revision to the Policy and thus never relied on the Policy for insurance coverage for the accident, those considerations flatly undermine Wyndham's claim that equity requires the denial of Illinois National's reformation claim.  Accordingly, Wyndham's lack of any expectations (and therefore zero prejudice) – and records that indisputably relate to this issue – warrants their discoverability.

## II.    <u>NONE OF THE WITHHELD DOCUMENTS ARE PRIVILEGED</u>

The applicability of a privilege is a factual question and the scope of privilege is a question of law. <u>In re Bevill, Bresler & Schulman Asset Management Corp.</u>, 805 F.2d 120, 124 (3d Cir. 1986).   In the privilege context, questions of law are reviewed de novo, and questions of fact are reviewed under a clearly erroneous standard.  <u>In re Impounded</u>, 241 F.3d 308, 313 (3d Cir. 2001).[3] Decisions on other discovery issues are subject to review under an abuse of discretion standard, and will be reversed if arbitrary, fanciful or unreasonable.  <u>Salamone v. Carter's Retail, Inc.</u>, No. 09-5856, 2012 WL 821494, *3 (D.N.J. Mar. 9, 2012).

<u>Communications with other insurer</u>: Wyndham's communications with Berkley are not protected under either the attorney-client privilege or common interest doctrines. As for its

---

[3] Although concluding that it need not undertake a privilege review or make a finding as to Wyndham's privilege claims, the Magistrate Court nonetheless referred to the documents as "privileged." Ex. F at 15:6-7 ("You don't need to go into their privileged documents"); 21:3, 23:13-14 ("I'm not convinced that opening this door of privileged documents…"); 25:5-9 (allowing other means of discovery "that doesn't involve privileged material"); and 25:25-26:1 ("I'm going to deny your request for the privileged documents").

attorney-client privilege, Wyndham has not demonstrated that its *insurance-related* communications with Berkley – particularly those that concern the Illinois National Policy – were made in furtherance of obtaining legal advice, or that they were made against the backdrop of ongoing coverage litigation.[4]  Wyndham also ignores that Berkley's only interest with respect to the availability of additional insurance is to minimize *its* obligation to defend and indemnify Wyndham, which it already recognized unconditionally.  Berkley's interest has nothing to do with protecting *Wyndham's interests*, as required under <u>Pfender</u>.  Wyndham's attempt to link the defense of the underlying action with communications about insurance coverage in order to invoke the privilege is meritless: any discussions about other insurance coverage does not advance any *merits defense* in the underlying claims.  Pursuing insurance for the underlying claims is not a defense to plaintiffs' claims.

Wyndham's common interest argument also fails because Wyndham admitted it had no interest in coverage issues just one week before Illinois National filed this action.[5]  The common interest theory is also bogus because the interests of an insurer and its insured with respect to coverage are always adverse.[6]

<u>Communications with other insurer's lawyers</u>: Wyndham's communications with Berkley's counsel, Kern and Wooley, also are not protected under the attorney-client privilege. A communication with an attorney is privileged only if it is initially expressed by an individual "in his capacity *as a client in conjunction with seeking or receiving legal advice from the attorney in his capacity as such, with the expectation that it remain confidential*.'" <u>Ngai v. Old Navy</u>, No. 07-5653, 2009 WL 2391282, *3 (D.N.J. July 31, 2009) (citations omitted and

---

[4] <u>Pfender v. Torres</u>, 765 A.2d 208, 213 (N.J. Super. App. Div. 2001) (factors considered in determining whether communications between an insurer and its insured are protected under the attorney-client privilege include:  (1) whether the communication was made at the direction of an attorney; (2) whether there was anything indicating that the insured was seeking legal advice; (3) whether there was pending litigation; and (4) whether the insurance company might have interests other than protecting the insured's rights).

[5] <u>See</u> Court Docket Document No. ("Doc.") 140-13 (stating that Wyndham "[did] not … wish to take or assert a position as to coverage issues").

[6] <u>N. River Ins. Co. v. Phila. Reinsurance Corp.</u>, 797 F. Supp. 363, 367 (D.N.J. 1992) (emphasis added).

emphasis added).   Kern and Wooley never represented Wyndham, and actually represented parties *adverse* to Wyndham and Berkley:  Aviation Adventures, LLC, from which Wyndham rented the aircraft involved in the accident; and XL Insurance Company, Aviation Adventures' insurer.  See Doc. 140-9; Doc. 151-1.

Communications with insurance broker:  Communications with Aon are not protected because they had nothing to do with the facilitation of legal services.  See Cellco P'ship v. Certain Underwriters at Lloyd's London, No.05-3158, 2006 WL 1320067, *2 (D.N.J. May 2, 2006) (privilege inapplicable since Aon was not an agent of the insured's attorney, and was not necessary to provide legal advice or to facilitate the attorney-client relationship).  Wyndham has not demonstrated that Aon was necessary to provide legal advice or facilitate Wyndham's relationship with its counsel.

Internal communications: Nor has Wyndham demonstrated that communications between its employees and its in-house counsel "would not have been made but for the client's need for legal advice or services," and that in-house counsel was acting in their professional capacity as lawyers.[7]  Leonen v. Johns-Manville, 135 F.R.D. 94, 98-99 (D.N.J. 1990); Spiniello Cos. v. The Hartford Fire Ins. Co., No. 07-cv-2689, 2008 WL 2775643, * 2 (D.N.J. July 14, 2008).  Indeed, many of the entries on Wyndham's privilege logs indicate that they relate to insurance, which does not implicate the attorney-client privilege.  See Retail Brand Alliance, Inc. v. Factor Mut. Ins. Co., No. 05 Civ. 1031, 2008 WL 622810 (S.D.N.Y. Mar. 7, 2008) (concluding that the attorney-client privilege did not apply to an e-mail regarding coverage for a clothing retailer's business interruption losses as a result of the September 11, 2001 terrorist attacks on which the

---

[7] Contrary to Wyndham's suggestion, there is no presumption in New Jersey that "a lawyer in the legal department or working for the general counsel is most often giving legal advice."  See Opp. at 12.  Notably, the case Wyndham cites to for that proposition, Boca Investerings P'Ship v. U.S., 31 F. Supp. 2d 9, 12 (D.D.C. 1998), did not analyze or apply New Jersey law, and the court in that case further stated that there is a presumption that communications with lawyers in department on the "business side of the house" are not privileged.

retailer's general counsel was copied because the e-mail was sent "as a matter of general corporate information").

Wyndham's claim that its post-accident communications are protected under the work product doctrine because "litigation was anticipated with respect to Wyndham's liability and potential coverage concerns"[8] is meritless.  The work product doctrine permits a party to withhold documents from production if the documents "can fairly be said to have been prepared or obtained because of the prospect of litigation" and were prepared primarily for the purpose of litigation.  La. Mun. Police Employees Retirement Sys. v. Sealed Air Corp., 253 F.R.D. 300, 306-07 (D.N.J. 2008).  Wyndham cannot base its work product claims on the fact that it anticipated *underlying wrongful death litigation* because insurance coverage was not at issue in that litigation.  Indeed, Wyndham could not expect coverage litigation because Berkley agreed to provide coverage, and as to Illinois National, Wyndham said it "[did] not … wish to take or assert a position as to coverage," and believed that any coverage issues should be "addressed and resolved" by Berkley and Illinois National.  Doc. 140-13.

Even if the documents are privileged (which they are not), Illinois National has demonstrated a substantial need for them.[9]  See, e.g., Leonen, 135 F.R.D. at 100 (permitting discovery of documents protected under the attorney-client privilege); United Jersey Bank v. Wolosoff, 196 N.J. Super. 553 (N.J. Super. App. Div. 1984).  Contrary to the Magistrate Court's

---

[8] Opp. at 14-15.
[9] Wyndham's citation to Sklodowsky v. American Developers of New Jersey, No. HNT-L-459-04, 2005 WL 3488456, *6 (N.J. Super. App. Div. Dec. 9, 2005), for the proposition that Illinois National "cannot make any sort of showing of need for the privileged documents" because less intrusive sources are available is misplaced.  Opp. at 15.  Skodowsky involved an attempt by a man to sell his property to a group of developers.  The developers refused to go through with the sale unless the man's wife also agreed to sell the property, which she would not do.  After the sale fell through, the man sued the developers, which filed a third-party complaint against the wife.  The developers subpoenaed the wife's former attorneys, seeking communications between them and the attorney who represented the man during the contract negotiations.  The third-party defendants moved to quash the subpoena on the ground that those communications were protected by the attorney-client privilege, as extended by the common interest doctrine, because the husband and wife shared a common interest even though their interests were adverse in the litigation.  The court postponed ruling on the motion pending until after the parties deposed the wife on the limited topic of the extent of the common interest she purportedly shared with her husband.

and Wyndham's apparent belief, interrogatories and depositions are inadequate substitutes for document discovery.  Wyndham will simply raise the same privilege objections.  But even if Wyndham responds, Illinois National will not be able to challenge those responses without the documents.  Thus, Illinois National demonstrated a legitimate need for the documents.

## III.   THE MAGISTRATE COURT ABUSED ITS DISCRETION BY PROHIBITING DOCUMENT DISCOVERY

The Magistrate Court acknowledged that discovery is broadly allowed. Ex. F at 23:5-6; and see Fed. R. Civ. P. 26(b)(1).  Rule 26 allows a court to limit the extent of discovery if it is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive.  Fed. R. Civ. P. 26(b)(2)(C)(i).  To the extent the Magistrate Court's restriction was imposed under that rule, it was an abuse of discretion.[10]

Illinois National moved to compel the production of thirty-eight documents that Wyndham has already identified, collected, reviewed, and produced to the Magistrate Court.[11] Clearly, requiring Wyndham to produce these documents would not have imposed any burden on Wyndham, nor was such a contention ever made.  Contrary to Wyndham's grievance, there is nothing "roundabout" in producing this small number of documents showing contemporaneous discussions about Illinois National's policy.[12]   The Magistrate Court abused its discretion by prohibiting a clearly acceptable method of discovery in favor of another method based on a misunderstanding of an appellate court ruling.  This Court should correct that abuse.

---

[10] Application of Rule 26(b)(2)(C)(i) necessarily presupposes that the subject documents are *not* privileged, raising further, inherent problems with the Magistrate Court's ruling to the extent it purported *not* to make that finding.

[11] Wyndham has offered to produce the documents for an *in camera* inspection.  See Opp. at 11 n. 8.

[12] If this were the rule, document discovery would never be permitted until all depositions were taken first.

## CONCLUSION

For the reasons detailed both above and in Illinois National's initial moving papers, Illinois National respectfully requests that the Court issue an Order sustaining Illinois National's objections to the Magistrate Court's May 14, 2012 Order denying Illinois National's motion to compel disclosure of certain documents withheld by Wyndham on the ground that they are allegedly privileged.

Dated:   July 17, 2012
        New York, New York

                                 _____/s/_____
                                 Aaron F. Mandel

                                 SEDGWICK LLP
                                 125 Broad Street, 39th Floor
                                 New York, New York  10004-2400
                                 Telephone: 212.422.0202
                                 Facsimile:   212.422.0925

                                 *Attorneys for Plaintiff*
                                 Illinois National Insurance Company